## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DV DIAMOND CLUB OF FLINT, LLC**
**d/b/a Little Darlings,**

     **Plaintiffs,**                 **Case No.**
                                   **Hon.**

**v.**

**UNITED STATES SMALL BUSINESS**
**ADMINISTRATION; JOVITA**
**CARRANZA, in her Official Capacity**
**as Administrator of the Small Business**
**Administration; UNITED STATES OF**
**AMERICA; and STEVEN MNUCHIN,**
**in his Official Capacity as United States**
**Secretary of Treasury,**

     **Defendants.**
_____

Bradley J. Shafer (P36604)
Brad@BradShaferLaw.com
Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Suite 2
Lansing, Michigan, 48906
517-886-6560 – Telephone
*Attorneys for Plaintiff*
*DV Diamond Club of Flint, LLC*
_____

## PLAINTIFF'S VERIFIED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

NOW COMES Plaintiff DV Diamond Club of Flint, LLC, and for its complaint, hereby states the following.

## **INTRODUCTION**

1.      This is a civil action wherein Plaintiff seeks injunctive relief to restrain Defendants from discriminating against workers who are entitled to benefit from the Paycheck Protection Program ("PPP") provisions of the recently-enacted Coronavirus, Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 §§ 1101-03, 1107, 1114 (2020) (the "CARES Act").  The PPP is designed to quickly provide emergency relief to workers and businesses affected by the current COVID-19 pandemic following the President of the United States declaring a national emergency.  However, the emergency regulations promulgated by the Small Business Administration to implement the PPP, which in part adopt existing regulations formulated to implement narrower existing loan programs, improperly and unconstitutionally limit benefits to businesses and workers unquestionably engaged in First Amendment protected expression.  The regulations and operating procedures, described more specifically below, conflict with the text of the PPP and violate business and workers' fundamental rights under the First and Fifth Amendments of the United States Constitution, among others.

2

2.      Because the funding of the PPP is to occur on a first-come-first-serve basis until the fund is depleted, Plaintiff brings this action on an emergency basis and will seek Temporary Restraining Order to prevent irreparable injury to its workers, its business, the entertainers who perform on its premises, and all their constitutional rights.

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(1), (3), (4); 28 U.S.C. § 1346(a)(2); and 28 U.S.C. § 1361.

4.      Authority for judicial review of agency action is further provided by 5 U.S.C. § 702, which states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to

dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5.     The prayer for declaratory relief is founded in part on Rule 57 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 2201, the latter of which provides that:

> ". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ."

6.     The jurisdiction of the Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 2202, the latter of which provides:

> "Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

7.     No other action, civil or criminal, is pending in any state court involving the Plaintiffs regarding the activities and events at issue here.

8.     This suit is authorized by law to redress deprivations of rights, privileges, and immunities secured by the First and Fifth Amendments to the United States Constitution, and for declaratory and injunctive relief.

4

9.     Venue in this Court is appropriate as the Plaintiff is located in the Eastern District of Michigan; it has applied for a loan within the Eastern District; the Small Business Administration and the Treasury Department operate in the Eastern District; and the injury complained of and acts causing that injury have occurred and will continue to occur in the Eastern District of Michigan.

## PARTIES

10.     DV Diamond Club of Flint, LLC ("DV" or just "Plaintiff") is a Michigan Limited Liability Company duly organized and authorized to conduct business in the State of Michigan.  DV does business as *Little Darlings* at 2341 South Dort Highway in Flint, Michigan, which is located in Genesee County, State of Michigan.

11.     Defendant United States Small Business Administration (the "SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq*.  The SBA maintains a branch office at 477 Michigan Avenue, Suite 1819, McNamara Building, Detroit, Michigan, which is within the Eastern District of Michigan.

12.     Defendant Jovita Carranza ("Carranza," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity only, as the Administrator of the SBA.

13.     Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—
>
> (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy . . . .

14.     Steven Mnuchin (the "Secretary") is the Secretary of the Treasury Department (the "Treasury") of the United States of America, and is sued in his official capacity only as the Secretary of the Treasury Department.

15.     Defendant currently does not seek monetary relief, and seeks only to restrain the actions of the Administrator and the Secretary in each of their official capacities.

16.     The United States of America is a sovereign nation dedicated to the protection of life, liberty, and property, as set forth in the Bill of Rights and other provisions and amendments to the Constitution of the United States of America.

6

## RELEVANT STATUTORY PROVISIONS
## AND ADMINISTRATIVE REGULATIONS

17.     The CARES Act was signed into law by the President of the United States on March 28, 2020, and is currently in effect.

18.     A true and accurate copy of the Paycheck Protection Program (the "PPP") provisions of the CARES Act is attached hereto as **Exhibit A** and hereby incorporated by reference as though fully set forth herein.

19.     The  PPP provisions of the CARES Act instruct the SBA to promulgate rules as follows:

SEC. 1114. EMERGENCY RULEMAKING AUTHORITY.

Not later than 15 days after the date of the enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, Unites States Code.

20.     The CARES Act specifically tasks the SBA with administering the PPP.  The PPP further provides at 15 U.S.C. § 636(a)(36)(F)(ii):

Delegated authority

(I) In general
For purposes of making covered loans for the purposes described in clause (i), a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to

make and approve covered loans, subject to the provisions of this paragraph.

(II) Considerations
In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower--
(aa) was in operation on February 15, 2020; and
(bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or
(BB) paid independent contractors, as reported on a Form 1099-MISC.

(iii) Additional lenders
The authority to make loans under this paragraph shall be extended to additional lenders determined by the Administrator and the Secretary of the Treasury to have the necessary qualifications to process, close, disburse and service loans made with the guarantee of the Administration.

21.     Pursuant to the PPP, the SBA did, in fact, promulgate regulations on

April 1, 2020.  A true and accurate copy of Business Loan Program Temporary

Changes; Paycheck Protection Program, RIN 3245-AH34 (Interim Final Rule Apr.

1, 2020) (the "SBA 3245"), as promulgated by the SBA, is attached hereto as

**Exhibit B** and hereby incorporated by reference as though fully set forth herein.

22.     SBA 3245 provides, in part:

Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible. (SOP 50 10 can be found at

8

https://www.sba.gov/document/sop-50-10-5-lender-development-company-loan-programs.)

23.   SBA 3245 further provides that PPP loans with be provided on a first-come, first-served basis until funds are exhausted.  [*See* **Ex. B**, p.13].  The PPP has a total monetary limit of $349,000,000,000.00 ($349 Billion).

24.   A true and accurate copy of Business Loan Program, 60 Fed. Reg. 64356 *et seq*. (proposed Dec. 15, 1995; to be codified  at 13 C.F.R. § 120.110), as promulgated by the SBA, is attached hereto as **Exhibit C** and hereby incorporated by reference as though fully set forth herein.

25.   A true and accurate copy of SBA Business Loan Ineligible Businesses Rule, 13 C.F.R § 120.110 (2020), as actually enacted, is attached hereto as **Exhibit D** and hereby incorporated by reference as though fully set forth herein.

26.   13 C.F.R § 120.110 provides, in part:

The following types of Businesses are ineligible:

\*        \*        \*

(p) Businesses which:

(1) Present live performances of a prurient sexual nature; or

(2) Derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the

presentation of any depiction or display, of a prurient sexual nature;

These provisions are hereinafter referred to simply as the "Regulations."

27.     A true and accurate copy of SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019), is attached hereto as **Exhibit E** and hereby incorporated by reference as though fully set forth herein.

28.     The SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019) provides, in part, at Ch.2 (III)(A):

15. Businesses Providing Prurient Sexual Material (13 CFR § 120.110 (p))

a. A business is not eligible for SBA assistance if:

i. It presents live or recorded performances of a prurient sexual nature; or

ii. It derives more than 5% of its gross revenue, directly or indirectly, through the sale of products, services or the presentation of any depictions or displays of a prurient sexual nature.

b. SBA has determined that financing lawful activities of a prurient sexual nature is not in the public interest. The Lender must consider whether the nature and extent of the sexual component causes the business activity to be prurient.

c. If a Lender finds that the Applicant may have a business aspect of a prurient sexual nature, prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must document and submit the analysis and supporting documentation to the Associate General Counsel for Litigation at PSMReview@sba.gov for a final Agency decision on eligibility. Upon approval by SBA, the Lender may submit the application to the LGPC or may proceed to process the loan under its delegated authority. A non-delegated Lender must submit a copy of SBA's approval with the application to the LGPC. A delegated Lender must retain its analysis, supporting documentation, and evidence of SBA's approval in its loan file and must submit the analysis and supporting documentation to SBA with any request for guaranty purchase. SBA also may review such documentation when conducting Lender oversight activities.

These provisions are hereinafter referred to as the "SOP."

29.     Defendant SBA is responsible for formulating, issuing, and enforcing the Regulations and the SOP.

30.     A true and accurate exemplar copy of the SBA Paycheck Protection Program Borrower Application Form 2483 (Apr. 2020) is attached hereto as **Exhibit F**, and hereby incorporated by reference as though fully set forth herein.

31.     A true and accurate copy of the Hancock Whitney Bank Paycheck Protection Program Supplemental Information Form (current as of Apr. 5, 2020) is attached hereto as **Exhibit G** and hereby incorporated by reference as though fully set forth herein.

32.     The First Amendment to the Unites States Constitution reads:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

33.     The Fifth Amendment to the United States Constitution reads:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## STATEMENT OF FACTS

34.     DV is an alcohol-serving establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, male and female performance dance entertainment which is fully clothed and, at times for the female entertainers, topless.  All of the entertainment provided by DV is non-obscene, appeals to healthy human interests and desires, and is in full compliance with the numerous licenses and permits held by DV.

35.     None of the live performances at DV are unlawful or obscene.  Neither DV nor any of the entertainers who have performed on its premises have *ever* been charged, let alone convicted, of any crimes of obscenity.

36.     DV duly holds a Class C Liquor License issued by the Michigan Liquor Control Commission, with permits for Sunday Sales, Additional Bar and Specially Designated Merchant, and DV presents lawful entertainment in conformity therewith.

37.     DV duly holds a business license to present "Adult Entertainment" issued by the City of Flint, Michigan, and DV presents lawful entertainment in conformity therewith.

38.     DV duly holds a business license with a "dance permit" issues by the City of Flint Michigan, and DV presents lawful entertainment in conformity therewith.

39.     DV is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order 2020-21) issued by the Governor of Michigan as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, DV has suffered significant business losses, but plans to reopen when legally permitted to do so.   DV has been closed for business since

13

at least 12:01am on March 24, 2020, and remains closed as of the date of this complaint is filed.

40.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries, DV sought out to apply for a PPP loan.

41.    On or about April 6, 2020, DV submitted an application for a PPP loan through Oxford Bank, and specifically though its branch located at 1115 S. Lapeer Road, Lake Orion, State of Michigan; that being within the Eastern District of Michigan.  Oxford Bank is an approved SBA Lender.  A true and accurate copy of DV's PPP loan application to Oxford Bank (the "Application") is attached hereto as **Exhibit H** and is incorporated by reference as though fully set forth herein.

42.    Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Oxford Bank is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by DV.

43.    DV is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.  However, DV reasonably believes that its Application will be rejected or fatally delayed due to the SOP and/or the Regulations.

44.    DV has learned that numerous other similar businesses, which presented non-obscene female performance dance entertainment of an "exotic," "topless" and/or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.  Specifically, DV has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).  DV reasonably fears its Application will suffer the same fate as the applications of these other businesses which have had their applications denied.

45.    DV also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore potentially rendering any later request for judicial relief to be moot.  The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until all funds are exhausted, and no further funds are currently available.  The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."  Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, DV reasonably fears either that no agency

15

decision will be forthcoming while PPP funds remain, or that the SBA will decide that DV is not eligible with no time for it to obtain relief while PPP funds remain.

46.     In the event that DV is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of DV to engaged in protected First Amendment activity; and the inability to DV's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

## COUNT I – THE REGULATIONS AND SOP VIOLATE THE FIRST AMENDMENT

47.     Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

48.     In asserting its First Amendment challenges to the Regulations and SOP, Plaintiff asserts not only its own rights but also the rights of its employees, and the entertainers who perform on its premises.

49.     The Regulations and the SOP violate and are contrary to the First Amendment of the United States Constitution, on their face and as applied to Plaintiff, for numerous and various reasons including but not limited to:

a.     They are impermissible content-based restrictions on speech and expression that cannot pass muster under strict scrutiny;

16

b.     They are impermissible content-neutral restrictions and expression that cannot pass muster under intermediate scrutiny;

c.     They fail to conform to the constitutional standards regarding obscenity;

d.     They violate the doctrine of unconstitutional conditions; and

e.     They are unconstitutionally vague under the vagueness standards for matters impacting speech and expression.

50.     As a direct and proximate result of the unconstitutional aspects of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against DV and its interests, DV, DV's employees, and the entertainers who perform on DV's premises have suffered and will continue to suffer irreparable injuries, including but not limited to financial ruin, business ruination, and the inability to present protected First Amendment protected entertainment.

### COUNT II – THE REGULATIONS AND SOP VIOLATE THE FIFTH AMENDMENT

51.     Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

52.    The Regulations and the SOP violate and are contrary to the Fifth Amendment of the United States Constitution, on their face and as applied to Plaintiff, for numerous and various reasons including but not limited to:

a.    They treat establishments presenting certain forms of performance dance entertainment, such as Plaintiff, differently from establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

b.    They treat workers at establishments presenting certain forms of performance dance entertainment, such as Plaintiff, differently from workers at establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

c.    They violate DV's, its employees, and the entertainers' who perform on its premises rights under the occupational liberty component of the Fifth Amendment.

d.    They are impermissibly vague,

53.    As a direct and proximate result of the unconstitutional aspects of the Regulations and SOPS and the Defendants' and their delegates' application of the Regulations and the SOP against DV and its interests, DV, DV's employees, and the entertainers who perform on DV's premises have suffered and will continue to suffer

irreparable injuries including but not limited to financial ruin, business ruination, and the violation of the rights protected by the Fifth Amendment of the United States Constitution.

## COUNT III – THE INVALIDITY OF THE REGULATIONS AND SOP

54.     Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

55.     Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including this Plaintiff, the SBA lacked authority to promulgate regulations with restricted or otherwise 'clarified' what businesses were eligible for PPP Loans.

56.     As a direct and proximate result of the invalid portions of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against DV and its interests, DV, DV's employees, and the entertainers who perform on DV's premises have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin and business ruination.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests this Honorable Court:

A.      Issue orders granting a Temporary Restraining Order, Preliminary, and Permanent Injunction enjoining the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 120.110(p) and SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) in regard to loan applications made pursuant to the Payroll Protection Program of the CARES Act;

B.      As part of those orders, order the Defendants, as well as their employees, agent and representatives, to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue utilizing 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) as criteria for determining PPP loan application eligibility, and to fully process all PPP loan applications without reference to such regulations and procedures;

C.      Also as part of those orders, order the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, to restore Plaintiff to its place in the application queue as it was at the time of application in the event that its application has already been formally denied, derailed, or paused because of the challenged regulations and procedures challenged here;

D.      Enter an award of attorneys' fees and costs against the Defendants and in favor of the Plaintiff; and

E.     Enter such other and further relief as this Court may find to be warranted in these circumstances.

Respectfully Submitted:

Dated: April 8, 2020            _____/s/ Matthew J. Hoffer_____
                                BRADLEY J. SHAFER (MI P36604)
                                Brad@BradShaferLaw.com
                                MATTHEW J. HOFFER (MI P70495)
                                Matt@BradShaferLaw.com
                                **SHAFER & ASSOCIATES, P.C.**
                                3800 Capital City Boulevard, Suite 2
                                Lansing, Michigan 48906
                                (517) 886-6560
                                Counsel for Plaintiff

## VERIFICATION OF COMPLAINT

1.      I, Jason C-H Mohney am the Managing Member of DV Diamond Club of Flint.

2.      I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.      I have reviewed the foregoing *PLAINTIFF'S VERIFIED COMPLAINT FOR EMEGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "Complaint") in its entirety.

4.      The factual statements in the Complaint are true and accurate to the best of my information, knowledge and belief.

5.      Except, any matters stated to be upon "information and belief" I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on: 4/8/2020          _____

By:    Jason C-H Mohney

22