# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**DV DIAMOND CLUB OF FLINT, LLC**
**d/b/a Little Darlings,** *et al.*

      **Plaintiffs,**

**v.**

**UNITED STATES SMALL BUSINESS**
**ADMINISTRATION,** *et al.*

      **Defendants.**

Case No. 4:20-cv-10899
Hon. Matthew F. Leitman
Hon. David R. Grand
    by referral

---

Bradley J. Shafer (P36604)
Brad@BradShaferLaw.com
Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Suite 2
Lansing, Michigan 48906
517-886-6560 – Telephone

*Attorneys for All Plaintiffs*

James J. Gilligan
James.gilligan@usdoj.gov
**UNITED STATES DEPT. OF JUSTICE**
Civil Division, Federal Prog. Bench
1100 L Street, N.W., Room 11200
Washington, D.C.
202-514-3358 – Telephone

Peter A. Capalan (P30643)
Peter.Caplan@usdoj.com
**MATTHEW SCHNEIDER**
Unites States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9784

*Attorneys for All Defendants*

---

# PLAINTIFFS' RENEWED EMERGENCY MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION <u>AND REQUEST FOR TELEPHONIC OR VIDEO HEARING</u>
## PURSUANT TO 20-AO-021(6)

NOW COME all Plaintiffs, by and through their undersigned counsel of record, and pursuant to Fed. R. Civ. P. 65 hereby move this Honorable Court for entry of An Emergency Temporary Restraining Order ("TRO") and Preliminary Injunction prohibiting the Small Business Administration ("SBA") and Jovita Carranza in her official capacity as the Administrator thereof; the United States of America; and Steven Mnuchin in his official capacity as the United States Secretary of Treasury (collectively "Defendants") from enforcing 13 C.F.R. 120.110(p) and SBA Standard Operating Procedure 50 10 5(K), Subpart B III (A)(15) against Plaintiffs and their interests, under the Paycheck Protection Program ("PPP") of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). In support thereof, Plaintiffs state the following:

1.     The CARES Act creates a broad new business loan program titled the Paycheck Protection Program ("PPP"), funds the same on a "first come, first served" basis, provides two statutory criteria regarding a business's eligibility, and tasks the SBA with administering the program. The SBA's promulgated guidance seeks to incorporate and enforce 13 C.F.R § 120.110(p) (the "Regulation"), which was used as the basis to numerous Plaintiffs and will effectively deny or otherwise prejudice the remaining Plaintiffs and others who similarly engaged in presenting lawful entertainment that is presumptively protected by the First Amendment.

2

2.     Given that the funding for the PPP is on a "first-come, first-served" basis and the severe impact the near coast-to-coast government-mandated "shut down" or "stay home" orders has on businesses, especially the service industry and gig economy workers, the SBA's enforcement of this Regulation is ruinous and irreparable for Plaintiffs' business.

3.     As fully set forth in the accompanying Brief in Support, the Regulation's unquestionably fails Constitutional scrutiny. Content-based restrictions on expression are presumed to be unconstitutional; therefore, the government bears a heavy burden to demonstrate the Regulation is narrowly tailored to a compelling interest. Both points, and others fully briefed in the accompanying brief, weigh heavily in Plaintiffs' favor on the likelihood of success factor.

4.     Pursuant to E.D. Mich. LR 7.1 and E.D. Mich. LR 65.1, because of the present pandemic and the business and governmental closures resulting, therefrom, and because of the time-sensitive nature of the relief requested as set forth in the accompanying brief, Plaintiffs have been unable to conduct the requisite conference.

5.     In support of this motion, Plaintiffs rely upon the brief in support, the exhibits submitted therewith; any reply to be filed; any oral argument taken by the Court; and the record as a whole.

## **PRAYER FOR RELIEF**

For the reasons set forth above and in the incorporated Brief in Support of this Motion, Plaintiffs respectfully request this Honorable Court:

A.     Issue orders granting a Temporary Restraining Order, Preliminary, and Permanent Injunction enjoining the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 120.110(p) and SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) in regard to loan applications made pursuant to the Payroll Protection Program of the CARES Act. As part of those orders, Plaintiffs further request this Honorable Court to:

1.     Order the Defendants, as well as their employees, agent and representatives, to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue utilizing 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) in their Payroll Protection Program loan applications, and as criteria for determining Payroll Protection Program loan application eligibility, and to fully process all Payroll Protection Program loan applications without reference to such regulations and procedures;

2.     Order the Defendants, as well as their employees, agent and representatives, including their lending banks, to grant all Payroll Protection Program loan applications of the Plaintiffs if they otherwise qualify for such

4

loans if not for the provisions of 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15);

3.     Order the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, to restore Plaintiffs to their place in the application queue as they were at the time of application in the event that their application has already been formally denied, derailed, or paused because of the provisions of 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15);

B.     Enter an award of attorneys' fees and costs against the Defendants and in favor of Plaintiffs; and

C.     Enter such other and further relief as this Court may find to be warranted in these circumstances.

Respectfully submitted,

Dated: April 17, 2020            _____ */s/ Bradley J. Shafer* _____

BRADLEY J. SHAFER (MI P36604)
Brad@BradShaferLaw.com
MATTHEW J. HOFFER (MI P70495)
Matt@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
(517) 886-6560
*Attorneys for All Plaintiffs*

Gary S. Edinger*
GSEdinger12@gmail.com
**BEJAMIN, AARONSON, EDINGER &**
   **PATANZO, P.A.**
305 N.E. 1st Street
Gainesville, Florida 32601
(352) 338-4440
*Co-counsel for Plaintiffs JCB of Gainesville,*
*Inc. and VC Lauderdale*

Peter E. Garrell*
PGarrell@FortisLaw.com
**FORTIS, LLP**
650 Town Center Drive, Suite 1530
Costa Mesa, California 92626
(714)795-2363

*Co-Counsel for Plaintiffs Brookhurst Venture, LLC; City of Industry Hospitality Venture, Inc.; Farmdale Hospitality Services, Inc.; Inland Restaurant Venture I, Inc.; Midnight Sun Enterprises, Inc.; Olympic Avenue Venture, Inc.; The Oxnard Hospitality Services, Inc.; Platinum SJ Enterprise; Rouge Gentlemen's Club, Inc.; Washington Management, LLC; PNM Enterprises, Inc.; Rialto Pockets, Inc.; Santa Barbara Hospitality Services, Inc.; Santa Maria Restaurant Enterprises, Inc.; The Spearmint Rhino Adult Superstore, Inc.; High Expectations Hospitality, LLC; Kentucky Hospitality Venture, LLC; K-Kel, Inc.; L.C.M., LLC; Nitelife, Inc.; Penn Ave Hospitality, LLC; Sarie's Lounge, LLC; World Class Ventures, LLC; W.P.B. Hospitality, LLC; The Spearmint Rhino Companies Worldwide, Inc.; and Spearmint Rhino Consulting Worldwide, Inc.*

*\*Pending admission pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 17, 2020, I electronically filed the foregoing document and accompanying briefs, exhibits, and attachments, with the United States District Court for the Eastern District of Michigan via the Court's CM/ECF system, thereby causing service upon all parties of record by operation of the Court's CM/ECF system.

*/s/ Matthew J. Hoffer*
Matthew J. Hoffer (MI P70495)
**SHAFER & ASSOCIATES, P.C.**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**DV DIAMOND CLUB OF FLINT, LLC**
**d/b/a Little Darlings,** *et al.*

      **Plaintiffs,**

**v.**

**UNITED STATES SMALL BUSINESS**
**ADMINISTRATION,** *et al.*

      **Defendants.**

Case No. 4:20-cv-10899
Hon. Matthew F. Leitman
Hon. David R. Grand
   by referral

---

Bradley J. Shafer (P36604)
Brad@BradShaferLaw.com
Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Suite 2
Lansing, Michigan  48906
517-886-6560 – Telephone

*Attorneys for All Plaintiffs*

James J. Gilligan
James.gilligan@usdoj.gov
**UNITED STATES DEPT. OF JUSTICE**
Civil Division, Federal Prog. Bench
1100 L Street, N.W., Room 11200
Washington, D.C.
202-514-3358 – Telephone

Peter A. Capalan (P30643)
Peter.Caplan@usdoj.com
**MATTHEW SCHNEIDER**
**UNITES STATES ATTORNEY**
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9784

*Attorneys for All Defendants*

---

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' RENEWED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### TELEPHONIC OR VIDEO ORAL ARGUMENT REQUESTED

## CONCISE STATEMENT OF ISSUES PRESENTED

Whether 13 C.F.R 120.110(p) and the Small Business Administration Standard Operating Procedure – Lender and Development Company Loan Programs, SOP 50 10 5(K)(B)(3)(15) (Apr. 1, 2019) are unconstitutional, both facially and as applied to Plaintiffs, and whether they exceed the regulatory authority provided to the Small Business Administration and the United States Department of Treasury by the Payroll Protection Act component of the Coronavirus Aid, Relief, and Economic Security Act (CARES ACT) to broadly address the economic catastrophe caused by the current pandemic?

## <u>MOST APPROPRIATE AUTHORITY</u>

<u>Miller v. California</u>, 413 U.S. 15 (1973)

<u>Smith v. United States</u>, 431 U.S. 291(1977)

<u>Reed v. Town of Gilbert</u>, 135 S. Ct. 2218 (2015)

<u>Reno v. ACLU</u>, 521 U.S. 844 (1997)

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

STATEMENT OF FACTS ......................................................................4

ARGUMENT .........................................................................................8

I.   TRO AND PRELIMINARY INJUNCTION STANDARDS ...................8

II.  THE REGULATIONS AND SOP ARE REVIEWABLE BY THIS COURT ...............................................................................................9

III. PLAINTIFFS ARE ENTITLED TO A TRO AND PRELIMINARY INJUNCTION TO PRECLUDE THEM, THEIR EMPLOYEES EMPLOYEES, AND THE ENTERTAINERS WHO PERFORM ON THEIR PREMISES, FROM SUFFERING IRREPARABLE HARM ....11

   a.   Plaintiffs Have A Substantial Likelihood of Success of Prevailing on Their Constitutional Claims .....................................................11

      i.   The Regulations and SOP Violate the First Amendment ..........11

         1.   The Regulations and SOP are Content-Based Restrictions on Speech that Do Not Pass Constitutional Scrutiny .................11

         2.   The Regulations and SOP Fail to Conform to the Constitutional Standards of Obscenity ...........................................................14

         3.   The Regulations and SOP Violate the Doctrine of Unconstitutional Conditions and Effectuate a Prior Restraint Upon Speech and Expression ...............................................21

      ii.  The Regulations and SOP are Impermissibly Vague ................23

      iii. The Regulations and SOP Violate the Equal Protection and Occupational Liberty Components of the Fifth Amendment ....26

      iv.  The SBA Lacks the Authority to Limit the Type of Business Loans Which are Eligible for a PPP Loan .................................28

b.    Plaintiffs Will Suffer Irreparable Harm if this Court does Not Issue an Injunction ................................................................................ 30

c.    An Injunction Would Cause No Harm to Others and the Public Interest Weighs in Favor of the Entry of an Injunction ................. 31

IV.   NO BOND SHOULD BE REQUIRED ................................................... 32

CONCLUSION ........................................................................................ 33

## INDEX OF AUTHORITIES

**Cases**

A.C.L.U. of Ky. v. McCreary Cty., Ky., 354 F.3d 438 (6th Cir. 2003) ..................30

Allgeyer v. La., 165 U.S. 578 (1897) ........................................................27

Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545 (6th Cir. 2007) .......................................................................................24

Bailey v Callagan, 715 F.3d 956 (6th Cir. 2013).........................................9

Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991) .....................................11

Bennett v. Spear, 520 U.S. 154 (1997) ......................................................11

Book Friends, Inc. v. Taft, 223 F.Supp.2d 932 (S.D. Ohio 2002)..................15

Books, Inc.  v. Pottawattamie Cty., 978 F. Supp. 1247 (S.D. Iowa 1997)..............32

Brockett v. Spokane Arcades, Inc., 472 U.S. 491  (1985).......................................16

Camelot Banquet Rooms, Inc. et al. v. Small Business Administration, et. al., 20-cv-601 (E.D. Wis. 2020)........................................................................2

Carey v. Populations Services Int'l, 431 U.S. 678 (1977)........................................15

Chevron, U.S.A., Inc., v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).........29

Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103 (1948)...............11

Cincinnati v. Discovery Network, Inc., 507 U.S. 410 (1993) .................................13

Citizens United v. Fed. Election Comm'n, 558 U.S. 310 (2010)............................12

City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432 (1985)....................27

City of Erie v. Pap's A.M., 529 U.S. 277 (2000) ......................................................11

Connection Distrib. Co. v. Holder, 557 F.3d 321 (6th Cir. 2009)............................8

Crowley v. Local No. 82, 679 F.2d 978 (1st Cir. 1982)...........................................33

Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365 (6th Cir. 2011)......27

Detroit Int'l Bridge Co. v. Fed. Highway Admin., 666 F. Supp. 2d 740 (E.D. Mich. 2009) ..................................................................................................................10

Diaz v. Brewer, 656 F.3d 1008 (9th Cir. 2011) ......................................................33

Elrod v. Burns, 427 U.S. 347 (1976) ......................................................................30

Esquival-Quintana v. Sessions, 137 S. Ct. 1562 (2017).........................................29

F.C.C. v. Pacifica Foundation, 438 U.S. 726 (1978)...............................................15

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990).............................................22

G&V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071 (6th Cir. 1994) .................................................................................................... 21, 22, 31

Gannett Co., Inc. v. DePasquale, 443 U.S. 368 (1979) ..........................................31

Ginsberg v. New York, 390 U.S. 676 (1968) ..........................................................18

Grayned v. City of Rockford, 408 U.S. 104 (1972) .......................................... 23, 24

J-R Distributors, Inc. v. Eikenberry, 725 F.2d 482 (1984)......................................16

Keyishian v. Board of Regents, 385 U.S. 589 (1967) .............................................23

Kolender v. Lawson, 461 U.S. 352 (1983) ..............................................................23

Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750 (1988)............................22

Llewlyn v. Parkland Cty. Pros., 402 F. Supp. 1379 (E.D. Mich. 1975)..................32

Luke Records, Inc. v. Navarro, 960 F.2d 134 (11th Cir. 1992)...............................18

McCullen v. Coakley, 573 U.S. 464 (2014) ...........................................................12

Miller v. California, 413 U.S. 15 (1973) ....................................................... passim

Moore v. Johnson, No. 14-11903, 2014 WL 4924409 (E.D. Mich. May 23, 2014)
..................................................................................................................33

NAACP v. Button, 371 U.S. 415 (1963) .................................................................27

Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v.
Blackwell, 467 F.3d 999 (6th Cir. 2006)..........................................................9

Nebraska Press Ass'n v. Stuart, 427 U.S. 539 (1976) .............................................32

Nightclubs, Inc. v. City of Paducah, 202 F.3d 884 (6th Cir. 2000)........................22

Pennsylvania v. Trump, 281 F. 3d 553 (E.D. Penn. 2017).....................................10

Penthouse Intern., Ltd. V. McAuliffe, 610 F.2d 1353 (5th Cir. 1980)............. 15, 18

Perry v. Sindermann, 408 U.S. 593 (1972)............................................................21

Planned Parenthood Ass'n v. City of Cincinnati, 822 F.2d 1390 (6th Cir. 1987)..31

Pope v. Illinois, 481 U.S. 497 (1987) .....................................................................15

Port of Bos. Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S.
62 (1970)........................................................................................................11

Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015) ...................................... 12, 13, 27

Reno v. ACLU, 521 U.S. 844 (1997).............................................................. passim

Roth v. United States, 354 U.S. 476 (1957) ...........................................................16

Sable Commc'ns of California, Inc. v. FCC, 492 U.S. 115 (1989)........................15

Schad v. Borough of Mt. Ephraim, 452 U.S. 61 (1981) ..........................................11

Schickel v. Dilger, 925 F.3d 858 (6th Cir. 2019) ....................................................12

SEIU Health Care Mich. v. Snyder, 875 F. Supp. 2d 710 (E.D. Mich. 2012) ........31

Sidney Coal Co. v. Soc. Sec. Admin., 427 F.3d 336 (6th Cir. 2005)......................10

Smith v. Goguen, 415 U.S. 566 (1974) ...................................................................23

Smith v. United States, 431 U.S. 291 (1977).................................................... 15, 17

Se. Promotions, Ltd. v. Conrad, 420 U.S. 546 (1975).............................................22

Speech First, Inc. v. Schlissel, 939 F.3d 756 (6th Cir. 2019)...................................9

Speiser v. Randall, 357 U.S. 513 (1958) .................................................................21

Sunrise Coop., Inc. v. United States Dept. of Agric., 891 F.3d 652 (6th Cir. 2018)
............................................................................................................... 28, 29

Thomas v. Bright, 937 F.3d 721 (6th Cir. 2019) .....................................................12

United States v. Bamberg, 478 F.3d 934 (8th Cir. 2007) ........................................24

United States v. Playboy Entm't Grp., Inc., 529 U.S. 803 (2000) ..........................13

Virginia v. Black, 538 U.S. 343 (2003) ...................................................................12

Williams v Rhodes, 393 U.S. 23 (1968) ...................................................................27

**Statutes**

15 U.S.C § 636.............................................................................................................4

15 U.S.C. § 634..........................................................................................................29

28 U.S.C § 1391.........................................................................................................10

28 U.S.C. § 1402 ...................................................................................10

28 U.S.C. § 2201 .....................................................................................9

5 U.S.C. § 553 ........................................................................................29

5 U.S.C. § 701 ..........................................................................................9

5 U.S.C. § 702 ..........................................................................................9

5 U.S.C. § 704 ......................................................................................9, 10

## Other Authorities

Congressional Record of the Bill, see Summary on H.R. 748, https://www.congress.gov/bill/116th-congress/house bill/748/actions?q={%22search%22:[%22hr+748%22]}&r=1&s=1&KWI View=false (last visited Apr. 4, 2020)..............................................4

Standard Operating Procedure for Lender and Development Company Loan Programs 50 10 5(K) ....................................................... 1, 6, 24, 33

*The President's Corona Virus Guidelines for America / 30 Days to Slow the Spread*, https://www.whitehouse.gov/wpcontent/uploads/2020/03/03.16.20_coronavr us-guidance_8.5x11_315PM.pdf (Last accessed 4/6/20)..............................30

## Rules

Fed. R. Civ. P. 65 .....................................................................................32

SBA Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34 ........................................... 5, 6, 10, 29

## Regulations

13 C.F.R. § 120.110 .......................................................................... passim

60 Fed. Reg. 64356 ........................................................................................9, 6

60 Fed. Reg. 64360 .....................................................................................6, 13, 20

## INDEX OF EXHIBITS

Exhibit A   The Coronavirus, Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 §§ 1101-03, 1107, 1114 (2020)

Exhibit B   Business Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34 (Interim Final Rule Apr. 1, 2020)

Exhibit C   Members of Congress' Letter to SBA Administrator Jovita Carranza and Secretary of the Treasury Steven Mnuchin (Apr. 10, 2020)

Exhibit D   Camelot Banquet Rooms, Inc. et al. v. Small Business Administration, et. al., 20-cv-601 (E.D. Wis. 2020) Ordering TRO, ECF 13

Exhibit E   List of Plaintiffs Denied PPP Benefits

Exhibit F   House Committee on Small Business Letter to Secretary of the Treasury Steven Mnuchin and SBA Administrator Jovita Carranza (Apr. 7, 2020)

Exhibit G   House Committee on Agriculture Letter to SBA Administrator Jovita Carranza (Apr. 9, 2020)

Exhibit H   Business Loan Program, 60 Fed. Reg. 64356 *et seq*. (proposed Dec. 15, 1995) (to be codified at 13 C.F.R. § 120.110)

Exhibit I   SBA Business Loan Ineligible Businesses Rule, 13 C.F.R § 120.110 (2020)

Exhibit J   SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019)

Exhibit K   DV's SBA Paycheck Protection Program Borrower Application, Form 2483 (Apr. 6, 2020)

Exhibit L   Sample Bank Paycheck Protection Program Supplemental Information Form (current as of Apr. 7, 2020)

Exhibit M    Plaintiff DB Entertainment, Inc.'s ("DB") PPP Loan Application
Denial Letter (Apr. 5, 2020)

## **INTRODUCTION**

The coronavirus pandemic has affected virtually every business operating in our country, and every person employed thereby. This Court needs no supporting authority to know that this is nothing short of an economic catastrophe. As a result of these financial difficulties, Congress recently passed, among other things, the Paycheck Protection Program ("PPP," and attached as **Ex. A**) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act" or simply "the Act") to permit continuity of the payment of wages by small businesses (fewer than 500 employees).

This action was initiated to obtain an immediate injunction against: A) two short provisions of 13 C.F.R. §120.110 (and in particular subsections (p)(1) and (2) thereof; those subsections being referred to hereinafter as the "Regulations") that bar *general* Small Business Administration ("SBA") loans to businesses that present, or derive a non-*de minimus* portion of their gross revenues from, entertainment that is of an *undefined* "prurient sexual nature"; and B) a provision of the Standard Operating Procedure for Lender and Development Company Loan Programs (the "SOP") identified as Ch.2(III)(A)(15) promulgated to apply the Regulations to PPP loan ("PPL) applications.[1]

---

[1] To the best of Plaintiffs' knowledge there are a number of suits filed in sister courts seeking similar relief. *See* <u>Camelot Banquet Rooms, Inc. et al. v. Small Business</u>

These prohibitions are *not* contained in emergency legislation and were imposed upon *PPLs* by the Department of Treasury ("Treasury") and SBA through emergency regulations that bypassed the normal rulemaking procedures and that were released *only hours before* PPP loan applications could be submitted.

As is demonstrated here, the Regulations are being applied by lending banks, largely, in the absence of clear guidance, [*see* **Exs. B & C**], and the SBA to deny desperately needed financial assistance to businesses that undeniably receive protections under the First Amendment.[2] Most importantly, the withheld benefits would *be used primarily* (*no less than 75% of the full loan amount*) *to pay their* <u>*employees*</u> *during these desperate times*.

The Regulations and SOP violate the First Amendment on their face because they require content-based decision-making and are justified based on the *content* of a speaker's communications, because they do not conform to the legal standards of obscenity; because they violate the doctrine of unconstitutional conditions; because they effectuate an impermissible prior restraint; they are impermissibly vague and

---

Administration, et. al., 20-cv-601 (E.D. Wis. 2020) (E.D. Wis. Order granting a TRO attached hereto as **Ex. D**) and <u>Am. Ass'n of Political Consultants Ridder/Braden, Inc. v. United States SBA</u>, 20-cv-00970 (D.D.C 2020) (political lobbyists challenging PPP loan denial based on 13 C.F.R. § 120.110(r)).

[2] As of the date of this filing, Plaintiffs listed in **Ex. E** have had their applications formally <u>denied</u> citing or indicating the Regulations and SOP as reasons.

provide *no standards whatsoever* to permit personnel at *lending banks* and at the SBA to determine whether a loan application should be denied based on their proscriptions; they exceed the statutory limitations on the SBA's authority because they purport to circumscribe the near-universal availability of loans vital to the Nation's economy; and they violate both the Equal Protection Clause ("EPC") and the occupational Liberty Clause of the Fifth Amendment.

Injunctive relief is warranted because infringement of Plaintiffs' First Amendment rights is irreparable as a matter of law. Plaintiffs also present a compelling case of economic injury in support of this application. Because the total amount of money available for PPP loans is limited by statute, and because that amount is quickly being depleted by the loan applications of others, unless this Court *immediately* grants the emergency relief requested herein, the Plaintiffs, literally thousands of other businesses across the country, *and more importantly their employees*, will be irreparably harmed in that they will be forever denied the payroll protections afforded under the broad relief as ordered by Congress.

## <u>STATEMENT OF FACTS</u>

Plaintiffs own and operate venues that present clothed, semi-nude, and/or nude performance entertainment, similar retail establishments, and businesses that service those establishments. Verified First Amended Complaint for Declaratory and Injunctive Relief ("FAC"), ¶¶ 75, 87, 98, 109, 121, 133, 145, 157, 167, 177, 187, 198, 208, 217, 228, 239, 249, 259, 269, 279, 289, 299, 309, 319, 329, 339, 349, 359, 369, 379, 389, 399, 409, 419, 429, 439, 449, 459, 469, 479, 489, 499. Neither Plaintiffs' businesses nor the entertainers who perform there have *ever* been charged, let alone convicted, of any crimes of obscenity. <u>Id</u>. at ¶¶ 76, 88, 99, 110, 120, 134, 158, 168, 178, 188, 199, 209, 218, 229, 240, 250, 260, 270, 280, 290, 300, 310, 320, 330, 340, 350, 360, 370, 380, 390, 400, 410, 420, 430, 440, 450, 460, 470, 500.

The CARES Act became law on March 27, 2020.[3] Section 1102 thereof created the PPP (**Ex. A**, codified as 15 U.S.C § 636), funds the same to a maximum of $349,000,000,000, and generally grants the Administrator of the SBA oversight authority of the program. The PPP also explicitly increases eligibility for small businesses and organizations to be able to obtain SBA loans, prescribes certain allowable uses for Payroll Protections Loans ("PPL's"), delegates authority to

---

[3] For a complete Congressional Record of the Bill, see Summary on H.R. 748, https://www.congress.gov/bill/116th-congress/house-bill/748/actions?q={%22search%22:[%22hr+748%22]}&r=1&s=1&KWICView=false (last visited Apr. 4, 2020).

lenders to approve loans, provides factors for evaluating a borrower's eligibility, outlines certification requirements for borrower/applicants, and provides the SBA 15 days to promulgate regulations to carry out the new law. *See generally* **Ex. A**, pp. 6-7, 11.

Those regulations (**Ex. B**), adopted without the normal rulemaking process because of the pandemic emergency, were issued literally *hours before* PPL applications could be submitted (beginning at 12:01 a.m., April 1, 2020). This Interim Final Rule (an oxymoron itself), titled "Business Loan Program Temporary Changes; Paycheck Protection Program" and identified as RIN 3245-AH34 (hereafter "SBA 3245"), provided, among other things, the following:

> c. *How do I determine if I am ineligible?*
>
> Businesses that are not eligible for PPP loans are identified in *13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2 . . . .*

SBA 3245(III)(2)(c) (pp.6-7) (emphasis added). Within a week of enactment, Congressional oversight committees began sending letters to the SBA expressing concern that "these programs are [not] being implemented as Congress intended," [**Ex. F**], and informing the SBA that "the PPP . . . transcends the purposes and limitations of the old program" and should be "unencumbered by the limitations that ought to no longer apply because they hinder rather than help the economic recovery." **Ex. G**.

SBA 3245 also provides that because of the limited funds available, PPL's will be issued on a "*first-come, first-served basis*." Id. at (II)(2)(l) (p. 13).

Following the promulgation of a Proposed Rule (*see generally*, 60 Fed. Reg. 64356 et seq., and in particular 60 Fed. Reg. 64360; **Ex. H**), 13 CFR 120.110 was adopted in 1996 as applicable to all then-existing SBA loans On Dec. 15, 1995, and provided in part:

> The following types of businesses are *ineligible*:
> . . .
> (p) Businesses which:
> (1) Present live performances of a *prurient sexual nature*; or
> (2) Derive directly or indirectly more than *de minimis* gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a *prurient sexual nature*

13 C.F.R. § 120.110(p) (**Ex. I**) (emphasis added and in original) (again, the "Regulations").

In 2019 the SBA also promulgated its Standard Operating Procedure for Lender and Development Company Loan Programs, SOP 50 10 5(K), Ch. 2(III)(A)(15), which apparently sought to provide guidance for administering the Regulations (hereafter the "SOP"; **Ex. J**). These are now arguably applicable to PPLs and have certainly been accepted by lenders as mandatory guidelines.

On April 6, 2020, Plaintiff DV Diamond Club of Flint, LLC ("DV Diamond") submitted an application for a PPL to its bank using the PPP "Borrower Application

Form," SBA Form 2483 (Apr. 2020).[4] **Ex. K**. DV Diamond was required to certify that it is *eligible* for a PPL. Id. at p. 7. DV Diamond believed, based on the Constitutional issues set forth in this Brief, it is eligible, id. at pp. 7-12, however, based on denials in similar businesses, among other factors, it believed denial and/or disqualification for loan forgiveness was inevitable and instituted this action.[5] FAC, ¶85. On April 9, 2020, this Court held a telephonic conference to discuss the basis for DV Diamond's claims with the parties. [Dkt. 7]. Following the conference, DV Diamond withdrew its motion for TRO without prejudice, [dkt. 8], until such time as DV Diamond's application was denied. However, since April 9, 2020, other businesses have been denied PPLs based upon the Regulations and SOP and reached out to DV Diamond to join this action. As of the filing of this Brief, the Plaintiffs listed in **Ex. E**, which were all otherwise eligible for PPL's, but for the regulations and SOP, have had their PPL applications *denied* or rejected by the SBA. Plaintiff

---

[4] In an attempt to fill the void and apparently fearful of violating the Regulations, some banks are taking it upon themselves to include in their application process, in addition to SBA Form 2483, questionnaires that mirror the language in the Regulations. *See* **Ex. L**, p. 1.

[5] Worse, the SBA may initially grant these PPP loans only to use the Regulations and SOP as bases to decline loan forgiveness; another benefit the CARES Act provides to small businesses. *See* FAC at ¶513.

BD and others received a formal written denial from its SBA qualified bank. [6] **Ex. M**. [FAC at ¶ 118 and Ex. I thereto (same document)].

In addition, Plaintiffs are not the only affected party;[7] they have scores of employees and, also at issue, are the professional entertainers who perform on their premises and some of whom can file their own applications for PPL's as self-employed individuals. Thus, Plaintiffs bring this challenge on behalf of themselves, their employees, and the entertainers who perform on their premises.[8]

## **ARGUMENT**

## I.   **TRO AND PRELIMINARY INJUNCTION STANDARDS**

---

[6] All information relating to the applicant bank has been redacted based on Plaintiffs' well-founded fear of retaliation for participating in this action. *See* FAC, ¶515. Plaintiffs wish to emphasize the blame lies with the SBA and Treasury as, it believes, the banks with whom they do business were simply attempting to apply the limited and confusing SBA and Treasury guidance. Id.; *see also* **Ex. C**.

[7] Indeed, other businesses have contacted Plaintiffs wishing to be added; however, Plaintiffs' counsel has been required to 'close' the addition of other businesses as plaintiffs in order to freeze the pleadings and; thereby, seek immediate emergency relief as prayed for herein. Plaintiffs anticipate that additional plaintiffs will join this action at a later date. *See* FAC, ¶517.

[8] *See* Connection Distrib. Co. v. Holder, 557 F.3d 321, 335–36 (6th Cir. 2009) ("facial challenge permitted magazine producer to have standing to assert the rights of those in its publication.  The First Amendment allows "the claimant to strike the law in its entirety based on its application to other individuals not before the court").

When determining whether to grant or deny a motion for preliminary injunction, this Court must weigh: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. Speech First, Inc. v. Schlissel, 939 F.3d 756, 763 (6th Cir. 2019) (quoting Bailey v Callagan, 715 F.3d 956, 958 (6th Cir. 2013)). "[T]he same factors [are] considered in determining whether to issue a TRO or a preliminary injunction." Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006).  These standards demand the entry of a TRO and preliminary injunction here.

## II.   THE REGULATIONS AND SOP ARE REVIEWABLE BY THIS COURT

Plaintiffs invoke the Declaratory Judgment Act and ask the Court to declare their constitutional, statutory, and regulatory rights in relation to the SBA's enforcement of the Regulations and SOP. 28 U.S.C. § 2201. Further, pursuant to 5 U.S.C. § 702, Plaintiffs seek immediate emergency injunctive relief against Defendants.  5 U.S.C. § 701 *et seq.* provides a waiver of federal sovereign immunity under certain circumstances. One such waiver is for "final agency actions for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. Under this waiver,

Plaintiffs request this Court to "hold unlawful and set aside" the Regulations and SOP as "contrary to constitutional right, power, privilege, or immunity . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right [and] without observance of procedure required by law." 5 U.S.C. § 706(2)

SBA 3245, as an Interim Final Rule which mandates enforcement of the Regulations, constitutes a final agency action and is reviewable by this Court under 5 U.S.C. § 704, *see* <u>Pennsylvania v. Trump</u>, 281 F. 3d 553, 565-66 (E.D. Penn. 2017) (noting the plaintiff's "special solicitude in suing the federal government under the APA for injunctive relief" when "su[ing] to halt *affirmative* conduct made by a federal agency"). Venue in this Court is appropriate for all Plaintiffs as Plaintiff DV Diamond Club of Flint, LLC resides within the Eastern District of Michigan. 28 U.S.C §§ 1391(c)(2) & (e)(1)(C); 1402(a).[9]

---

[9] A corporation is deemed to be a resident of "the judicial district in which it maintains its principle place of business." 28 USC § 1391(c)(2). *See also* <u>Sidney Coal Co. v. Soc. Sec. Admin.</u>, 427 F.3d 336, 341–42 (6th Cir. 2005) ("With regard to venue, the district court found that, since 1971, all federal courts interpreting the applicable venue statute, 28 U.S.C. § 1391(e)(3) [now 28 U.S.C. § 1391(e)(1)(C)] *found it required only one plaintiff to reside in the selected district*. . . . the district court's holding with regard to venue is AFFIRMED.") (emphasis added); <u>Detroit Int'l Bridge Co. v. Fed. Highway Admin.</u>, 666 F. Supp. 2d 740, 743 (E.D. Mich. 2009) ("In an action where the *United States is named as a defendant*—as in this case—the lawsuit may be prosecuted *where the plaintiff resides*.") (emphasis added).

Therefore, this Court may properly hear this matter and issue the requested relief.[10]

## III.   PLAINTIFFS ARE ENTITLED TO A TRO AND PRELIMINARY INJUNCTION TO PRECLUDE THEM, THEIR EMPLOYEES, AND THE ENTERTAINERS WHO PERFORM ON THEIR PREMISES, FROM SUFFERING IRREPARABLE HARM

### A.   Plaintiffs Have A Substantial Likelihood of Success of Prevailing on Their Constitutional Claims

#### i.   The Regulations and SOP Violate the First Amendment

##### 1.   *The Regulations and SOP are Content-Based Restrictions on Speech that Do Not Pass Constitutional Scrutiny*

The live performance dance entertainment at issue falls within the protections of the First Amendment. *See, e.g.,* Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565 (1991) (even fully nude dance receives protections under the Constitution).[11]

---

[10] For an agency action to qualify as final, the action must 1) not be tentative or interlocutory in nature, but must be the "'consummation' of the agency's decision-making process," Bennett v. Spear, 520 U.S. 154, 178 (1997) (quoting Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948)), and 2) must be an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Id. (quoting Port of Bos. Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)).

[11]   *Accord,* City of Erie v. Pap's A.M., 529 U.S. 277, 289 (2000) (same); Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 65-66 (1981) ("Nor may an entertainment program be prohibited solely because it displays the nude human figure. '[N]udity alone' does not place otherwise protected material outside the mantle of the First Amendment. . . . Furthermore, . . . nude dancing is not without its First Amendment

"[A] law regulating speech is facially content-based if it 'draws distinctions based on the message,' if it 'distinguishes among different speakers, allowing speech by some but not others,' or if, in its application, 'it require[s] enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred. <u>Thomas v. Bright</u>, 937 F.3d 721, 729 (6th Cir. 2019) (quoting <u>Reed v. Town of Gilbert</u>, 135 S. Ct. 2218, 2227 (2015)); <u>Citizens United v. Fed. Election Comm'n</u>, 558 U.S. 310, 340 (2010); and <u>McCullen v. Coakley</u>, 573 U.S. 464, 479 (2014)). A facially content-neutral law will still be categorized as content-based if "it cannot be 'justified without reference to the content of the regulated speech' or was 'adopted by the government because of a disagreement with the message the speech conveys.'" <u>Schickel v. Dilger</u>, 925 F.3d 858, 876 (6th Cir. 2019).

It is obvious that the Regulations and SOP are content-based on their face; they distinguish loan applications based upon whether the content of entertainment is of a "prurient sexual nature." Moreover, a cursory glance at the administrative record of the Regulations demonstrates the SBA's clear disagreement with Plaintiffs' message, stating that "the public interest in granting or denying applications for financial assistance" empowered it to "exclude small businesses

---

protections from official regulation"). *See also* <u>Virginia v. Black</u>, 538 U.S. 343, 358 (2003) ("the First Amendment affords protection to symbolic or expressive conduct as well as actual speech").

engaging in *lawful* activities of an obscene, pornographic, or prurient sexual nature."
60 Fed. Reg. 64360 (Dec. 15, 1995) (emphasis added).

Content-based distinctions "***are presumptively <u>unconstitutional</u>*** and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." <u>Reed</u>, 135 S. Ct. at 2226-27 (emphasis added). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive content-neutral justification, or 'lack of animus towards the ideas contained' in the regulated speech.'" <u>Id.</u> (citing <u>Cincinnati v. Discovery Network, Inc.</u>, 507 U.S. 410, 429 (1993)).

Businesses engaged in "live or recorded performances of a prurient sexual nature" are excluded from eligibility for a PPL. This determination must be made based upon a review of the *content* of the entertainment, and because the SBA cannot justify this differential eligibility criterion, the Regulations and SOP are unconstitutional under strict scrutiny. Moreover, Plaintiffs are not obligated to establish the <u>un</u>constitutionality of the Regulations and SOP; rather, the burden in this action *is upon the Defendants* to prove their legality. *See e.g.,* <u>United States v. Playboy Entm't Grp., Inc.</u>, 529 U.S. 803, 816-17 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions. . . . [T]he Government bears the burden of identifying a substantial interest and justifying the challenged restriction . . . . [this] imposes an especially

heavy burden on the Government to explain why a less restrictive provision would not be as effective. . . ." (citations omitted)).

There is no compelling governmental interest here. The coronavirus puts everyone in the same boat. Nor are the Regulations and SOP narrowly tailored. A narrowly tailored law might prohibit, for example, loans to businesses purveying *illegal* materials which have been determined to be obscene by a jury (and, in fact, *it does*; *see* 13 C.F.R. §120.110(h) (precluding loans to any business "engaged in any illegal activity)). However, the government cannot throw the protected baby out with the prurient bathwater. Risqué entertainment still finds substantial protection under the First Amendment and may not be infringed by a law which, at most, might target obscene speech. These are content-based restrictions on speech and expression, they are *presumed* to be unconstitutional, and they are.

## 2. *The Regulations and SOP Fail to Conform to the Constitutional Standards of Obscenity*

Separating lawful expression from what is not requires the legal test of obscenity. "Sexual expression which is indecent but not obscene is protected by the First Amendment." <u>Sable Commc'ns of California, Inc. v. FCC</u>, 492 U.S. 115, 126

(1989).[12] The obscenity standard has developed over time, but is generally considered to be at present the following:

> Whether the average person, applying contemporary community standards, would find that the work, *taken as a whole*, appeals to the *prurient interest*;

> Whether the work, applying contemporary community standards, depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law; *and*

> Whether a reasonable person would find that the work lacks serious literary, artistic, political, or scientific value.

Miller v. California, 413 U.S. 15, 24 (1973), *as clarified by* Smith v. United States, 431 U.S. 291, 300 n.6 (1977); and Pope v. Illinois, 481 U.S. 497, 500-01 & n.3 (1987) (collective here, the "Miller Test").

". . . [T]he three prongs of the Miller test are conjunctive, rather than being disjunctive; therefore . . . [entertainment] is not obscene unless *all three prongs* have been established." *See, e.g.*, Book Friends, Inc. v. Taft, 223 F.Supp.2d 932, 936 (S.D. Ohio 2002) (emphasis added), *citing* Reno v. ACLU, 521 U.S. 844, 873 (1997) (emphasis added). *Accord*, Penthouse Intern., Ltd. V. McAuliffe, 610 F.2d 1353, 1363 (5th Cir. 1980).

---

[12] *See also* F.C.C. v. Pacifica Foundation, 438 U.S. 726, 745 (1978) ("[T]he fact that society may find speech *offensive* is not a sufficient reason for suppressing it."); and Carey v. Populations Services Int'l, 431 U.S. 678, 701 (1977) ("[W]here obscenity is not involved, we have consistently held that the fact that protected speech may be *offensive* to some does not justify its suppression") (emphasis added).

The Regulations are obviously keyed to the first prong of the <u>Miller</u> test; prurient appeal. The Supreme Court defines prurient subject matter as appealing to a "*shameful or morbid," and "unhealthy," interest in sex*, as opposed to a normal, healthy, sexual desire. <u>Roth v. United States</u>, 354 U.S. 476, 487 n.20 (1957); and <u>Brockett v. Spokane Arcades, Inc</u>., 472 U.S. 491, 498-99 (1985).

In <u>Brockett</u>, the Court clarified that the <u>Roth</u> standard should *<u>not</u>* be construed to extend obscenity to expression that invoked merely "lustful thoughts," *or that appealed to "<u>normal, healthy sexual desires</u>*." <u>Brockett</u>, *supra* (emphasis added). The Court clearly held that the government may not outlaw expression which, "taken as a whole, *does no more than arouse, 'good, old fashioned, healthy' interest in sex*." <u>Id</u>. at 499 (emphasis added) (quoting the opinion being reversed there; <u>J-R Distributors, Inc. v. Eikenberry</u>, 725 F.2d 482, 492 (9th Cir. 1984)).

The Regulations fail to satisfy these constitutional standards.

First, they do not even comport with the *first element* of the obscenity test (prurient appeal). Even assuming that "prurient sexual nature" has the same meaning as "prurient interest" under the <u>Miller</u> Test,[13] the Regulations do not require the reviewing official to consider the entertainment as a "*whole*" (for example, here,

---

[13] If <u>Miller</u> does not apply, then there is effectively no definition of this term at all and, thus, no guidance for the SBA's content-based decisions.

where much of the live entertainment is *clothed*). Neither do they require that "prurience" be considered in the context of the relevant contemporary community standards as mandated by the <u>Miller</u> Test. *Cf.* <u>Reno</u> 521 U.S. at 873 (invalidating a section of the Communications Decency Act ("CDA") because, *inter alia*, while it included *part* of the second component of the <u>Miller</u> Test – patent offensiveness – it did not require, as the <u>Miller</u> Test requires, the evaluation to be restricted to depictions "specifically defined by applicable state law").

These failings are critical because of the constitutional protections that are intentionally built into every component of the <u>Miller</u> test, including the "prurient appeal" element. <u>Reno</u> 521 U.S. at 873 ("Each of <u>Miller's</u> additional two prongs . . . *critically limits the uncertain sweep of the obscenity definition*.") (emphasis added). In addition, courts have made clear that a jury, selected from the community at large, is presumed to know—*as a collective body*—what the contemporary community standards are. *See, e.g.*, <u>Smith</u>, 431 U.S. at 302.

Accordingly, whether entertainment appeals to a "prurient appeal" *as measured by the contemporary community standards* is a question of fact for a *jury* to decide, where the substantive limitations of the obscenity test "are passed on to the jury in the form of *instructions*." <u>Id</u>. at 293, 300-302 (emphasis added). There is *nothing* to presume that a single bank employee or SBA representative administering these loan applications, *individually,* has any knowledge or concept of the relevant

17

community standards (and there is nothing in that law that permits the assumption that they do), *let alone that they even know that they are constitutionally required to apply them in considering eligibility for these PPLs*. Nor are they given any guidance concerning how the phrase "prurient sexual nature" is to be defined or applied (discussed in the next subsection below).[14]

The legal presumption that a *jury* inherently knows the community standards, is subject to an additional "check" to protect speech. The overseeing judge must independently evaluate, irrespective of the jury's finding of obscenity, the obscenity *vel non* of the entertainment in question. *See, e.g.*, Ginsberg v. New York, 390 U.S. 676, 707 (1968) (Harlan J. concurring) (". . . the question of whether particular material is obscene inherently entails a constitutional judgement for which *the Court has ultimate responsibility*, and hence that is incumbent upon us to judge for ourselves, *de novo* as it were, the obscenity vel non of the challenged matter") (emphasis added, numerous citations omitted). *Accord* Penthouse, 610 F.2d at 1363-64.

---

[14] *Compare* Luke Records, Inc. v. Navarro, 960 F.2d 134, 135 (11th Cir. 1992) (obscenity determination reversed where Sheriff only introduced a copy of the audio recording and Judge determined the issue without a jury based only on his own conception of community standards). Here, a bank or SBA official may make a determination on the "prurient sexual nature" of the entertainment with *no factual evidence whatsoever to guide his or her decision*.

The Constitution requires that a determination of obscenity be arrived at through a carefully constrained, sophisticated inquiry involving multiple factors, all of which must be present in order to confirm that the speech is unprotected. That searching inquiry should be contrasted with the Regulations and SOP, which envision that a small business can be barred from emergency PPP funds based on the opinion of a *single bank employee* (or SBA administrator) who may have *no legal expertise whatsoever* and who receives no particularized instructions in regard to these difficult constitutional concepts. Simply put, there is absolutely none of the judicial oversight mandated by the First Amendment, rendering this process constitutionally deficient.

Second, the Regulations unconstitutionally relax the stringent *three*-part standard to differentiate fully-protected (albeit even indecent) expression from the extremely limited class of obscene materials that the government may constitutionally discourage or prohibit. The Regulations completely ignore the potential patent offensiveness and the "serious value" of the entertainment and, as stated above, expression is relieved of constitutional protection only if it violates <u>*all*</u> <u>*three*</u> prongs of the <u>Miller</u> Test. Here again, <u>Reno</u> is instructive. Whereas the CDA included an incomplete patent offensive inquiry, it did not require evaluation of either the prurient appeal of the material or its "value." "Just because a definition

including *three* limitations is not vague, *it does not follow that one of these limitations, <u>standing by itself</u>, is not vague.*" 521 U.S. at 873 (emphasis added).

There is no question that the Regulations are at least premised on the <u>Miller</u> Test for obscenity. *See* 60 Fed. Reg. 64360 (proposed Dec. 15, 1995) (citing <u>Miller</u>) (**Ex. H**). It is also equally clear that the SBA did not have a full understanding of obscenity jurisprudence when it considered the adoption of the Regulations. *See* <u>id</u>. (". . . SBA has determined that it may exclude businesses engaged in *lawful* activities of an *obscene*, pornographic, or prurient sexual nature") (emphasis added). *That's a non-sequitur.* If something is *obscene* it is illegal, plain and simple, and can't qualify for an SBA loan anyway. *See* 13 C.F.R §120.110(h). Plaintiffs make no challenge to *that* provision.

Moreover, while the administrative commentary leading up to the adoption of the Regulations states that applicants' First Amendment rights would not be jeopardized by the rules because they may "*exercise their freedoms, operate their businesses, and obtain any other aid available to them*" (60 Fed. Reg. 64360, *supra*) (emphasis added), *here* Plaintiffs and others similarly situated *cannot* get "other aid" regarding the pandemic *because SBA has barred them from doing so*; there are no alternative sources of funding. And, without this emergency relief, they may never open their doors again and will then be deprived of their ability to continue to engage in protected expression.

Third, the Regulations fail to provide *any standards whatsoever* to differentiate otherwise protected expression from illegal obscenity, other than a single undefined word ("prurient") taken completely out of its usual constitutional context.

### 3. The Regulations and SOP Violate the Doctrine of Unconstitutional Conditions and Effectuate a Prior Restraint Upon Speech and Expression

Plaintiffs are faced with a stark choice by the Regulations and SOP: Abandon their chosen form of expression or forgo a government benefit available to nearly every other small business in America. That is not a choice. Rather, it represents a blatant violation of the doctrine of unconstitutional conditions:

> For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which (it) could not command directly.' Speiser v. Randall, 357 U.S. 513, 526 [(1958)]. Such interference with constitutional rights is *impermissible*.

Perry v. Sindermann, 408 U.S. 593, 597 (1972) (emphasis added). *Accord*, G&V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1077-78 (6th Cir. 1994)

(municipal requirement of liquor license applicant that it waive its right to present topless dancing as a condition of license approval violated this doctrine).

In this context, the withholding of otherwise available government benefits also represents a prior restraint on speech. "A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials." Nightclubs, Inc. v. City of Paducah, 202 F.3d 884, 889 (6th Cir. 2000) (*citing* Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 553 (1975)). While not unconstitutional per se, they "come to this Court bearing a heavy presumption *against* [*their*] *constitutional validity*." Id. at 558 (emphasis and clarification added). A scheme that places "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225-26 (1990), *citing* Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 757 (1988).

The Regulations and SOP undeniably constitute a prior restraint on expression. For an applicant to qualify for a PPL, it must *eschew* its constitutional right to engage in the presentation of entertainment that is of a "prurient sexual nature" (whatever that may mean) in the future; a *classic* prior restraint. See, e.g., G&V Lounge, 23 F.3d at 1075 (municipal requirement of liquor license applicant that it waive its right to present topless dancing as a condition of license approval was a sufficient prior restraint to satisfy the "injury-in-fact" standard so as to warrant

22

the entry of injunctive relief). Further, it will cause Plaintiffs to self-censor in order to avoid running afoul of the nebulous "prurient" requirement, entertainers will dance less provocatively; thereby, chilling their constitutionally-protected message of eroticism.

### ii. The Regulations and SOP are Impermissibly Vague

Statutes which are vague, and which are not subject to reasonable interpretation by common men, inherently deny due process and are therefore unconstitutional. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). To be constitutional, the law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Id.; and Kolender v. Lawson, 461 U.S. 352, 358 (1983). These constitutional concerns are heightened when a vague statute "abuts upon sensitive areas of basic First Amendment freedoms." Grayned, 408 U.S. at 109. See also Smith v. Goguen, 415 U.S. 566, 573 (1974). Succinctly put, precision in draftsmanship is the touchstone of constitutionality for a regulation that impacts upon First Amendment rights. See, e.g., Keyishian v. Board of Regents, 385 U.S. 589, 603-04 (1967).

> [T]he vagueness doctrine has two primary goals: (1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement by police, judges, and juries. With respect to the first goal, the Supreme Court has stated that "[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. Gen. Constr.

Co., 269 U.S. 385 (1925). With respect to the second goal, the Supreme Court stated that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis." Grayned, 408 U.S. at 108–09.

Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 551 (6th Cir. 2007) (some citations omitted); *see also* United States v. Bamberg, 478 F.3d 934, 937 (8th Cir. 2007).

The Regulations and SOP violate both aspects of the vagueness inquiry. They fail to supply intelligible guidelines for businesses that may ultimately find themselves in need of relief administered by the SBA, and they fail to provide the objective guidance needed to avoid arbitrary application.

An individual seeking to apply or comply with the Regulations is first tasked with what definition of "prurient" to apply. Is it the legal definition contained in the Miller Test above, or something else? No one knows. Simply put, administering officials are provided *no guidance whatsoever* as to what definition they should apply *and* how they are to apply it.

Indeed, the SOP anticipates that this is too much to expect of the *lender,* who is tasked with making an initial determination but is then required to submit its analysis to the SBA "for a final Agency decision on eligibility." SOP 50 10 5(K)(B)(3)(15)(b)-(c). The fact that a review process is supplied means that

administering officials are not trusted with consistently applying the standard. But how is the SBA to operationalize this phrase? Again, we have *no idea*.

The Regulations and SOP also suffer from the vagueness identified in <u>Reno</u>, *supra*. In distinguishing the CDA before the Court from the law it upheld in <u>Ginsberg v. State of New York</u>, 390 U.S. 629 (1968), the Court noted that the CDA lacked any definition of "indecent" or "patently offensive." 521 U.S. at 865, 871. This parallels the undefined term "prurient" at bar. Importantly the Court rejected the argument that such terms were no more vague than the <u>Miller</u> Test itself. The Court explained:

> Because the CDA's "patently offensive" standard (and, we assume, *arguendo,* its synonymous "indecent" standard[15]) is one part of the three-prong *Miller* test, the Government reasons, it cannot be unconstitutionally vague.
>
> The Government's assertion is incorrect as a matter of fact. The second prong of the *Miller* test—the purportedly analogous standard—contains a critical requirement that is omitted from the CDA: that the proscribed material be "specifically defined by the applicable state law." This requirement reduces *the vagueness inherent in the open-ended term "patently offensive" as used in the CDA.*
>
> &ast; &ast; &ast;
>
> The Government's reasoning is also flawed. Just because a definition including three limitations is not vague, it does not follow that one of those limitations, standing by itself, is not vague. (footnoted omitted). Each of *Miller*'s additional two prongs—(1) that, taken as a whole, the material appeal to the "prurient" interest, and (2) that it "lac[k] serious literary, artistic, political, or scientific value"—critically *limits the **uncertain sweep** of the obscenity definition.*

---

[15] Nor do we know here whether the Regulation's words are *supposed* to be identical to the first prong concept of the <u>Miller</u> Test.

*      *      *

> In contrast to *Miller* and our other previous cases, the CDA thus presents a greater threat of censoring speech that, in fact, falls outside the statute's scope. Given *the vague contours of the coverage of the statute*, it unquestionably silences some speakers whose messages would be entitled to constitutional protection.

Id. at 873-74 (emphasis added; footnotes omitted).

The Regulations and SOP use similar types of words—substitute "prurient" for "patently offensive"— yet the Supreme Court has ruled this to be inherently vague when standing without the safeguards embodied in the other two prongs of the Miller Test. Expecting a financial administrator to make these decisions rather than a full and appropriately instructed jury (or knowledgeable judge) invites arbitrary and subjective determinations unmoored by any meaningful statutory guidance.[16]

### iii.   The Regulations and SOP Violate the Equal Protection and Occupational Liberty Components of the Fifth Amendment

The Fifth Amendment "incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth Amendment" and the same analysis is applied in both contexts. Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d

---

[16]   Nor is the term "de minimus" clear as used in 13 C.F.R. §120.110(p)(2). The failure to quantify that term is an independent basis to conclude that the regulations are unconstitutionally vague and give total unbridled discretion.

365, 379 (6th Cir. 2011). *See also* <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).

The Regulations and the SOP do not treat all people alike. Those who are *not* associated with entertainment of a "prurient sexual nature" (again, whatever that may mean) are provided with financial assistance to hopefully survive this pandemic. Those who engage in speech which a Lender views as "prurient" are frozen out of the program and left to die in the wilderness. Strict scrutiny applies and there is no compelling governmental interest to justify this distinction nor do the Regulations utilize the least restrictive means of regulation.[17]

Similarly, these provisions violate the occupational Liberty component as found in the Fifth Amendment's Due Process Clause. *See, e.g.,* <u>Allgeyer v. La.</u>, 165 U.S. 578, 590 (1897). This right allows an individual:

> *to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned.*

<u>Id</u>. at 589 (emphasis added).

---

[17] "[T]he decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.'" <u>Williams v Rhodes</u>, 393 U.S. 23, 31 (1968) (quoting <u>NAACP v. Button</u>, 371 U.S. 415, 138 (1963); *See also* <u>Reed</u>, 135 S.Ct. at 2231.

By facially discriminating against Plaintiffs and professional entertainers in denying them PPP benefits, which would be available to them but for their engagement in a constitutionally protected activity, the Regulations and SOP violate these constitutional concepts and should be enjoined.

### iv. The SBA Lacks the Authority to Limit the Type of Businesses Which are Eligible for a PPP Loan

Before the Court is the purely legal question of whether the adoption of regulations limiting which businesses are eligible for PPP loans is a lawful interpretation of the PPP by the SBA. *See* Sunrise Coop., Inc. v. United States Dept. of Agric., 891 F.3d 652, 656 (6th Cir. 2018) (analyzing the validity of an agency rule as being "based solely upon legal grounds") (quotation omitted). In Sunrise Coop., the Sixth Circuit summarized the familiar Chevron analysis:

> Under Chevron, courts defer to agencies' reasonable readings of ambiguous statutes. The first step of Chevron instructs courts to analyze whether Congress has "directly spoken to the precise question at issue." Chevron, 467 U.S. at 842, 104 S.Ct. 2778. If it has, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842–43, 104 S.Ct. 2778. We employ "traditional tools of statutory construction" to determine whether Congress has "spoken to the precise question at issue." Id. at 842, 843 n.9, 104 S.Ct. 2778. If the statute is unambiguous, then Congress has spoken to the precise question at issue. *See* id. at 843, 104 S.Ct. 2778. In other words, if a construction of a statute "follows from the unambiguous terms of the statute," the statute "leaves no room for agency discretion." Nat'l Cable & Telecomm. Ass'n v. Brand-X Internet Servs., 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005). If a statute is ambiguous, the

> interpretation might nevertheless be unreasonable under Chevron's second step, which asks whether "the agency's [interpretation] is based on a permissible construction of the statute." Chevron, 467 U.S. at 843

Sunrise Coop., Inc., 891 F.3d at 656 (citing Chevron, U.S.A., Inc., v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984); Esquivel-Quintana v. Sessions, 137 S. Ct. 1562 (2017).

Section 1114 of the CARES Act [**Ex. A**, p. 11] instructs the Administrator to issue regulations "to carry out this title and the amendments made by this title" within 15 days and without regard to the usual notice requirements in 5 U.S.C. § 553(b). Also, 15 U.S.C. § 634 authorizes the Administrator to "make such rules and regulations as he deems necessary to carry out the authority vested in him by or pursuant to this chapter." The Regulations then issued, SBA 3245(III)(2)(c) state: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's [SOP] 50 10, Subpart B, Chapter 2 . . . ." [**Ex. B**, pp 7-8].

SBA 3245(III)(2)(c) and 13 CFR 120.110 (at least as applied to the PPP portion of the CARES Act) are invalid because the statute is unambiguous as to what businesses are eligible for PPP Loans. Specifically, 15 U.S.C. § 636(a)(36)(F)(ii)(II) states that, to determine the eligibility of a borrower, the lender "shall consider whether the borrower – (aa) was in operation on February 15, 2020; and (bb)(AA)

had employees for whom the borrower paid salaries and payroll taxes; or (BB) paid independent contractors, as reported on a Form 1099-MISC." No additional qualifications are specified and no additional qualifications may be imposed on an applicant.

### B. Plaintiffs Will Suffer Irreparable Harm if this Court does Not Issue an Injunction

When "a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." A.C.L.U. of Ky. v. McCreary Cty., Ky., 354 F.3d 438, 445 (6th Cir. 2003). In the First Amendment context, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

Plaintiffs will surely suffer irreparable injury by both the deprivation of their constitutional rights and the ruination of their—constitutionally protected—businesses. Plaintiffs' doors are shuttered due to an unprecedented pandemic,[18] and the glimmer of hope Congress offered through the PPP will be denied based on the nature of Plaintiffs' protected expression. See SEIU Health Care Mich. v. Snyder,

---

[18] While the COVID virus is the ultimate culprit, Plaintiffs' businesses were closed by direct state action in the form of Governors' closure orders which in turn were based on standards promulgated by the Federal Government. See, The President's Corona Virus Guidelines for America / 30 Days to Slow the Spread, https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (Last accessed 4/6/20).

875 F. Supp. 2d 710, 723 (E.D. Mich. 2012) ("Irreparable injury based on financial loss alone will only be found where the potential economic loss is so great as to threaten the existence of the movant's business or "financial ruin" will result.").

Moreover, money damages are likely unavailable based on immunity and are incalculable. *See* U.S.C. § 702. The only remedies available to Plaintiffs are declaratory and injunctive relief. Without the issuance of an injunction, Plaintiffs risk the ruination of their businesses because the PPP funds provided by the Act are to be issued on a 'first-come, first-served' basis. The money available is rapidly being depleted as the Court reads this; once it is gone, Plaintiffs cannot recover even if the Regulations and SOP are later invalidated. Plaintiffs, their employees, and the entertainers who perform on their premises will undeniably experience irreparable harm if an injunction is not granted.

### C. An Injunction Would Cause No Harm to Others and the Public Interest Weighs in Favor of the Entry of an Injunction

As the Sixth Circuit has long held, "it is always in the public interest to prevent a violation of a party's constitutional rights." G&V Lounge, 23 F.3d at 1079, (citing Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 383 (1979); Planned Parenthood Ass'n v. City of Cincinnati, 822 F.2d 1390, 1400 (6th Cir. 1987)). This concern is particularly acute when a prior restraint is involved; "the most serious and the least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart,

427 U.S. 539, 539 (1976). And, as this Court has noted, "it may be assumed that the Constitution is the *ultimate expression of the public interest*." <u>Llewlyn v. Parkland Cty. Pros.</u>, 402 F. Supp. 1379, 1393 (E.D. Mich. 1975) (emphasis added).

Consequently, the public interest clearly weighs in favor of granting the requested injunction. This is particularly true when the Plaintiffs' employees (who are obviously part of the public) will likely be getting the lion's share (75%) of the loan funds, who can then use those monies to pay their bills (and, thus, sharing the loan proceeds with other members of the public), and where the Regulations and SOP are a "very probable violation of Supreme Court precedent." <u>Books, Inc.  v. Pottawattamie Cty.</u>, 978 F. Supp. 1247, 1256 (S.D. Iowa 1997).

Moreover, there would be no harm to others by entry of an injunction. In fact, the failure to grant the injunction could result in the Plaintiffs' financial, the destruction of similar businesses, and the loss of all of their employees. That domino effect could then place additional financial burdens on the rest of society to support those employees through unemployment benefits, welfare, Medicaid, and the like.

All factors weigh in support of granting an injunction and TRO.

## IV.    NO BOND SHOULD BE REQUIRED

Fed. R. Civ. P. 65(c) permits requiring the posting of a bond as a condition for the entry of a preliminary injunction. However, when, as here, constitutional

rights are at issue, no bond should be required. *See, e.g.*, <u>Diaz v. Brewer</u>, 656 F.3d 1008, 1015 (9th Cir. 2011) (holding no bond was required in a case concerning a violation of constitutional rights); <u>Crowley v. Local No. 82</u>, 679 F.2d 978, 1000 (1st Cir. 1982) (listing authorities establishing that "no bond is required in suits to enforce important federal rights or 'public interests'"), *reversed on other grounds*, 467 U.S. 526 (1984); <u>Moore v. Johnson</u>, No. 14-11903, 2014 WL 4924409, at *9 (E.D. Mich. May 23, 2014) (on a First Amendment challenge to a statute, "the Court concludes that no security bond is necessary").

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request this Honorable Court issue a TRO and preliminary injunction barring enforcement of 13 C.F.R. § 120.110(p) and SBA SOP 50 10 5(K), Ch. 2(III)(A)(15), as requested in greater detail in the Motion itself.. Moreover, this Court should also order the Defendants to approve Plaintiffs' loan applications if they are otherwise eligible but for enforcement of the Regulations and SOP, to restore Plaintiffs to their places in the application queue as they were at the time of application in the event that their applications have already been formally denied or derailed, and to immediately notify the SBA lending banks to immediately discontinue using the aforementioned Regulations and SOP as criteria for determining PPL applications. Finally, no bond should be required.

Respectfully submitted,

Dated: April 17, 2020                   */s/ Bradley J. Shafer*

BRADLEY J. SHAFER (MI P36604)
Brad@BradShaferLaw.com
MATTHEW J. HOFFER (MI P70495)
Matt@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
(517) 886-6560
*Attorneys for All Plaintiffs*