H. R. 748

# One Hundred Sixteenth Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Friday,*
*the third day of January, two thousand and twenty*

# An Act

To amend the Internal Revenue Code of 1986 to repeal the excise tax on high
cost employer-sponsored health coverage.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Coronavirus Aid, Relief, and
Economic Security Act" or the "CARES Act".

**SEC. 2. TABLE OF CONTENTS.**

The table of contents for this Act is as follows:

Sec. 1. Short title.
Sec. 2. Table of contents.
Sec. 3. References.

DIVISION A—KEEPING WORKERS PAID AND EMPLOYED, HEALTH CARE
SYSTEM ENHANCEMENTS, AND ECONOMIC STABILIZATION

TITLE I—KEEPING AMERICAN WORKERS PAID AND EMPLOYED ACT

Sec. 1101. Definitions.
Sec. 1102. Paycheck protection program.
Sec. 1103. Entrepreneurial development.
Sec. 1104. State trade expansion program.
Sec. 1105. Waiver of matching funds requirement under the women's business cen-
    ter program.
Sec. 1106. Loan forgiveness.
Sec. 1107. Direct appropriations.
Sec. 1108. Minority business development agency.
Sec. 1109. United States Treasury Program Management Authority.
Sec. 1110. Emergency EIDL grants.
Sec. 1111. Resources and services in languages other than English.
Sec. 1112. Subsidy for certain loan payments.
Sec. 1113. Bankruptcy.
Sec. 1114. Emergency rulemaking authority.

TITLE II—ASSISTANCE FOR AMERICAN WORKERS, FAMILIES, AND
BUSINESSES

Subtitle A—Unemployment Insurance Provisions

Sec. 2101. Short title.
Sec. 2102. Pandemic Unemployment Assistance.
Sec. 2103. Emergency unemployment relief for governmental entities and nonprofit
    organizations.
Sec. 2104. Emergency increase in unemployment compensation benefits.
Sec. 2105. Temporary full Federal funding of the first week of compensable regular
    unemployment for States with no waiting week.
Sec. 2106. Emergency State staffing flexibility.
Sec. 2107. Pandemic emergency unemployment compensation.
Sec. 2108. Temporary financing of short-time compensation payments in States
    with programs in law.
Sec. 2109. Temporary financing of short-time compensation agreements.

**EXHIBIT A**
**Page 1**

H. R. 748—6

# DIVISION A—KEEPING WORKERS PAID AND EMPLOYED, HEALTH CARE SYSTEM ENHANCEMENTS, AND ECONOMIC STABILIZATION

## TITLE I—KEEPING AMERICAN WORKERS PAID AND EMPLOYED ACT

**SEC. 1101. DEFINITIONS.**

In this title—

(1) the terms "Administration" and "Administrator" mean the Small Business Administration and the Administrator thereof, respectively; and

(2) the term "small business concern" has the meaning given the term in section 3 of the Small Business Act (15 U.S.C. 636).

**SEC. 1102. PAYCHECK PROTECTION PROGRAM.**

(a) IN GENERAL.—Section 7(a) of the Small Business Act (15 U.S.C. 636(a)) is amended—

(1) in paragraph (2)—

(A) in subparagraph (A), in the matter preceding clause (i), by striking "and (E)" and inserting "(E), and (F)"; and

(B) by adding at the end the following:

"(F) PARTICIPATION IN THE PAYCHECK PROTECTION PROGRAM.—In an agreement to participate in a loan on a deferred basis under paragraph (36), the participation by the Administration shall be 100 percent."; and

(2) by adding at the end the following:

"(36) PAYCHECK PROTECTION PROGRAM.—

"(A) DEFINITIONS.—In this paragraph—

"(i) the terms 'appropriate Federal banking agency' and 'insured depository institution' have the meanings given those terms in section 3 of the Federal Deposit Insurance Act (12 U.S.C. 1813);

"(ii) the term 'covered loan' means a loan made under this paragraph during the covered period;

"(iii) the term 'covered period' means the period beginning on February 15, 2020 and ending on June 30, 2020;

"(iv) the term 'eligible recipient' means an individual or entity that is eligible to receive a covered loan;

"(v) the term 'eligible self-employed individual' has the meaning given the term in section 7002(b) of the Families First Coronavirus Response Act (Public Law 116–127);

"(vi) the term 'insured credit union' has the meaning given the term in section 101 of the Federal Credit Union Act (12 U.S.C. 1752);

"(vii) the term 'nonprofit organization' means an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt from taxation under section 501(a) of such Code;

EXHIBIT A
Page 2

H. R. 748—7

"(viii) the term 'payroll costs'—
"(I) means—
"(aa) the sum of payments of any compensation with respect to employees that is a—
"(AA) salary, wage, commission, or similar compensation;
"(BB) payment of cash tip or equivalent;
"(CC) payment for vacation, parental, family, medical, or sick leave;
"(DD) allowance for dismissal or separation;
"(EE) payment required for the provisions of group health care benefits, including insurance premiums;
"(FF) payment of any retirement benefit; or
"(GG) payment of State or local tax assessed on the compensation of employees; and
"(bb) the sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from self-employment, or similar compensation and that is in an amount that is not more than $100,000 in 1 year, as prorated for the covered period; and
"(II) shall not include—
"(aa) the compensation of an individual employee in excess of an annual salary of $100,000, as prorated for the covered period;
"(bb) taxes imposed or withheld under chapters 21, 22, or 24 of the Internal Revenue Code of 1986 during the covered period;
"(cc) any compensation of an employee whose principal place of residence is outside of the United States;
"(dd) qualified sick leave wages for which a credit is allowed under section 7001 of the Families First Coronavirus Response Act (Public Law 116–127); or
"(ee) qualified family leave wages for which a credit is allowed under section 7003 of the Families First Coronavirus Response Act (Public Law 116–127); and
"(ix) the term 'veterans organization' means an organization that is described in section 501(c)(19) of the Internal Revenue Code that is exempt from taxation under section 501(a) of such Code.
"(B) PAYCHECK PROTECTION LOANS.—Except as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection.

H. R. 748—8

"(C) REGISTRATION OF LOANS.—Not later than 15 days after the date on which a loan is made under this paragraph, the Administration shall register the loan using the TIN (as defined in section 7701 of the Internal Revenue Code of 1986) assigned to the borrower.

"(D) INCREASED ELIGIBILITY FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS.—

"(i) IN GENERAL.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of—

"(I) 500 employees; or

"(II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates.

"(ii) INCLUSION OF SOLE PROPRIETORS, INDEPENDENT CONTRACTORS, AND ELIGIBLE SELF-EMPLOYED INDIVIDUALS.—

"(I) IN GENERAL.—During the covered period, individuals who operate under a sole proprietorship or as an independent contractor and eligible self-employed individuals shall be eligible to receive a covered loan.

"(II) DOCUMENTATION.—An eligible self-employed individual, independent contractor, or sole proprietorship seeking a covered loan shall submit such documentation as is necessary to establish such individual as eligible, including payroll tax filings reported to the Internal Revenue Service, Forms 1099–MISC, and income and expenses from the sole proprietorship, as determined by the Administrator and the Secretary.

"(iii) BUSINESS CONCERNS WITH MORE THAN 1 PHYSICAL LOCATION.—During the covered period, any business concern that employs not more than 500 employees per physical location of the business concern and that is assigned a North American Industry Classification System code beginning with 72 at the time of disbursal shall be eligible to receive a covered loan.

"(iv) WAIVER OF AFFILIATION RULES.—During the covered period, the provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan for—

"(I) any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72;

H. R. 748—9

"(II) any business concern operating as a franchise that is assigned a franchise identifier code by the Administration; and

"(III) any business concern that receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958 (15 U.S.C. 681).

"(v) EMPLOYEE.—For purposes of determining whether a business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) employs not more than 500 employees under clause (i)(I), the term 'employee' includes individuals employed on a full-time, part-time, or other basis.

"(vi) AFFILIATION.—The provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor thereto, shall apply with respect to a nonprofit organization and a veterans organization in the same manner as with respect to a small business concern.

"(E) MAXIMUM LOAN AMOUNT.—During the covered period, with respect to a covered loan, the maximum loan amount shall be the lesser of—

"(i)(I) the sum of—

"(aa) the product obtained by multiplying—

"(AA) the average total monthly payments by the applicant for payroll costs incurred during the 1-year period before the date on which the loan is made, except that, in the case of an applicant that is seasonal employer, as determined by the Administrator, the average total monthly payments for payroll shall be for the 12-week period beginning February 15, 2019, or at the election of the eligible recipient, March 1, 2019, and ending June 30, 2019; by

"(BB) 2.5; and

"(bb) the outstanding amount of a loan under subsection (b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which covered loans are made available to be refinanced under the covered loan; or

"(II) if requested by an otherwise eligible recipient that was not in business during the period beginning on February 15, 2019 and ending on June 30, 2019, the sum of—

"(aa) the product obtained by multiplying—

"(AA) the average total monthly payments by the applicant for payroll costs incurred during the period beginning on January 1, 2020 and ending on February 29, 2020; by

"(BB) 2.5; and

"(bb) the outstanding amount of a loan under subsection (b)(2) that was made during the period beginning on January 31, 2020 and ending on the date on which covered loans are made available to be refinanced under the covered loan; or

H. R. 748—10

"(ii) $10,000,000.

"(F) ALLOWABLE USES OF COVERED LOANS.—

"(i) IN GENERAL.—During the covered period, an eligible recipient may, in addition to the allowable uses of a loan made under this subsection, use the proceeds of the covered loan for—

"(I) payroll costs;

"(II) costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums;

"(III) employee salaries, commissions, or similar compensations;

"(IV) payments of interest on any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation);

"(V) rent (including rent under a lease agreement);

"(VI) utilities; and

"(VII) interest on any other debt obligations that were incurred before the covered period.

"(ii) DELEGATED AUTHORITY.—

"(I) IN GENERAL.—For purposes of making covered loans for the purposes described in clause (i), a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to make and approve covered loans, subject to the provisions of this paragraph.

"(II) CONSIDERATIONS.—In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower—

"(aa) was in operation on February 15, 2020; and

"(bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or

"(BB) paid independent contractors, as reported on a Form 1099–MISC.

"(iii) ADDITIONAL LENDERS.—The authority to make loans under this paragraph shall be extended to additional lenders determined by the Administrator and the Secretary of the Treasury to have the necessary qualifications to process, close, disburse and service loans made with the guarantee of the Administration.

"(iv) REFINANCE.—A loan made under subsection (b)(2) during the period beginning on January 31, 2020 and ending on the date on which covered loans are made available may be refinanced as part of a covered loan.

"(v) NONRECOURSE.—Notwithstanding the waiver of the personal guarantee requirement or collateral under subparagraph (J), the Administrator shall have no recourse against any individual shareholder, member, or partner of an eligible recipient of a covered loan for nonpayment of any covered loan, except to

H. R. 748—11

the extent that such shareholder, member, or partner uses the covered loan proceeds for a purpose not authorized under clause (i).

"(G) BORROWER REQUIREMENTS.—

"(i) CERTIFICATION.—An eligible recipient applying for a covered loan shall make a good faith certification—

"(I) that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient;

"(II) acknowledging that funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments;

"(III) that the eligible recipient does not have an application pending for a loan under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan; and

"(IV) during the period beginning on February 15, 2020 and ending on December 31, 2020, that the eligible recipient has not received amounts under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan.

"(H) FEE WAIVER.—During the covered period, with respect to a covered loan—

"(i) in lieu of the fee otherwise applicable under paragraph (23)(A), the Administrator shall collect no fee; and

"(ii) in lieu of the fee otherwise applicable under paragraph (18)(A), the Administrator shall collect no fee.

"(I) CREDIT ELSEWHERE.—During the covered period, the requirement that a small business concern is unable to obtain credit elsewhere, as defined in section 3(h), shall not apply to a covered loan.

"(J) WAIVER OF PERSONAL GUARANTEE REQUIREMENT.— During the covered period, with respect to a covered loan—

"(i) no personal guarantee shall be required for the covered loan; and

"(ii) no collateral shall be required for the covered loan.

"(K) MATURITY FOR LOANS WITH REMAINING BALANCE AFTER APPLICATION OF FORGIVENESS.—With respect to a covered loan that has a remaining balance after reduction based on the loan forgiveness amount under section 1106 of the CARES Act—

"(i) the remaining balance shall continue to be guaranteed by the Administration under this subsection; and

"(ii) the covered loan shall have a maximum maturity of 10 years from the date on which the borrower applies for loan forgiveness under that section.

"(L) INTEREST RATE REQUIREMENTS.—A covered loan shall bear an interest rate not to exceed 4 percent.

H. R. 748—12

"(M) LOAN DEFERMENT.—
"(i) DEFINITION OF IMPACTED BORROWER.—
"(I) IN GENERAL.—In this subparagraph, the term 'impacted borrower' means an eligible recipient that—
"(aa) is in operation on February 15, 2020; and
"(bb) has an application for a covered loan that is approved or pending approval on or after the date of enactment of this paragraph.
"(II) PRESUMPTION.—For purposes of this subparagraph, an impacted borrower is presumed to have been adversely impacted by COVID–19.
"(ii) DEFERRAL.—During the covered period, the Administrator shall—
"(I) consider each eligible recipient that applies for a covered loan to be an impacted borrower; and
"(II) require lenders under this subsection to provide complete payment deferment relief for impacted borrowers with covered loans for a period of not less than 6 months, including payment of principal, interest, and fees, and not more than 1 year.
"(iii) SECONDARY MARKET.—During the covered period, with respect to a covered loan that is sold on the secondary market, if an investor declines to approve a deferral requested by a lender under clause (ii), the Administrator shall exercise the authority to purchase the loan so that the impacted borrower may receive a deferral for a period of not less than 6 months, including payment of principal, interest, and fees, and not more than 1 year.
"(iv) GUIDANCE.—Not later than 30 days after the date of enactment of this paragraph, the Administrator shall provide guidance to lenders under this paragraph on the deferment process described in this subparagraph.
"(N) SECONDARY MARKET SALES.—A covered loan shall be eligible to be sold in the secondary market consistent with this subsection. The Administrator may not collect any fee for any guarantee sold into the secondary market under this subparagraph.
"(O) REGULATORY CAPITAL REQUIREMENTS.—
"(i) RISK WEIGHT.—With respect to the appropriate Federal banking agencies or the National Credit Union Administration Board applying capital requirements under their respective risk-based capital requirements, a covered loan shall receive a risk weight of zero percent.
"(ii) TEMPORARY RELIEF FROM TDR DISCLOSURES.—Notwithstanding any other provision of law, an insured depository institution or an insured credit union that modifies a covered loan in relation to COVID–19-related difficulties in a troubled debt restructuring on or after March 13, 2020, shall not be required to comply with the Financial Accounting Standards Board

H. R. 748—13

Accounting Standards Codification Subtopic 310–40 ('Receivables – Troubled Debt Restructurings by Creditors') for purposes of compliance with the requirements of the Federal Deposit Insurance Act (12 U.S.C. 1811 et seq.), until such time and under such circumstances as the appropriate Federal banking agency or the National Credit Union Administration Board, as applicable, determines appropriate.

"(P) REIMBURSEMENT FOR PROCESSING.—

"(i) IN GENERAL.—The Administrator shall reimburse a lender authorized to make a covered loan at a rate, based on the balance of the financing outstanding at the time of disbursement of the covered loan, of—

"(I) 5 percent for loans of not more than $350,000;

"(II) 3 percent for loans of more than $350,000 and less than $2,000,000; and

"(III) 1 percent for loans of not less than $2,000,000.

"(ii) FEE LIMITS.—An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator.

"(iii) TIMING.—A reimbursement described in clause (i) shall be made not later than 5 days after the disbursement of the covered loan.

"(iv) SENSE OF THE SENATE.—It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years.

"(Q) DUPLICATION.—Nothing in this paragraph shall prohibit a recipient of an economic injury disaster loan made under subsection (b)(2) during the period beginning on January 31, 2020 and ending on the date on which covered loans are made available that is for a purpose other than paying payroll costs and other obligations described in subparagraph (F) from receiving assistance under this paragraph.

"(R) WAIVER OF PREPAYMENT PENALTY.—Notwithstanding any other provision of law, there shall be no prepayment penalty for any payment made on a covered loan.".

(b) COMMITMENTS FOR 7(A) LOANS.—During the period beginning on February 15, 2020 and ending on June 30, 2020—

(1) the amount authorized for commitments for general business loans authorized under section 7(a) of the Small Business Act (15 U.S.C. 636(a)), including loans made under paragraph (36) of such section, as added by subsection (a), shall be $349,000,000,000; and

H. R. 748—14

(2) the amount authorized for commitments for such loans under the heading "BUSINESS LOANS PROGRAM ACCOUNT" under the heading "SMALL BUSINESS ADMINISTRATION" under title V of the Consolidated Appropriations Act, 2020 (Public Law 116–93; 133 Stat. 2475) shall not apply.

(c) EXPRESS LOANS.—

(1) IN GENERAL.—Section 7(a)(31)(D) of the Small Business Act (15 U.S.C. 636(a)(31)(D)) is amended by striking "$350,000" and inserting "$1,000,000".

(2) PROSPECTIVE REPEAL.—Effective on January 1, 2021, section 7(a)(31)(D) of the Small Business Act (15 U.S.C. 636(a)(31)(D)) is amended by striking "$1,000,000" and inserting "$350,000".

(d) EXCEPTION TO GUARANTEE FEE WAIVER FOR VETERANS.—Section 7(a)(31)(G) of the Small Business Act (15 U.S.C. 636(a)(31)(G)) is amended—

(1) by striking clause (ii); and

(2) by redesignating clause (iii) as clause (ii).

(e) INTERIM RULE.—On and after the date of enactment of this Act, the interim final rule published by the Administrator entitled "Express Loan Programs: Affiliation Standards" (85 Fed. Reg. 7622 (February 10, 2020)) is permanently rescinded and shall have no force or effect.

SEC. 1103. ENTREPRENEURIAL DEVELOPMENT.

(a) DEFINITIONS.—In this section—

(1) the term "covered small business concern" means a small business concern that has experienced, as a result of COVID–19—

(A) supply chain disruptions, including changes in—

(i) quantity and lead time, including the number of shipments of components and delays in shipments;

(ii) quality, including shortages in supply for quality control reasons; and

(iii) technology, including a compromised payment network;

(B) staffing challenges;

(C) a decrease in gross receipts or customers; or

(D) a closure;

(2) the term "resource partner" means—

(A) a small business development center; and

(B) a women's business center;

(3) the term "small business development center" has the meaning given the term in section 3 of the Small Business Act (15 U.S.C. 632); and

(4) the term "women's business center" means a women's business center described in section 29 of the Small Business Act (15 U.S.C. 656).

(b) EDUCATION, TRAINING, AND ADVISING GRANTS.—

(1) IN GENERAL.—The Administration may provide financial assistance in the form of grants to resource partners to provide education, training, and advising to covered small business concerns.

(2) USE OF FUNDS.—Grants under this subsection shall be used for the education, training, and advising of covered small business concerns and their employees on—

H. R. 748—32

"(d)(1) Subject to paragraph (3), for a plan confirmed prior to the date of enactment of this subsection, the plan may be modified upon the request of the debtor if—

"(A) the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID–19) pandemic; and

"(B) the modification is approved after notice and a hearing.

"(2) A plan modified under paragraph (1) may not provide for payments over a period that expires more than 7 years after the time that the first payment under the original confirmed plan was due.

"(3) Sections 1322(a), 1322(b), 1323(c), and the requirements of section 1325(a) shall apply to any modification under paragraph (1).".

(D) APPLICABILITY.—

(i) The amendments made by subparagraphs (A) and (B) shall apply to any case commenced before, on, or after the date of enactment of this Act.

(ii) The amendment made by subparagraph (C) shall apply to any case for which a plan has been confirmed under section 1325 of title 11, United States Code, before the date of enactment of this Act.

(2) SUNSET.—

(A) IN GENERAL.—

(i) EXCLUSION FROM CURRENT MONTHLY INCOME.—Section 101(10A)(B)(ii) of title 11, United States Code, is amended—

(I) in subclause (III), by striking the semicolon at the end and inserting "; and";

(II) in subclause (IV), by striking "; and" and inserting a period; and

(III) by striking subclause (V).

(ii) CONFIRMATION OF PLAN.—Section 1325(b)(2) of title 11, United States Code, is amended by striking "payments made under Federal law relating to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the coronavirus disease 2019 (COVID–19),".

(iii) MODIFICATION OF PLAN AFTER CONFIRMATION.—Section 1329 of title 11, United States Code, is amended by striking subsection (d).

(B) EFFECTIVE DATE.—The amendments made by subparagraph (A) shall take effect on the date that is 1 year after the date of enactment of this Act.

**SEC. 1114. EMERGENCY RULEMAKING AUTHORITY.**

Not later than 15 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, United States Code.

H. R. 748—21

without submitting to the lender that is servicing the covered loan the documentation required under subsection (e).

(g) DECISION.—Not later than 60 days after the date on which a lender receives an application for loan forgiveness under this section from an eligible recipient, the lender shall issue a decision on the an application.

(h) HOLD HARMLESS.—If a lender has received the documentation required under this section from an eligible recipient attesting that the eligible recipient has accurately verified the payments for payroll costs, payments on covered mortgage obligations, payments on covered lease obligations, or covered utility payments during covered period—

(1) an enforcement action may not be taken against the lender under section 47(e) of the Small Business Act (15 U.S.C. 657t(e)) relating to loan forgiveness for the payments for payroll costs, payments on covered mortgage obligations, payments on covered lease obligations, or covered utility payments, as the case may be; and

(2) the lender shall not be subject to any penalties by the Administrator relating to loan forgiveness for the payments for payroll costs, payments on covered mortgage obligations, payments on covered lease obligations, or covered utility payments, as the case may be.

(i) TAXABILITY.—For purposes of the Internal Revenue Code of 1986, any amount which (but for this subsection) would be includible in gross income of the eligible recipient by reason of forgiveness described in subsection (b) shall be excluded from gross income.

(j) RULE OF CONSTRUCTION.—The cancellation of indebtedness on a covered loan under this section shall not otherwise modify the terms and conditions of the covered loan.

(k) REGULATIONS.—Not later than 30 days after the date of enactment of this Act, the Administrator shall issue guidance and regulations implementing this section.

**SEC. 1107. DIRECT APPROPRIATIONS.**

(a) IN GENERAL.—There is appropriated, out of amounts in the Treasury not otherwise appropriated, for the fiscal year ending September 30, 2020, to remain available until September 30, 2021, for additional amounts—

(1) $349,000,000,000 under the heading "Small Business Administration—Business Loans Program Account, CARES Act" for the cost of guaranteed loans as authorized under paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by section 1102(a) of this Act;

(2) $675,000,000 under the heading "Small Business Administration—Salaries and Expenses" for salaries and expenses of the Administration;

(3) $25,000,000 under the heading "Small Business Administration—Office of Inspector General", to remain available until September 30, 2024, for necessary expenses of the Office of Inspector General of the Administration in carrying out the provisions of the Inspector General Act of 1978 (5 U.S.C. App.);

(4) $265,000,000 under the heading "Small Business Administration—Entrepreneurial Development Programs", of which—