IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHICAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| DV DIAMOND CLUB OF FLINT, LLC, *Et Al.*, | : | Case No. 4:20-cv-10899 |
| | : | Hon. Matthew F. Leitman |
| Plaintiffs, | | Hon. David R. Grand, by referral |
| | : | |
| 689 EATERY CORP.; 725 EATERY CORP.; and GJJM ENTERPRISES CORP., | : | |
| | : | |
| Plaintiffs-Intervenors, | | |
| | : | |
| V. | | |
| | : | |
| UNITED STATES SMALL BUSINESS ASSOC., *Et Al.*, | : | |
| | : | |
| Defendants. | : | |

---

**PLAINTIFFS-INTERVENORS
689 EATERY CORP., 725 EATERY CORP., AND
GJJM ENTERPRISES CORP.'S
MOTION TO INTERVENE**

---

NOW COME Plaintiffs-Intervenors 689 Eatery Corp., 725 Eatery Corp., and

GJJM Enterprises Corp. (collectively "Intervenors"), by and through counsel, and,

pursuant to Fed. R. Civ. P. 24(b)(2), move to permissively intervene as Plaintiffs in

the above-captioned action. This motion is supported by the following

memorandum of law and is accompanied by Plaintiffs-Intervenors Complaint for

1

Declaratory, Injunctive, and Monetary Relief and for a Temporary Restraining Order.

Respectfully submitted,

 /s/ Jennifer M. Kinsley
JENNIFER M. KINSLEY
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595
kinsleylawoffice@gmail.com

DANIEL A. SILVER*
Silver & Silver LLP
One Liberty Square
New Britain, Connecticut 06051
(860) 225-3518
dan@lawsilver.com

Counsel for Plaintiffs-Intervenors 689 Eatery Corp., 725 Eatery Corp., and GJJM Enterprises Corp.

*Admission to practice in the Eastern District of Michigan Pending

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHICAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| DV DIAMOND CLUB<br>OF FLINT, LLC, *Et Al.*, | : | Case No. 4:20-cv-10899 |
| | : | Hon. Matthew F. Leitman |
| Plaintiffs, | | Hon. David R. Grand, by referral |
| | : | |
| 689 EATERY CORP.; 725<br>EATERY CORP.; and GJJM<br>ENTERPRISES CORP., | : | |
| | : | |
| Plaintiffs-Intervenors, | | |
| | : | |
| V. | | |
| | : | |
| UNITED STATES SMALL<br>BUSINESS ASSOC., *Et Al.*, | : | |
| | : | |
| Defendants. | : | |

---

**BRIEF IN SUPPORT OF
PLAINTIFFS-INTERVENORS
689 EATERY CORP., 725 EATERY CORP., AND
GJJM ENTERPRISES CORP.'S
MOTION TO INTERVENE**

---

Plaintiffs-Intervenors 689 Eatery Corp., 725 Eatery Corp., and GJJM Enterprises Corp. (collectively "Intervenors"), all of whom are similarly situated to the existing Plaintiffs in the case, seek to intervene in this lawsuit for the purpose of raising identical and additional constitutional challenges to the CARES Act PPP loan program. Given that Intervenors, like Plaintiffs, have either been denied or

3

experienced delays in seeking PPP loans due to the expressive adult entertainment presented at their businesses, or will be denied or experience such delays, and given that Intervenors' claims highly similar to those raised in Plaintiffs' Amended Complaint, Intervenors are proper parties to this action, and their attached Complaint for Declaratory, Injunctive, and Monetary Relief and a Temporary Restraining Order should be accepted by the Court.  (*See* Exhibit A: Intervenor Complaint.)

Intervenors seek permissive intervention under Fed. R. Civ. P. 24(b)(2), which allows intervention "when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."   The standard for permissive intervention is minimal:  "[t]o intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact."  *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).  Once this threshold showing is established, courts then balance undue delay and prejudice to the original parties, if any, and any other factors that weigh in favor or against intervention.  *Id*.

As an initial matter, Intervenors' motion is unquestionably timely.  This action was filed on or about April 8, 2020, less than three weeks prior to Intervenors' request to intervene.  The case is in its infantile stages, having progressed only to the

point of an initial temporary restraining order at the time of Intervenors' motion.  On April 17, 2020, mere days before Intervenors' filing, Plaintiffs submitted an Amended Complaint, adding numerous additional parties, including a long list of businesses that are similarly situated to Intervenors.  (*See* ECF No. 11.)  In light of the addition of dozens of Plaintiffs just days before Intervenors' motion, Intervenors are timely seeking to join this lawsuit.  *See, e.g., Jansen v. City of Cincinnati*, 904 F.3d 336, 340-42 (6th Cir. 1990) (finding two week period between parties' knowledge of need for intervention and motion to intervene not to constitute untimely delay).

Moreover, Intervenors raise claims with common facts and bases to those already advanced in the case.  Like Plaintiffs, Intervenors operate businesses that present live exotic dance entertainment.  (*See* ECF Doc. 11 Amended Complaint, pp. 21-122; Ex. A Intervenor Complaint, pp. 12-19.)  Like Plaintiffs, Intervenors have sought and have not yet been awarded funding under the CARES Act PPP loan program.  (*See* ECF Doc. 11 Amended Complaint, pp. 21-122; Ex. A Intervenor Complaint, pp. 12-19.)  Like Plaintiffs, Intervenors are subject to the same Regulations and SOP's that limit PPP loans and forgiveness eligibility to those businesses that do not present entertainment of a prurient sexual nature.  (*See* ECF Doc. 11 Amended Complaint, pp. 15-21; Ex. A Intervenor Complaint, pp. 6-12.) And like Plaintiffs, Intervenors seek to challenge the PPP loan program Regulations

and SOP's on First and Fifth Amendment grounds.  (*See* ECF Doc. 11 Amended Complaint, pp. 126-129; Ex. A Intervenor Complaint, pp. 22-25.)   As such, Intervenors have made a strong showing in favor of permissive intervention.

Permitting Intervenors to join this lawsuit will not prejudice the existing parties.  As an initial matter, Plaintiffs will not be harmed in any way, particularly considering that their Amended Complaint specifically contemplates the addition of similarly-situated parties in the near future.  (*See* ECF Doc. 11 Amended Complaint, p. 126, ¶ 517.)   Neither are Defendants prejudiced, because Intervenors' filing precedes any significant deadline on the part of Defendants.  Pursuant to the Court's scheduling order, Defendants are required to respond to Plaintiffs' pending motion for an extended temporary restraining order by April 24, 2020.  Intervenors' motion is being submitted prior to that deadline.  (*See* ECF No. 19.)  In addition, because the pending restraining order motion raises facial constitutional challenges that do not require in depth analysis of Intervenors' particular facts and circumstances, Defendants will suffer no prejudice at all.  Lastly, because numerous businesses with identical claims to Intervenors have already sued Defendants, the addition of Intervenors to the lawsuit changes nothing for the existing parties.

Dozens and dozens of businesses negatively impacted by the "prurient" limitation on PPP loans and loan forgiveness have joined this lawsuit in the few short weeks since it was filed.  There is no principled reason to exclude Intervenors from

also participating in the litigation.   Intervenors raise common, if not identical, questions of law and fact to the existing Plaintiffs, and their early addition to the litigation does not prejudice the parties.   Intervenors should therefore be granted permissive joinder under Fed. R. Civ. P. 24(b), and the attached complaint should be filed in this case.

Respectfully submitted,

 /s/ Jennifer M. Kinsley
JENNIFER M. KINSLEY
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595
kinsleylawoffice@gmail.com

DANIEL A. SILVER*
Silver & Silver LLP
One Liberty Square
New Britain, Connecticut 06051
(860) 225-3518
dan@lawsilver.com

Counsel for Plaintiffs-Intervenors 689 Eatery Corp., 725 Eatery Corp., and GJJM Enterprises LLC

*Admission to practice in the Eastern District of Michigan Pending

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing document was provided via the Court's electronic filing and notification system (CM/ECF) to all counsel of record on the 22nd day of April, 2020.

 /s/ Jennifer M. Kinsley
JENNIFER M. KINSLEY

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHICAN
SOUTHERN DIVISION

DV DIAMOND CLUB          :     Case No. 4:20-cv-10899
OF FLINT, LLC, *Et Al.*,

                              :     Hon. Matthew F. Leitman

     Plaintiffs,                Hon. David R. Grand, by referral

                              :

689 EATERY CORP.; 725
EATERY CORP.; and GJJM      :
ENTERPRISES LLC,

                              :

     Plaintiffs-Intervenors,

                              :

V.

                              :

UNITED STATES SMALL
BUSINESS ASSOC., *Et Al.*,      :

     Defendants.                 :

---

**COMPLAINT OF PLAINTIFFS-INTERVENORS
689 EATERY CORP., 725 EATERY CORP., AND
GJJM ENTERPRISES LLC
FOR DECLARATORY, INJUNCTIVE, AND
MONETARY RELIEF AND FOR A
TEMPORARY RESTRAINING ORDER**

---

NOW COME Plaintiffs-Intervenors 689 Eatery Corp., 725 Eatery Corp., and

GJJM Enterprises LLC (collectively "Intervenors"), and for their complaint, hereby

state the following.

1

## INTRODUCTION

1.      This is a civil action wherein Plaintiffs seek injunctive relief to restrain Defendants from discriminating against workers who are entitled to benefit from the Paycheck Protection Program ("PPP") provisions of the recently-enacted Coronavirus, Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 §§ 1101-03, 1107, 1114 (2020) (the "CARES Act"). The PPP is designed to quickly provide emergency relief to workers and businesses affected by the current COVID-19 pandemic following the President of the United States declaring a national emergency. However, the emergency regulations promulgated by the Small Business Administration to implement the PPP, which in part adopt existing regulations formulated to implement narrower existing loan programs, improperly and unconstitutionally limit benefits to businesses and workers unquestionably engaged in First Amendment protected expression. The regulations and operating procedures, described more specifically below, conflict with the text of the PPP and violate businesses' and workers' fundamental rights under the First and Fifth Amendments of the United States Constitution, among others.

2.      Because the funding of the PPP is to occur on a first-come-first-serve basis until the fund is depleted, Plaintiffs bring this action on an emergency basis and will seek a Temporary Restraining Order to prevent irreparable injury to their

workers, their businesses, the entertainers who perform on their premises, and all their constitutional rights.

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(1), (3), (4); 28 U.S.C. § 1346(a)(2); and 28 U.S.C. § 1361.

4.      Authority for judicial review of agency action is further provided by 5 U.S.C. § 702, which states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5.      The prayer for declaratory relief is founded in part on Rule 57 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 2201, the latter of which provides that: ". . . any court of the United States, upon the filing of an appropriate

pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ."

6.     The jurisdiction of the Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 2202, the latter of which provides: "Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

7.     No other action, civil or criminal, is pending in any state court involving the Plaintiffs regarding the claims at issue here.

8.     This suit is authorized by law to redress deprivations of rights, privileges, and immunities secured by the First and Fifth Amendments to the United States Constitution, and for declaratory and injunctive relief.

9.     Pursuant to 28 U.S.C. § 1391(e) venue in this Court is appropriate as, upon information and belief, the Lead Plaintiff DV Diamond Club of Flint, LLC is located in the Eastern District of Michigan; it has applied for a loan within the Eastern District; the Small Business Administration and the Treasury Department operate in the Eastern District; and the injury complained of and acts causing that injury have occurred and will continue to occur in the Eastern District of Michigan.

## PARTIES

10.    689 Eatery Corp. ("689 Eatery") is a New York corporation duly organized and authorized to conduct business in the State of New York.  689 Eatery does business as Satin Dolls at 689 8th Avenue in the Times Square district of New York City.

11.    725 Eatery Corp. ("725 Eatery") is a New York corporation duly organized and authorized to conduct business in the State of New York.  725 Eatery does business as Platinum Dolls at 725 7th Avenue in the Times Square district of New York City.

12.    GJJM Enterprises LLC ("GJJM") is a New Jersey corporation duly organized and authorized to conduct business in the State of New Jersey.  GJJM does business as Stiletto at 185 S. South Carolina Ave. in Atlantic City, New Jersey.

13.    Defendant United States Small Business Administration (the "SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq*. The SBA maintains a branch office at 477 Michigan Avenue, Suite 1819, McNamara Building, Detroit, Michigan, which is within the Eastern District of Michigan.  Defendant Jovita Carranza ("Carranza," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity only, as the Administrator of the SBA.

14.     Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—
>
> (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy . . . .

15.     Steven Mnuchin (the "Secretary") is the Secretary of the Treasury Department (the "Treasury") of the United States of America and is sued in his official capacity only as the Secretary of the Treasury Department.

16.     Defendant currently does not seek monetary relief and seeks only to restrain the actions of the Administrator and the Secretary in each of their official capacities.

17.     The United States of America is a sovereign nation dedicated to the protection of life, liberty, and property, as set forth in the Bill of Rights and other provisions and amendments to the Constitution of the United States of America.

## RELEVANT STATUTORY PROVISIONS
## AND ADMINISTRATIVE REGULATIONS

18.     The CARES Act was signed into law by the President of the United States on March 28, 2020 and is currently in effect.

19.    A true and accurate copy of the Paycheck Protection Program (the "PPP") provisions of the CARES Act is attached to ECF No. 11 Plaintiffs' Amended Complaint and hereby incorporated by reference as though fully set forth herein.

20.    The PPP provisions of the CARES Act instruct the SBA to promulgate rules as follows:

SEC. 1114. EMERGENCY RULEMAKING AUTHORITY.

Not later than 15 days after the date of the enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, Unites States Code.

21.    The CARES Act specifically tasks the SBA with administering the PPP. The PPP further provides at 15 U.S.C. § 636(a)(36)(F)(ii):

Delegated authority

(I) In general

For purposes of making covered loans for the purposes described in clause (i), a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to make and approve covered loans, subject to the provisions of this paragraph.

(II) Considerations

In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower—

(aa) was in operation on February 15, 2020; and

7

(bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or

(BB) paid independent contractors, as reported on a Form 1099-MISC.

(iii) Additional lenders

The authority to make loans under this paragraph shall be extended to additional lenders determined by the Administrator and the Secretary of the Treasury to have the necessary qualifications to process, close, disburse and service loans made with the guarantee of the Administration.

22.    Pursuant to the PPP, the SBA did, in fact, promulgate regulations on April 1, 2020. A true and accurate copy of Business Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34 (Interim Final Rule Apr. 1, 2020) (the "SBA 3245"), as promulgated by the SBA, is attached to ECF No. 11 Plaintiffs' Amended Complaint and hereby incorporated by reference as though fully set forth herein.

23.    SBA 3245 provides, in part: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." (SOP 50 10 can be found at https://www.sba.gov/document/sop-50-10-5-lender-development-company-loan-programs.)

24.     SBA 3245 further provides that PPP loans with be provided on a first-come, first-served basis until funds are exhausted. The PPP has a total monetary limit of $349,000,000,000.00 ($349 Billion).

25.     A true and accurate copy of Business Loan Program, 60 Fed. Reg. 64356 *et seq*. (proposed Dec. 15, 1995; to be codified at 13 C.F.R. § 120.110), as promulgated by the SBA, is attached to ECF No. 11 Plaintiffs' Amended Complaint and hereby incorporated by reference as though fully set forth herein.

26.     A true and accurate copy of SBA Business Loan Ineligible Businesses Rule, 13 C.F.R § 120.110 (2020), as actually enacted, is attached to ECF No. 11 Plaintiffs' Amended Complaint and hereby incorporated by reference as though fully set forth herein.

27.     13 C.F.R § 120.110 provides, in part:

The following types of Businesses are ineligible:

* * *

(p) Businesses which:

(1) Present live performances of a prurient sexual nature; or

(2) Derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depiction or display, of a prurient sexual nature….

These provisions are hereinafter referred to simply as the "Regulations."

9

28.     A true and accurate copy of SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019), is attached to ECF No. 11 Plaintiffs' Amended Complaint and hereby incorporated by reference as though fully set forth herein.

29.     The SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019) provides, in part, at Ch. 2 (III)(A):

15.     Businesses Providing Prurient Sexual Material (13 CFR § 120.110(p))

a.     A business is not eligible for SBA assistance if:

i. It presents live or recorded performances of a prurient sexual nature; or

ii. It derives more than 5% of its gross revenue, directly or indirectly, through the sale of products, services or the presentation of any depictions or displays of a prurient sexual nature.

b.     SBA has determined that financing lawful activities of a prurient sexual nature is not in the public interest. The Lender must consider whether the nature and extent of the sexual component causes the business activity to be prurient.

c.     If a Lender finds that the Applicant may have a business aspect of a prurient sexual nature, prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must document and submit the analysis and supporting documentation to the Associate General Counsel for Litigation at PSMReview@sba.gov for a final Agency decision on eligibility. Upon approval by SBA, the Lender may submit the application to the LGPC or may proceed to process the loan under its delegated authority. A non-

delegated Lender must submit a copy of SBA's approval with the application to the LGPC. A delegated Lender must retain its analysis, supporting documentation, and evidence of SBA's approval in its loan file and must submit the analysis and supporting documentation to SBA with any request for guaranty purchase. SBA also may review such documentation when conducting Lender oversight activities.

These provisions are hereinafter referred to as the "SOP."

30.    Defendant SBA is responsible for formulating, issuing, and enforcing the Regulations and the SOP.

31.    A true and accurate exemplar copy of the SBA Paycheck Protection Program Borrower Application Form 2483 (Apr. 2020) is attached to ECF No. 11 Plaintiffs' Amended Complaint and hereby incorporated by reference as though fully set forth herein.

32.    A true and accurate copy of a lender Paycheck Protection Program Supplemental Information Form (current as of Apr. 5, 2020) is attached to ECF No. 11 Plaintiffs' Amended Complaint and hereby incorporated by reference as though fully set forth herein.

33.    The First Amendment to the Unites States Constitution reads:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

34.    The Fifth Amendment to the United States Constitution reads:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in

cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## GENERAL ALLEGATIONS

### *689 Eatery Corp. ("689 Eatery")*

35.    689 Eatery is an alcohol-serving establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, live exotic dance performances. All of the entertainment provided by 689 Eatery is non-obscene and appeals to healthy human interests and desires.

36.    None of the live performances at 689 Eatery are unlawful or obscene. Neither 689 Eatery nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

37.    689 Eatery presents lawful entertainment in conformity with its various licenses, permits, or government approvals.

38.    689 Eatery is currently shuttered as a result of various emergency "shelter-in-place" executive orders issued by the Governor of New York and the Mayor of New York City as a result of the COVID-19 pandemic. As a direct and proximate result of such government-ordered closure, 689 Eatery has suffered

12

significant business losses, but plans to reopen when legally permitted to do so. 689 Eatery has been closed for business since approximately March 15, 2020 and remains closed as of the date this complaint is filed.

39.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – 689 Eatery, through its accountant, applied for a PPP loan.

40.    In April 2020, 689 Eatery submitted an application for a PPP loan through its lender in New York, New York. Its lender is an approved SBA Lender.

41.    Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), 689 Eatery's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by 689 Eatery.

42.    689 Eatery is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

43.    689 Eatery submitted its PPP loan application to its SBA-qualified lender, but was informed that its application would not be processed until the federal government allocated additional funds for the PPP program. On or about April 22, 2020, 689 Eatery attempted to resubmit its PPP loan application following the announcement of additional funding by the federal government.

44.     If awarded a PPP loan, 689 Eatery intends to use the PPP loan funds in accordance with the PPP provision of the CARES Act, such that the loan will qualify for forgiveness under the CARES Act. 689 Eatery will definitely use a substantial amount and intends to use as much of the loan proceeds as possible, for purposes that qualify for forgiveness, including payroll and rent, in order to maximize the forgivable amount of the loan.

45.     However, upon information and belief, 689 Eatery may not qualify for the forgiveness of its PPP loan due to the Regulations. That is, in order to qualify for forgiveness, 689 Eatery will be required to prove it is fully eligible for the loan under the PPP provisions of the CARES Act, but will be unable to do so due to the SBA's adoption of the exclusions of 13 C.F.R § 120.110(p) via SBA 3245.

46.     If 689 Eatery knew for certain that its PPP loan would not be forgiven without regard to how the loan proceeds were used and when, it would use the proceeds in accordance with its greatest business needs rather than to maximize the forgivable amount of the loan.

### 725 Eatery Corp. ("725 Eatery")

47.     725 Eatery is an alcohol-serving establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, live exotic dance performances. All of the entertainment

provided by 725 Eatery is non-obscene and appeals to healthy human interests and desires.

48.    None of the live performances at 725 Eatery are unlawful or obscene. Neither 725 Eatery nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

49.    725 Eatery presents lawful entertainment in conformity with its various licenses, permits, or government approvals.

50.    725 Eatery is currently shuttered as a result of various emergency "shelter-in-place" executive orders issued by the Governor of New York and the Mayor of New York City as a result of the COVID-19 pandemic. As a direct and proximate result of such government-ordered closure, 725 Eatery has suffered significant business losses, but plans to reopen when legally permitted to do so.  725 Eatery has been closed for business since approximately March 15, 2020 and remains closed as of the date this complaint is filed.

51.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – 725 Eatery, through its accountant, applied for a PPP loan.

52.    In April 2020, 725 Eatery submitted an application for a PPP loan through its lender in New York, New York. Its lender is an approved SBA Lender.

53.     Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), 725 Eatery's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by 725 Eatery.

54.     725 Eatery is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

55.     725 Eatery submitted its PPP loan application to its SBA-qualified lender, but was informed that its application would not be processed until the federal government allocated additional funds for the PPP program.  On or about April 22, 2020, 725 Eatery attempted to resubmit its PPP loan application following the announcement of additional funding by the federal government.

56.     If awarded a PPP loan, 725 Eatery intends to use the PPP loan funds in accordance with the PPP provision of the CARES Act, such that the loan will qualify for forgiveness under the CARES Act. 725 Eatery will definitely use a substantial amount and intends to use as much of the loan proceeds as possible, for purposes that qualify for forgiveness, including payroll and rent, in order to maximize the forgivable amount of the loan.

57.     However, upon information and belief, 725 Eatery may not qualify for the forgiveness of its PPP loan due to the Regulations. That is, in order to qualify for forgiveness, 725 Eatery will be required to prove it is fully eligible for the loan under

16

the PPP provisions of the CARES Act, but will be unable to do so due to the SBA's adoption of the exclusions of 13 C.F.R § 120.110(p) via SBA 3245.

58.     If 725 Eatery knew for certain that its PPP loan would not be forgiven without regard to how the loan proceeds were used and when, it would use the proceeds in accordance with its greatest business needs rather than to maximize the forgivable amount of the loan.

### GJJM Enterprises LLC ("GJJM")

59.     GJJM is an establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, live exotic dance performances. All of the entertainment provided by GJJM is non-obscene and appeals to healthy human interests and desires.

60.     None of the live performances at GJJM are unlawful or obscene. Neither GJJM nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

61.     GJJM presents lawful entertainment in conformity with its various licenses, permits, or government approvals.

62.     GJJM is currently shuttered as a result of various emergency "shelter-in-place" executive orders issued by the Governor of New Jersey as a result of the COVID-19 pandemic. As a direct and proximate result of such government-ordered closure, GJJM has suffered significant business losses, but plans to reopen when

legally permitted to do so.  GJJM has been closed for business since approximately March 15, 2020 and remains closed as of the date this complaint is filed.

63.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – GJJM, through its accountant, applied for a PPP loan.

64.    In April 2020, GJJM submitted an application for a PPP loan through its lender in New Jersey.  Its lender is an approved SBA Lender.

65.    Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), GJJM's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by GJJM.

66.    GJJM is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

67.    GJJM submitted its PPP loan application to its SBA-qualified lender, but was informed that its application would not be processed until the federal government allocated additional funds for the PPP program.  On or about April 22, 2020, GJJM attempted to resubmit its PPP loan application following the announcement of additional funding by the federal government.

68.    If awarded a PPP loan, GJJM intends to use the PPP loan funds in accordance with the PPP provision of the CARES Act, such that the loan will qualify

for forgiveness under the CARES Act. GJJM will definitely use a substantial amount and intends to use as much of the loan proceeds as possible, for purposes that qualify for forgiveness, including payroll and rent, in order to maximize the forgivable amount of the loan.

69.     However, upon information and belief, GJJM may not qualify for the forgiveness of its PPP loan due to the Regulations. That is, in order to qualify for forgiveness, GJJM will be required to prove it is fully eligible for the loan under the PPP provisions of the CARES Act, but will be unable to do so due to the SBA's adoption of the exclusions of 13 C.F.R § 120.110(p) via SBA 3245.

70.     If GJJM knew for certain that its PPP loan would not be forgiven without regard to how the loan proceeds were used and when, it would use the proceeds in accordance with its greatest business needs rather than to maximize the forgivable amount of the loan.

*All Plaintiffs-Intervenors*

71.     689 Eatery, 725 Eatery, and GJJM are collectively referred to herein as "Plaintiffs-Intervenors."

72.     Plaintiffs-Intervenors are aware that in some instances similar businesses were initially granted preliminary approval for PPL's, only to have funding later, and very recently, denied.

73.     Pursuant to the PPP Act, if loan proceeds are used for specified purposes, the loan can ultimately be forgiven by the SBA. The purpose of such loan forgiveness is to assist small businesses in being able to financially weather the significant drop in trade and income that is anticipated, as a result of the lasting impact of the coronavirus, even when the economy "reopens" in some limited form.

74.     Upon information and belief, the SBA has in some instances indicated to lending banks that while PPL applications for adult businesses may initially be granted, it will later use the Regulations and SOP as bases to decline loan forgiveness. Like all other affected businesses, Plaintiffs-Intervenors need loan forgiveness in order to be able to financially survive the continuing impact of the coronavirus even after the economy begins to "reopen," even in a limited fashion. In fact, Plaintiffs-Intervenors are aware of at least one other similar business that declined to even apply for a PPL because of the possibility that its loan would not in fact be forgiven, with the consequently concern of then being unable to pay back a large loan under business circumstances that will be impacted by the coronavirus for an indeterminate period of time.

75.     As more specifically alleged above, Plaintiffs-Intervenors attempted to resubmit their PPL loan applications upon a second round of funding from the federal government. Without immediate injunctive relief, they run the risk of being completely excluded from PPP Act benefits where the funds are statutorily limited,

where the loans are to be distributed on a "first-come, first-served" basis, and where the aggregate available PPL funds may be exhausted before this Court can fully litigate Plaintiffs-Intervenors' claims.

76.    While Plaintiffs-Intervenors identify the locations of where their PPP loan applications were submitted, they do not identify here the identities of the lending banks at issue because of legitimate concerns that they will be retaliated against for participating in this action. In particular, the Department of Justice ("DOJ") had a long-established antipathy towards the adult entertainment industry, which is exemplified by its application of a program known as "Operation Chokepoint" to many adult businesses. Through the Chokepoint program the DOJ intentionally pressured depository banks to terminate their accounts with adult businesses – many of which had existed for years and even decades. This resulted in adult entertainment establishments having their bank accounts (including but not limited to their payroll accounts) cancelled for no reason whatsoever with little to no prior notice. This, in turn, has caused significant business disruption and a situation where many adult businesses have found it difficult, and at times and in certain places virtually impossible, to obtain a bank willing to carry their accounts so that they can lawfully conduct their business and engage in commerce.

77.    The Regulations and SOP have also resulted in the inability of some businesses to apply for PPL's because of a lack of prior lending experience with the

SBA approved lending bank. Certain banks are taking the position that they will not even accept PPP loan applications unless the applicant has a prior lending experience with the bank. Yet, a number of adult businesses, as a result of the prior application of the Regulations and SOP to general SBA lending activities, previously found it impossible to obtain loans even from banks where they had historically maintained their business accounts. This lack of previous loan history, which has been caused in part as a direct result of the application of the Regulations and SOP to general SBA loan matters, is now creating a further impediment to various businesses that find themselves unable to even apply for PPL's – even at banks where they have long-maintained their business accounts.

## COUNT ONE: THE REGULATIONS AND SOP
## VIOLATE THE FIRST AMENDMENT

78.    Plaintiffs-Intervenors incorporates herein by reference each and every paragraph above as though fully set forth herein.

79.    In asserting their First Amendment challenges to the Regulations and SOP, Plaintiffs-Intervenors assert not only their own rights but also the rights of their employees, and the entertainers who perform on its premises.

80.    The Regulations and the SOP violate and are contrary to the First Amendment of the United States Constitution, on their face and as applied to Plaintiffs-Intervenors, for numerous and various reasons including but not limited to:

a.    They are impermissible content-based restrictions on speech and expression that cannot pass muster under strict scrutiny;

b.    They are impermissible content-neutral restrictions and expression that cannot pass muster under intermediate scrutiny;

c.    They fail to conform to the constitutional standards regarding obscenity;

d.    They violate the doctrine of unconstitutional conditions;

e.    They are unconstitutionally vague under the vagueness standards for matters impacting speech and expression; and

f.    They vest government officials with unbridled discretion to determine which businesses are ineligible for loans and/or loan forgiveness due to their presentation of "prurient" entertainment.

81.    As a direct and proximate result of the unconstitutional aspects of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs-Intervenors and their interests, Plaintiffs-Intervenors, their employees, and the entertainers who perform on Plaintiffs-Intervenors' premises have suffered and will continue to suffer irreparable injuries, including but not limited to financial ruin, business ruination, and the inability of present protected First Amendment protected entertainment.

23

## COUNT TWO: THE REGULATIONS AND SOP
## VIOLATE THE FIFTH AMENDMENT

82.     Plaintiffs-Intervenors incorporate herein by reference each and every paragraph above as though fully set forth herein.

83.     The Regulations and the SOP violate and are contrary to the Fifth Amendment of the United States Constitution, on their face and as applied to Plaintiffs-Intervenors, for numerous and various reasons including but not limited to:

a.     They treat establishments presenting certain forms of performance dance entertainment, such as Plaintiffs-Intervenors, differently from establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

b.     They treat workers at establishments presenting certain forms of performance dance entertainment, such as Plaintiffs-Intervenors, differently from workers at establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

c.     They violate Plaintiffs-Intervenors' rights and those of their employees, and the entertainers' who perform on their premises under the occupational liberty component of the Fifth Amendment;

d.     They are impermissibly vague; and

24

e.    They fail to provide procedural due process in the form of an appeal or opportunity to be heard to challenge any determination of ineligibility due under the "prurient" limitations.

84.    As a direct and proximate result of the unconstitutional aspects of the Regulations and SOPS and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs-Intervenors and their interests, Plaintiffs-Intervenors, their employees, and the entertainers who perform on Plaintiffs-Intervenors' premises have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin, business ruination, and the violation of the rights protected by the Fifth Amendment of the United States Constitution.

## COUNT THREE: THE INVALIDITY OF
## THE REGULATIONS AND SOP

85.    Plaintiffs-Intervenors incorporates herein by reference each and every paragraph above as though fully set forth herein.

86.    Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including these Plaintiffs-Intervenors, the SBA lacked authority to promulgate regulations with restricted or otherwise 'clarified' what businesses were eligible for PPP Loans.

87. As a direct and proximate result of the invalid portions of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs-Intervenors and their interests, Plaintiffs-Intervenors,

their employees, and the entertainers who perform on Plaintiffs-Intervenors' premises have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin and business ruination.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Plaintiffs-Intervenors respectfully request this Honorable Court:

A)     Issue orders granting a Temporary Restraining Order, Preliminary, and Permanent Injunction enjoining the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 120.110(p) and SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) in regard to loan applications made pursuant to the Payroll Protection Program of the CARES Act. As part of those orders, Plaintiffs-Intervenors further request this Honorable Court to:

1)     Order the Defendants, as well as their employees, agent and representatives, to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue utilizing 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) in their Payroll Protection Program loan applications, and as criteria for determining Payroll Protection Program loan application eligibility, and to fully process all Payroll Protection Program loan applications without reference to such regulations and procedures;

2)      Order the Defendants, as well as their employees, agent and representatives, including their lending banks, to grant all Payroll Protection Program loan applications of the Plaintiffs if they otherwise qualify for such loans if not for the provisions of 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15);

3)      Order the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, to restore Plaintiffs-Intervenors to their place in the application queue as they were at the time of application in the event that their application has already been formally denied, derailed, or paused because of the provisions of 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15);

B)      Pursuant to 42 U.S.C. § 1988, Enter an award of attorneys' fees and costs against the Defendants and in favor of Plaintiffs-Intervenors; and

C)      Enter such other and further relief as this Court may find to be warranted in these circumstances.

Respectfully submitted,

 /s/ Jennifer M. Kinsley
JENNIFER M. KINSLEY
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595
kinsleylawoffice@gmail.com

DANIEL A. SILVER*
Silver & Silver LLP
One Liberty Square
New Britain, Connecticut 06051
(860) 225-3518
dan@lawsilver.com

Counsel for Plaintiffs-Intervenors 689 Eatery Corp., 725 Eatery Corp., and GJJM Enterprises LLC

*Admission to practice in the Eastern District of Michigan Pending*

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing document was provided via the Court's electronic filing and notification system (CM/ECF) to all counsel of record on the 22nd day of April, 2020.

 /s/ Jennifer M. Kinsley
JENNIFER M. KINSLEY

28

I hereby certify that an exact copy of the foregoing document was provided via the Court's electronic filing and notification system (CM/ECF) to all counsel of record on the 23rd day of April, 2020.

/s/ Jennifer M. Kinsley
JENNIFER M. KINSLEY

## VERIFICATION OF COMPLAINT AS TO 689 EATERY CORP.

1.      I, Keith Warech, am the Managing Member of 689 Eatery Corp.

2.      I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.      I have reviewed the foregoing *COMPLAINT OF PLAINTIFFS-INTERVENORS 689 EATERY CORP., 725 EATERY CORP., AND GJJM ENTERPRISES CORP. FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF AND FOR A TEMPORARY RESTRAINING ORDER* in its entirety.

4.      The factual statements in the Complaint, as they relate to 689 Eatery Corp. are true and accurate to the best of my information, knowledge and belief.

5.      Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on:                    By:

## VERIFICATION OF COMPLAINT AS TO
## GJJM ENTERPRISES CORP.

1.   I, John Scarfi, am the Managing Member of GJJM Enterprises Corp.

2.   I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.   I have reviewed the foregoing *COMPLAINT OF PLAINTIFFS-INTERVENORS 689 EATERY CORP., 725 EATERY CORP., AND GJJM ENTERPRISES CORP. FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF AND FOR A TEMPORARY RESTRAINING ORDER* in its entirety.

4.   The factual statements in the Complaint, as they relate to GJJM Enterprises Corp. are true and accurate to the best of my information, knowledge and belief.

5.   Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on:                                    By:

_____4/22/20_____                    _____

DATE                                            John Scarfi