# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: May 15, 2020

Mr. Peter A. Caplan

Ms. Courtney L. Dixon

Mr. James Jordan Gilligan

Mr. Matthew Joseph Hoffer

Ms. Jennifer M. Kinsley

Mr. Bradley J. Shafer

> Re: Case No. 20-1437, *DV Diamond Club of Flint, LLC, et al v. SBA, et al*
> Originating Case No. : 4:20-cv-10899

Dear Counsel:

The Court issued the enclosed Order today in this case.

> Sincerely yours,
>
> s/Amy E. Gigliotti on behalf of Jill Colyer
> Case Manager
> Direct Dial No. 513-564-7024

cc: Mr. David J. Weaver

Enclosure

No. 20-1437

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 15, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DV DIAMOND CLUB OF FLINT, LLC, et al., | ) |
|     Plaintiffs-Appellees, | ) |
| 689 EATERY, CORP.; 725 EATERY, CORP.; GJJM ENTERPRISES, LLC, | ) |
|     Intervenors-Appellees, | )    O R D E R |
| v. | ) |
| SMALL BUSINESS ADMINISTRATION, an agency of the United States, et al., | ) |
|     Defendants-Appellants. | ) |

Before: SILER, STRANCH, and DONALD, Circuit Judges.

Defendants, the Small Business Administration and others (collectively the "SBA"), appeal the district court's opinion and order granting plaintiffs' motion for a preliminary injunction. A district court's order granting or denying a preliminary injunction is immediately appealable pursuant to 28 U.S.C. § 1292(a)(1). The SBA moves to stay the preliminary injunction pending a decision on the merits of its appeal. *See* Fed. R. App. P. 8(a)(2). The district court denied a similar motion but granted the SBA's alternative request to extend the date by which it must comply with the injunction. Plaintiffs and intervenors jointly respond, and the SBA replies.

No. 20-1437
-2-

At issue is the proper interpretation of recent legislation enacted by the United States Congress to alleviate the incredible economic hardship caused by the COVID-19 pandemic. *See* Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). Under a CARES Act provision entitled "Keeping American Workers Paid and Employed Act," Congress created the Paycheck Protection Program ("PPP"), authorizing the SBA to guarantee up to $349 billion in PPP loans. In April 2020, Congress increased the amount to $659 billion. The PPP is intended to "[i]ncrease[] eligibility for certain small businesses and organizations." 15 U.S.C. § 636(a)(36)(D). During the covered time-period,

> in addition to small business concerns, *any* business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title *shall* be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of-- (I) 500 employees; or (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates.

15 USC § 636(a)(36)(D)(i) (emphasis added). Despite this language, the SBA has adopted a "PPP Ineligibility Rule" that renders sexually oriented businesses and certain other businesses ineligible to receive PPP loan guarantees. Plaintiffs are sexually oriented businesses that own and operate (1) venues that present clothed, semi-nude, and/or nude performance entertainment, (2) adult novelty stores, and (3) businesses that service those establishments. They represent that their businesses are not unlawful and operate in conformity with various licenses and permits. The SBA does not argue otherwise. Nevertheless, lenders are denying plaintiffs' applications for PPP loans based on the SBA's PPP Ineligibility Rule. The district court concluded that the SBA exceeded its statutory authority when it adopted this rule and granted plaintiffs' motion for preliminary injunctive relief.

We evaluate four factors when deciding whether to grant a stay under Federal Rule of Appellate Procedure 8(a): "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal.*, 945 F.2d at 153. As the moving party, the SBA has the burden of showing it is entitled to a stay. *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

"We begin by considering 'the likelihood that the district court's preliminary injunction order will be upheld on appeal.'" *Serv. Emp. Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343–44 (6th Cir. 2012) (quoting *Coal. to Defend*, 473 F.3d at 244). "[T]he district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief is reviewed for abuse of discretion. This standard of review is 'highly deferential' to the district court's decision." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007) (citation omitted) (quoting *Leary v. Daeschner*, 288 F.3d 729, 739 (6th Cir. 2000)). "Thus, we reverse a decision granting a preliminary injunction 'only if the district court 'relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.''" *Southern Glazer's Distrib. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997)).

An agency's interpretation of a statute is reviewed using the two-step framework outlined in *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43; *see Arangure v. Whitaker*, 911 F.3d 333, 336 (6th Cir. 2018) ("[A]ll too often, courts abdicate this duty by rushing to find statutes ambiguous, rather than performing a full interpretive analysis.") In applying *Chevron* to the first factor—likelihood of success on the merits—the district court determined that the CARES Act unambiguously foreclosed the SBA from precluding sexually-oriented businesses from receiving PPP loan guarantees during the pandemic. It relied on language in the Act specifying that eligibility would be conferred to "any business concern." 15 U.S.C. § 636(a)(36)(D)(i). The term "any" carries an expansive meaning. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018). It "refer[s] to a member of a particular group or class without distinction or limitation" and, in this way, "impl[ies] *every* member of the class or group." *Id.* (quoting Oxford English Dictionary (3d ed., Mar. 2016)). Thus, the Act's specification that "any business concern" is eligible, so long as it meets the size criteria, is a reasonable interpretation. That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible and, in doing so, does not lead to an "absurd result" as the SBA claims. Finally, by specifying "any business concern," Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances. Neither may the SBA continue to apply these rules pursuant to § 636(a)(36)(B), which states: "Except as otherwise provided in this paragraph, the [SBA] may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." 15 U.S.C. § 636(a)(36)(B). This

provision likely constitutes a catch-all governing procedures otherwise unaffected by the mandate of the CARES Act and the PPP and does not detract from the broad grant of eligibility.

The SBA points out that the CARES Act specifies that "nonprofit organization[s]" are eligible for PPP loans, even though they are ineligible for ordinary SBA loans. *See* 15 U.S.C. § 636(a)(36)(D)(i). Therefore, it reasons, if Congress wanted sexually-oriented businesses to be eligible for PPP loan guarantees, it would have said so. This specification, however, supports the district court's analysis. It was necessary to specify non-profits because they are not businesses, whereas the Act's specification that eligibility is conferred on "any business concern" encompasses sexually oriented businesses such as strip clubs that would ordinarily be ineligible for loans.

With regard to the remaining factors, the harm to the SBA in the absence of a stay is far outweighed by the harm to plaintiffs if a stay is granted. Plaintiffs will be unable to obtain relief, and there will likely be no funds available to them through the PPP by the time this appeal is concluded. Plaintiffs are also at a substantial risk of losing their businesses. The stated purpose of the PPP is to protect the employment and livelihood of employees. Thus, the public interest is served in guaranteeing that any business, including plaintiffs', receive loans to protect and support their employees during the pandemic which, we can all agree, constitutes extraordinary circumstances. The fact that other businesses will not receive loans if plaintiffs do is inherent in the SBA's practice of guaranteeing loans on a first-come, first-served basis. Regardless of whether plaintiffs do or do not receive these loans, there will be other businesses that do or do not receive loans as well. The SBA otherwise continues doing the same work it has been doing.

On balance we conclude that the relevant factors weigh in favor of denying a stay. The motion for a stay is **DENIED**. The request for an administrative stay is **DENIED** as moot.

SILER, J., dissenting.

I respectfully dissent from the majority order. I would like to amplify further on this, but only a few short hours remain before the Small Business Administration (SBA) has to comply with the order and provide the funds requested. It is also a weekend and time is running short. The district court granted a preliminary injunction largely based on the plaintiffs' strong likelihood of success on the merits. In doing so, the court found that Congress has unambiguously made "any business concern" eligible for PPP loans under the CARES Act. However, the relevant language in the Act seems to be ambiguous because it is open to two plausible interpretations. Certainly, the statute says "any business concern." Still, it is unclear whether Congress meant that any business concern was eligible for a PPP loan regardless of SBA restrictions or whether the language modifies the preceding language allowing businesses with up to 500 employees to be eligible for the loans.

Congress said that PPP loans are to be administered "under the same terms, conditions, and processes" as 7(a) loans, which exclude private clubs and adult entertainment businesses from eligibility. 15 U.S.C. § 636(a)(36)(B). Congress was clearly aware of SBA's regulatory restrictions on 7(a) loans. If it intended for any business entity to be eligible for PPP loans, it could have simply said that without providing the additional language contained in the text. Instead, Congress specifically allowed certain businesses who were not previously eligible to apply for PPP loans. Under the interpretation from the district court, it admitted that "it would ordinarily be absurd to conclude that Congress meant to provide financial assistance to, among others, certain sexually oriented businesses and private clubs that discriminate."

In conclusion, I do not think that the plaintiffs have demonstrated a strong likelihood of success on the merits that Congress intended for clubs of this sort to receive loans through the PPP.

Case 4:20-cv-10899-MFL-RSW ECF No. 81-1 filed 05/15/20 PageID.1700 Page 8 of 8  Case: 20-1437 Document: 14-2 Filed: 05/15/2020 Page: 8 of 8  (8 of 8)

No. 20-1437
-7-

Although it is clear that the plaintiffs may be seriously harmed if they are not eligible for these loans, if they do receive the loans, the money may be denied to other small businesses because the funds would be expended on the plaintiffs herein. I would grant the stay of the injunction until a decision on the merits of the case has been determined. Plaintiffs have not met their burden of demonstrating a high likelihood of success on the merits. They should not be allowed to ride the gravy train without a careful analysis of this law more than we can give them on short notice.

                    ENTERED BY ORDER OF THE COURT

                    Deborah S. Hunt, Clerk