## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**Case No. 4:20-cv-10899**              Hon. Matthew F. Leitman
                                        Hon. David R. Grand, by referral

**DV DIAMOND CLUB OF FLINT, LLC; BENELUX CORPORATION; BDS RESTAURANT, INC.; DB ENTERTAINMENT, INC.; MILLENNIUM RESTAURANTS GROUP, INC.; T AND N INCORPORATED; BURCH MANAGEMENT COMPANY, INC.; JCB OF GAINESVILLE, INC.; MAG ENTERPRISES, INC.; 2740 CORPORATION; MAG PITT LP; FILOSADELFIA, LLC; POLMOUR, INC.; STONE PARK ENTERTAINMENT, INC.; SEVENTY7, LLC; BROOKHURST VENTURE, LLC; CITY OF INDUSTRY HOSPITALITY VENTURE, INC.; FARMDALE HOSPITALITY SERVICES, INC.; INLAND RESTAURANT VENTURE I, INC.; MIDNIGHT SUN ENTERPRISES, INC.; OLYMPIC AVENUE VENTURE, INC.; THE OXNARD HOSPITALITY SERVICES, INC.; PLATINUM SJ ENTERPRISE; ROUGE GENTLEMEN'S CLUB, INC.; WASHINGTON MANAGEMENT, LLC; PNM ENTERPRISES, INC.; RIALTO POCKETS, INC.; SANTA BARBARA HOSPITALITY SERVICES, INC.; SANTA MARIA RESTAURANT ENTERPRISES, INC.; THE SPEARMINT RHINO ADULT SUPERSTORE, INC.; HIGH EXPECTATIONS HOSPITALITY, LLC; KENTUCKY HOSPITALITY VENTURE, LLC; K-KEL, INC.; L.C.M., LLC; NITELIFE, INC.; PENN AVE HOSPITALITY, LLC; SARIE'S LOUNGE, LLC; WORLD CLASS VENTURES, LLC; W.P.B. HOSPITALITY, LLC; THE SPEARMINT RHINO COMPANIES WORLDWIDE, INC.; SPEARMINT RHINO CONSULTING WORLDWIDE, INC.; VC LAUDERDALE, INC.; KIMMICO, INC.; FERNEY PROPERTIES, LLC; HERITAGE MANAGEMENT SERVICES, INC.; MAG ENTERTAINMENT, LLC, EAST COAST RESTAURANT & NIGHTCLUBS, LLC; OASIS ON ESSINGTON, LTD; VONCH, LLC; CLUB CABARET, INC.; KING B, INC.; AND PEORIA SPEAKEASY, INC.**

     **Plaintiffs,**

v.

**UNITED STATES SMALL BUSINESS ADMINISTRATION; JOVITA CARRANZA, in her Official Capacity as Administrator of the Small Business Administration; UNITED STATES OF AMERICA; and STEVEN MNUCHIN, in his Official Capacity as United States Secretary of Treasury,**

   **Defendants.**

---

Bradley J. Shafer (P36604)
Brad@BradShaferLaw.com
Matthew J. Hoffer (P70495)
Matt@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Blvd., Suite 2
Lansing, Michigan  48906
517-886-6560 – Telephone
*Attorneys for All Plaintiffs*

Gary S. Edinger (Fla. 0606812)
GSEdinger12@gmail.com
**BENJAMIN, AARONSON, EDINGER & PATANZO, P.A.**
305 N.E. 1st Street
Gainesville, Florida  320601
352-338-4440 - Telephone
*Attorneys for Plaintiffs JCB of Gainesville, Inc., and V.C. Lauderdale, Inc.*

Peter E. Garrell
PGarrell@FortisLaw.com
**FORTIS, LLP**
650 Town Center Drive, Suite 1530
Costa Mesa, California  92626
714-795-2363 - Telephone
*Attorneys for Spearmint Rhino affiliated Plaintiffs*

---

## PLAINTIFFS' VERIFIED CORRECTED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

NOW COME all Plaintiffs listed in the above caption, and for their complaint, hereby state the following.

## INTRODUCTION

1.     This is a civil action wherein Plaintiffs seek injunctive relief to restrain Defendants from discriminating against workers who are entitled to benefit from the Paycheck Protection Program ("PPP") provisions of the recently-enacted Coronavirus, Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 §§ 1101-03, 1107, 1114 (2020) (the "CARES Act").  The PPP is designed to quickly provide emergency relief to workers and businesses affected by the current COVID-19 pandemic following the President of the United States declaring a national emergency.   However, the emergency regulations promulgated by the Small Business Administration to implement the PPP, which in part adopt existing regulations formulated to implement narrower existing loan programs, improperly and unconstitutionally limit benefits to businesses and workers unquestionably engaged in First Amendment protected expression.  The regulations and operating procedures, described more specifically below, conflict with the text of the PPP and violate businesses' and workers' fundamental rights under the First and Fifth Amendments of the United States Constitution, among others.

2.      Because the funding of the PPP is to occur on a first-come-first-serve basis until the fund is depleted, Plaintiffs bring this action on an emergency basis and will seek a Temporary Restraining Order to prevent irreparable injury to their workers, their businesses, the entertainers who perform on their premises, and all their constitutional rights.

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(1), (3), (4); 28 U.S.C. § 1346(a)(2); and 28 U.S.C. § 1361.

4.      Authority for judicial review of agency action is further provided by 5 U.S.C. § 702, which states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or

equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5.      The prayer for declaratory relief is founded in part on Rule 57 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 2201, the latter of which provides that:

> ". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ."

6.      The jurisdiction of the Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 2202, the latter of which provides:

> "Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

7.      No other action, civil or criminal, is pending in any state court involving the Plaintiffs regarding the activities and events at issue here.

8.      This suit is authorized by law to redress deprivations of rights, privileges, and immunities secured by the First and Fifth Amendments to the United States Constitution, and for declaratory and injunctive relief.

5

9.      Pursuant to 28 U.S.C. § 1391(e) venue in this Court is appropriate as the Plaintiff DV Diamond Club of Flint, LLC is located in the Eastern District of Michigan; it has applied for a loan within the Eastern District; the Small Business Administration and the Treasury Department operate in the Eastern District; and the injury complained of and acts causing that injury have occurred and will continue to occur in the Eastern District of Michigan.

## **PARTIES**

10.      DV Diamond Club of Flint, LLC ("DV") is a Michigan Limited Liability Company duly organized and authorized to conduct business in the State of Michigan.  DV does business as Little Darlings at 2341 South Dort Highway in Flint, Michigan, which is located in Genesee County, State of Michigan.

11.      Benelux Corporation ("Benelux") is a Texas corporation duly organized and authorized to do business in the State of Texas.  Benelux does business as The Palazio at 501 East Ben White in Austin, Texas.

12.      BDS Restaurant, Inc. ("BDS") is a Texas corporation duly organized and authorized to do business in the State of Texas.  BDS does business as Baby Dolls Topless Saloon at 10250 Shady Trail in Dallas Texas.

13.    DB Entertainment, Inc. ("DB") is a Texas corporation duly organized and authorized to do business in the State of Texas.  DB does business as Baby Dolls – Ft Worth at 3601 Highway 157 in Fort Worth Texas.

14.    Millennium Restaurants Group, Inc. ("Millennium") is a Texas Corporation duly organized and authorized to do business in the State of Texas. Millennium does business as Cabaret Royal or Chicas Locas at 10723 Composite Drive in Dallas Texas.

15.    T and N Incorporated ("T&N") is a Texas Corporation duly organized and authorized to do business in the Texas.  T&N does business as Fare Arlington or Chicas Locas at 2711 Majesty in Arlington, Texas.

16.    Burch Management Company, Inc. ("Burch") is a Texas corporation duly organized and authorized to do business in the State of Texas.  Burch is located at 10723 Composite Drive in Dallas Texas.

17.    JCB of Gainesville, Inc. ("JCB") is a Florida corporation duly organized and authorized to do business in the State of Florida.  JCB does business as Café Risque at 17035 S.E. Country Road 234 in Micanopy, Florida.

18.    MAG Enterprises, Inc. ("MAG Enterprises") is a Pennsylvania corporation duly organized and authorized to do business in the Commonwealth of

Pennsylvania.  MAG Enterprises does business as Cheerleaders Gentlemen's Club at 2740 South Fort Street in Philadelphia, Pennsylvania.

19.     2740 Corporation is a Pennsylvania corporation duly organized and authorized to do business in the Commonwealth of Pennsylvania.  2740 Corporation does business as Cheerleaders Gentlemen's Club at 2740 South Fort Street in Philadelphia, Pennsylvania.

20.     MAG Pitt LP ("MAG Pitt") is a Pennsylvania limited partnership duly organized and authorized to do business in the Commonwealth of Pennsylvania. MAG Pitt does business as Cheerleaders Gentlemen's Club at 3100 Liberty Avenue in Pittsburgh, Pennsylvania.

21.     Filosadelfia, LLC ("Filosadelfia") is a Pennsylvania limited liability company duly organized and authorized to do business in the Commonwealth of Philadelphia.  Filosadelfia does business as Sin City at 6130 West Passyunk Avenue in Philadelphia, Pennsylvania.

22.     Polmour, Inc. ("Polmour") is a Texas corporation duly organized and authorized to do business in the State of Texas.  Poulmour does business as The Landing Strip at 745 U.S. Highway 183 South in Austin, Texas.

23.     Stone Park Entertainment, Inc. ("Stone Park") is an Illinois corporation duly organized and authorized to do business in the State of Illinois.  Stone Park does business as Scores at 4003 West Lake Street in Stone Park, Illinois.

24.     Seventy7, LLC ("Seventy7") is a limited liability company duly organized and authorized to do business in the State of Illinois.  Seventy7does business as Gold Rush at 7778 Biscayne Boulevard in Miami, Florida.

25.     Brookhurst Venture, LLC ("Brookhurst") is a California Limited Liability Company duly organized and authorized to do business in the State of California.  Brookhurst does business as California Girls at 815 Brookhurst Street in Anaheim, California.

26.     City of Industry Hospitality Venture, Inc. ("Industry Venture") is a California Corporation duly organized and authorized to do business in the State of California. Industry Venture does business as Spearmint Rhino Gentlemen's Club at 15411 E. Valley Blvd in City of Industry, California.

27.     Farmdale Hospitality Services, Inc. ("Farmdale") is a California Corporation duly organized to do business in the State of California. Farmdale does business as Blue Zebra at 6872 Farmdale Ave in North Avenue, California.

28.     Inland Restaurant Venture I, Inc., ("Inland") is a California Corporation duly organized and authorized to do business in the State of California. Inland does business as Spearmint Rhino Gentlemen's Club at 15004 Oxnard Street in Van Nuys, California.

29.     Midnight Sun Enterprises, Inc. ("Midnight") is a California Corporation duly organized and authorized to do business in the State of California. Midnight does business as Spearmint Rhino Gentlemen's Club at 19900 S. Normandie Blvd in Torrance, California.

30.     Olympic Avenue Venture, Inc. ("Olympic") is a California Corporation duly organized and authorized to do business in the State of California. Olympic does business as Spearmint Rhino Gentlemen's Club at 2020 E. Olympic Blvd in Los Angeles, California.

31.     The Oxnard Hospitality Services, Inc. ("Oxnard") is a California Corporation duly organized and authorized to do business in the State of California. Oxnard does business as Spearmint Rhino Gentlemen's Club at 630 Maulhardt Ave in Oxnard, California.

32.     Platinum SJ Enterprise ("SJ") is a California Limited Liability Company duly organized and authorized to do business in the State of California.

SJ does business as Spearmint Rhino Gentlemen's Club at 81 W. Santa Clara Street in San Jose California.

33. Rouge Gentlemen's Club, Inc. ("Rouge") is a California Corporation duly organized and authorized to do business in the State of California. Rouge does business as Dames N' Games Topless Sports Bar at 14626 Ramer Street in Van Nuys California.

34. Washington Management, LLC ("Washington Mgmt") is a California Limited Liability Company duly organized and authorized to do business in the State of California. Washington Mgmt does business as Dames N' Games at 2319 E. Washington Blvd in Los Angeles California.

35. PNM Enterprises, Inc. ("PNM") is a California Corporation duly organized to do business in the State of California. PNM does business as California Girls at 1109 N. Harbor Blvd in Santa Ana California.

36. Rialto Pockets, Inc. ("Rialto") is a California Corporation duly organized to do business in the State of California. Rialto does business as Spearmint Rhino Gentlemen's Club at 312 Riverside Ave in Rialto California.

37. Santa Barbara Hospitality Services, Inc. ("Santa Barbara") is a California Corporation duly organized to do business in the State of California. Santa

Barabara does business as Spearmint Rhino Gentlemen's Club at 22 E. Montecito Street in Santa Barbara California.

38.     Santa Maria Restaurant Enterprises, Inc. ("Santa Maria") is a California Corporation duly organized to do business in the State of California. Santa Maria does business as Spearmint Rhino Gentlemen's Club at 505 S. Broadway in Santa Maria California.

39.     The Spearmint Rhino Adult Superstore, Inc. ("Superstore") is a California Corporation duly organized to do business in the State of California. Superstore does business at 15429 E. Valley Blvd in the City of Industry California.

40.     High Expectations Hospitality, LLC ("Expectations") is a Texas Limited Liability Company duly organized and authorized to do business in the State of Texas.  Expectations does business as Spearmint Rhino Gentlemen's Club at 10965 Composite Drive in Dallas Texas.

41.     Kentucky Hospitality Venture, LLC ("Kentucky Hospitality") is a Delaware Limited Liability Company duly organized and authorized to do business in the State of Kentucky.  Kentucky Hospitality does business as Spearmint Rhino Gentlemen's Club at 5539 Athens Boonesboro Road in Lexington, Kentucky.

42.     K-Kel, Inc. ("K-Kel") is a Nevada Corporation duly organized and authorized to do business in the State of Nevada.  K-Kel does business as The Spearmint Rhino Adult Cabaret at 3340 S. Highland Drive in Las Vegas, Nevada.

43.     L.C.M., LLC ("LCM") is an Idaho Limited Liability Company duly organized and authorized to do business in the State of Idaho.  LCM does business Spearmint Rhino Gentlemen's Club at 1500 W. Grove Street in Boise, Idaho.

44.     Nitelife, Inc. ("Nitelife") is a Minnesota Corporation duly organized to do business in the State of Minnesota. Nitelife does business as Spearmint Rhino Gentlemen's Club at 725 S. Hennepin Ave in Minneapolis, Minnesota.

45.     Penn Ave Hospitality, LLC ("Penn Ave") is a Delaware Limited Liability Company duly organized to do business in the State of Pennsylvania. Penn Ave does business as Spearmint Rhino Gentlemen's Club at 1620 Pennsylvania Ave in Pittsburgh, Pennsylvania.

46.     Sarie's Lounge, LLC ("Sarie's") is an Iowa Limited Liability Company duly organized and authorized to do business in the State of Iowa.  Sarie's does business as Spearmint Rhino Gentlemen's Club at 2449 North 13th Street in Carter Lake, Iowa.

47.   World Class Ventures, LLC ("World Class") is an Iowa Limited Liability Company duly organized and authorized to do business in the State of Iowa. World Class does business as Spearmint Rhino Gentlemen's Club at 2449 North 13th Street in Carter Lake, Iowa.

48.   W.P.B. Hospitality, LLC ("WPB") is a Florida Limited Liability Company duly organized to do business in the State of Florida. WPB does business as Spearmint Rhino Gentlemen's Club at 2145 Zip Code Place in West Palm Beach, Florida.

49.   The Spearmint Rhino Companies Worldwide, Inc. ("Worldwide") is a Nevada corporation duly organized and authorized to do business in the State of California.  Worldwide is located at 1875 Tandem Way in Norco, California.

50.   Spearmint Rhino Consulting Worldwide, Inc. ("Consulting") is a Delaware corporation duly organized and authorized to do business in the State of California.  Consulting is located at 1875 Tandem Way in Norco, California.

51.   V.C. Lauderdale, Inc. ("VC") is a Florida corporation duly organized and authorized to do business in the State of Florida. VC does business as Vegas Cabaret at 5428 North University Drive, Lauderhill, Florida.

52.   Kimmico, Inc. ("Kimmico") is a Maryland corporation duly organized and authorized to do business in the State of Maryland.  Kimmico does business as

14

Fantasies Nightclub & Sports Bar at 5520 Pennington Avenue in Baltimore Maryland.

53.     Ferny Properties, LLC ("Ferny") is a North Dakota limited liability company duly organized and authorized to do business in the State of North Dakota. Ferny does business as Northern Gentlemen's Club at 325 10th Street South in Fargo, North Dakota.

54.     Heritage Management Services, Inc. ("Heritage Management") is a California corporation duly organized and authorized to do business in the State of California.  Heritage Management does business as Crazy Horse at 980 Market Street in San Francisco, California.

55.     MAG Entertainment, LLC ("MAG Entertainment") is a New Jersey limited liability company duly organized and authorized to do business in the State of New Jersey.  MAG Entertainment does business as Cheerleaders Gentlemen's Club at 54 Crescent Boulevard in Gloucester City, New Jersey.

56.     East Coast Restaurant & Nightclubs, LLC ("East Coast") is a New Hampshire limited liability company duly organized and authorized to do business in the State of New Hampshire.  East Coast does business as Millennium Cabaret at 390 South River Road in Bedford, New Hampshire.

57.     Oasis On Essington LTD ("Oasis") is a Pennsylvania limited partnership duly organized and authorized to do business in the Commonwealth of

Pennsylvania. Oasis does business as Cheerleaders Gentlemen's Club at 6800 Essington Avenue in Philadelphia, Pennsylvania.

58.   Vonch, LLC ("Vonch") is an Illinois limited liability company duly organized and authorized to do business in the State of Illinois. Vonch does business as Polekatz Gentlemen's Club at 7337 W. 100th Place in Bridgeview, Illinois.

59.   Club Cabaret, Inc. ("Club Cabaret") is an Illinois corporation duly organized and authorized to do business in the State of Illinois. Club Cabaret does business as Club Cabaret at 1047 North Main Street in Creve Coeur, Illinois.

60.   King Bee, Inc. ("King Bee") is a Texas corporation duly organized and authorized to do business in the State of Texas. King Bee does business as Red Parrot at 14401 Gateway West in El Paso, Texas.

61.   Peoria Speakeasy, Inc. ("Peoria Speakeasy") is an Illinois corporation duly organized and authorized to do business in the State of Illinois. Peoria Speakeasy does business as Big Al's at 400 SW Jefferson in Peoria, Illinois.

62.   Defendant United States Small Business Administration (the "SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq*. The SBA maintains a branch office at 477 Michigan Avenue, Suite 1819, McNamara Building, Detroit, Michigan, which is within the Eastern District of Michigan.

63.     Defendant Jovita Carranza ("Carranza," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity only, as the Administrator of the SBA.

64.     Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—
>
> (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy . . . .

65.     Steven Mnuchin (the "Secretary") is the Secretary of the Treasury Department (the "Treasury") of the United States of America, and is sued in his official capacity only as the Secretary of the Treasury Department.

66.     Defendant currently does not seek monetary relief, and seeks only to restrain the actions of the Administrator and the Secretary in each of their official capacities.

67.     The United States of America is a sovereign nation dedicated to the protection of life, liberty, and property, as set forth in the Bill of Rights and other provisions and amendments to the Constitution of the United States of America.

## <u>RELEVANT STATUTORY PROVISIONS</u>
## <u>AND ADMINISTRATIVE REGULATIONS</u>

68.     The CARES Act was signed into law by the President of the United

States on March 28, 2020, and is currently in effect.

69.     A true and accurate copy of the Paycheck Protection Program (the

"PPP") provisions of the CARES Act is attached hereto as **Exhibit A** and hereby

incorporated by reference as though fully set forth herein.

70.     The  PPP provisions of the CARES Act instruct the SBA to promulgate

rules as follows:

SEC. 1114. EMERGENCY RULEMAKING AUTHORITY.

Not later than 15 days after the date of the enactment of this Act, the
Administrator shall issue regulations to carry out this title and the
amendments made by this title without regard to the notice
requirements under section 553(b) of title 5, Unites States Code.

71.     The CARES Act specifically tasks the SBA with administering the

PPP.  The PPP further provides at 15 U.S.C. § 636(a)(36)(F)(ii):

Delegated authority

(I) In general

For purposes of making covered loans for the purposes described in
clause (i), a lender approved to make loans under this subsection shall
be deemed to have been delegated authority by the Administrator to
make and approve covered loans, subject to the provisions of this
paragraph.

(II) Considerations

In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower—

(aa) was in operation on February 15, 2020; and

(bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or

(BB) paid independent contractors, as reported on a Form 1099-MISC.

(iii) Additional lenders

The authority to make loans under this paragraph shall be extended to additional lenders determined by the Administrator and the Secretary of the Treasury to have the necessary qualifications to process, close, disburse and service loans made with the guarantee of the Administration.

72.      Pursuant to the PPP, the SBA did, in fact, promulgate regulations on

April 1, 2020.   A true and accurate copy of Business Loan Program Temporary

Changes; Paycheck Protection Program, RIN 3245-AH34 (Interim Final Rule Apr.

1, 2020) (the " SBA 3245-AH34"), as promulgated by the SBA, is attached hereto

as **Exhibit B** and hereby incorporated by reference as though fully set forth herein.

73.      SBA 3245-AH34 provides, in part:

Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the

19

Act are eligible. (SOP 50 10 can be found at https://www.sba.gov/document /sop-50-10-5-lender-development-company-loan-programs.)

74.      SBA 3245-AH34 further provides that PPP loans with be provided on a first-come, first-served basis until funds are exhausted.  [*See* **Ex. B**, p.13].  The PPP has a total monetary limit of $349,000,000,000.00 ($349 Billion).

75.      A true and accurate copy of Business Loan Program, 60 Fed. Reg. 64356 *et seq*. (proposed Dec. 15, 1995; to be codified  at 13 C.F.R. § 120.110), as promulgated by the SBA, is attached hereto as **Exhibit C** and hereby incorporated by reference as though fully set forth herein.

76.      A true and accurate copy of SBA Business Loan Ineligible Businesses Rule, 13 C.F.R § 120.110 (2020), as actually enacted, is attached hereto as **Exhibit D** and hereby incorporated by reference as though fully set forth herein.

77.      13 C.F.R § 120.110 provides, in part:

The following types of Businesses are ineligible:

*        *        *

(p) Businesses which:

(1) Present live performances of a prurient sexual nature; or

(2) Derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depiction or display, of a prurient sexual nature;

These provisions are hereinafter referred to simply as the "Regulations."

78.     A true and accurate copy of SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019), is attached hereto as **Exhibit E** and hereby incorporated by reference as though fully set forth herein.

79.     The SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019) provides, in part, at Ch.2 (III)(A):

15. Businesses Providing Prurient Sexual Material (13 CFR § 120.110 (p))
    a. A business is not eligible for SBA assistance if:

        i. It presents live or recorded performances of a prurient sexual nature; or

        ii. It derives more than 5% of its gross revenue, directly or indirectly, through the sale of products, services or the presentation of any depictions or displays of a prurient sexual nature.

    b. SBA has determined that financing lawful activities of a prurient sexual nature is not in the public interest. The Lender must consider whether the nature and extent of the sexual component causes the business activity to be prurient.

    c. If a Lender finds that the Applicant may have a business aspect of a prurient sexual nature, prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must document and submit the analysis and supporting documentation to the Associate General Counsel

for Litigation at PSMReview@sba.gov for a final Agency decision on eligibility. Upon approval by SBA, the Lender may submit the application to the LGPC or may proceed to process the loan under its delegated authority. A non-delegated Lender must submit a copy of SBA's approval with the application to the LGPC. A delegated Lender must retain its analysis, supporting documentation, and evidence of SBA's approval in its loan file and must submit the analysis and supporting documentation to SBA with any request for guaranty purchase. SBA also may review such documentation when conducting Lender oversight activities.

These provisions are hereinafter referred to as the "SOP."

80.    Defendant SBA is responsible for formulating, issuing, and enforcing the Regulations and the SOP.

81.    A true and accurate exemplar copy of the SBA Paycheck Protection Program Borrower Application Form 2483 (Apr. 2020) is attached hereto as **Exhibit F**, and hereby incorporated by reference as though fully set forth herein.

82.    A true and accurate copy of a lender Paycheck Protection Program Supplemental Information Form (current as of Apr. 5, 2020) is attached hereto as **Exhibit G** and hereby incorporated by reference as though fully set forth herein.

83.    The First Amendment to the Unites States Constitution reads:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

84.    The Fifth Amendment to the United States Constitution reads:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## GENERAL ALLEGATIONS

### DV Diamond Club of Flint, LLC ("DV")

85.    DV is an alcohol-serving establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, male and female performance dance entertainment which is fully clothed and, at times for the female entertainers, topless.  All of the entertainment provided by DV is non-obscene and appeals to healthy human interests and desires.

86.    None of the live performances at DV are unlawful or obscene.  Neither DV nor any of the entertainers who have performed on its premises have *ever* been charged, let alone convicted, of any crimes of obscenity.

87.    DV presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

a.     Class C Liquor License issued by the Michigan Liquor Control Commission, with permits for Sunday Sales, Additional Bar and Specially Designated Merchant.

b.     A business license to present "Adult Entertainment" issued by the City of Flint, Michigan.

c.     A business license with a "dance permit" issued by the City of Flint, Michigan.

88.   DV is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order 2020-21) issued by the Governor of Michigan as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, DV has suffered significant business losses, but plans to reopen when legally permitted to do so.   DV has been closed for business since at least 12:01 AM on March 24, 2020, and remains closed as of the date this amended complaint is filed.

89.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – DV applied for a PPP loan.

90.     On or about April 6, 2020, DV submitted an application for a PPP loan through its lender in Lake Orion, State of Michigan; that being within the Eastern District of Michigan.  Its lender is an approved SBA Lender.  A true and accurate copy of DV's PPP loan application to (the "DV's Application") is attached hereto as **Exhibit H** and is incorporated by reference as though fully set forth herein.

91.     Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), DV's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by DV.

92.     DV is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

93.     DV is informed that it has been assigned a loan number, which operates as a 'placeholder' for receiving the loan.  That is, absent a lack of funding or other unforeseen circumstance, the loan will be approved by the SBA and the loan proceeds will be issued to DV.

94.     DV intends to use the PPP loan funds in accordance with the PPP provision of the CARES Act, such that the loan will qualify for forgiveness under the CARES Act.  DV will definitely use a substantial amount, and intends to use as

much of the loan proceeds as possible, for purposes that qualify for forgiveness, including payroll and rent, in order to maximize the forgivable amount of the loan.

95.     However, upon information and belief, DV may not qualify for the forgiveness of its PPP loan due to the Regulations.  That is, in order to qualify for forgiveness, DV will be required to prove it is fully eligible for the  loan under the PPP provisions of the CARES Act, but will be unable to do so due to the SBA's adoption of the exclusions of 13 C.F.R § 120.110(p) via  SBA 3245-AH34.

96.     If DV knew for certain that its PPP loan would not be forgiven without regard to how the loan proceeds were used and when, it would use the proceeds in accordance with its greatest business needs rather than to maximize the forgivable amount of the loan.

### Benelux Corporation ("Benelux")

97.     Benelux is a full service bar and restaurant, including alcohol service, open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Benelux is non-obscene, appeals to healthy human interests and desires.

98.    None of the live performances at Benelux are unlawful or obscene. Neither Benelux nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

99.    Benelux presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

a.    Public Assembly Operational permit issued by the Austin (Texas) Fire Department;

b.    Permit to Operate a Food Enterprise issued by Austin (Texas) Public Health;

c.    Mixed Beverage Permit, Beverage Cartage Permit, and Mixed Beverage Late Hours Permit issued by the Texas Alcoholic Beverage Commission; and

d.    Texas Sales and Use Permit.

100.    Benelux is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas any by the directive of the Mayor of the City of Austin, as a result of the COVID-19 pandemic. As a direct and proximate result of such state-and-city-ordered closure, Benelux has suffered significant business losses, but plans to reopen

when legally permitted to do so.  Benelux has been closed for business since at least

12:01 AM on March 17, 2020, and remains closed as of the date this amended

complaint is filed.

101.   In order to mitigate its business losses and to provide monetary relief

to its employees – since at least 75% of PPP loans are to be used for employee wages

and salaries – Benelux applied for a PPP loan.

102.   Benelux has submitted an application for a PPP loan through its lender

in Austin, Texas.  Its lender is an approved SBA Lender.

103.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Benelux's lender is and

will operate as a delegate of the SBA in the processing and approval or disapproval

of the PPP loan sought by Benelux.

104.   Benelux is fully qualified -- but for the Regulations and the SOP or the

SBA's application thereof -- to receive a PPP loan under all relevant statutes,

regulations, and procedures.

105.   However, Benelux reasonably believes that its Application will be

rejected or fatally delayed due to the SOP and/or the Regulations.  Benelux has

learned that numerous other similar businesses, which presented non-obscene female

performance dance entertainment of an "exotic," "topless" and/or fully nude variety

have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.  Specifically, Benelux has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).  Benelux reasonably fears its Application will suffer the same fate as the applications of these other businesses which have had their applications denied.

106.   Benelux also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore potentially rendering any later request for judicial relief to be moot.  The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until all funds are exhausted, and no further funds are currently available.  The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."  Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, Benelux reasonably fears either that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that Benelux is not eligible with no time for it to obtain relief while PPP funds remain.

*107.*   In the event that Benelux is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Benelux to engage in protected First Amendment activity; and the inability of Benelux's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**BDS Restaurant, Inc. ("BDS")**

108.   BDS is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by BDS is non-obscene and appeals to healthy human interests and desires.

109.   None of the live performances at BDS are unlawful or obscene.  Neither BDS nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

110.   BDS presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

    a.    Permits to sell alcohol from the Texas Alcoholic Beverage Commission; and

       b.      Sexually Oriented Business Permit from the City of Dallas.

111.   BDS is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, BDS has suffered significant business losses, but plans to reopen when legally permitted to do so.  BDS has been closed for business since at least 12:01 AM on April 2, 2020, and remains closed as of the date this amended complaint is filed.

112.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – BDS applied for a PPP loan.

113.   BDS has submitted an application for a PPP loan through its lender in Tyler, Texas.  Its lender is an approved SBA Lender.

114.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), BDS's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by BDS.

115.   BDS is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

116.   However, BDS reasonably believes that its Application will be rejected or fatally delayed due to the SOP and/or the Regulations.  BDS has learned that numerous other similar businesses, which presented non-obscene female performance dance entertainment of an "exotic," "topless" and/or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.  Specifically, BDS has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).  BDS reasonably fears its Application will suffer the same fate as the applications of these other businesses which have had their applications denied.

117.   BDS also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore potentially rendering any later request for judicial relief to be moot.  The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until all funds are exhausted, and no further funds are currently available.  The SOP

provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."  Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, BDS reasonably fears either that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that BDS is not eligible with no time for it to obtain relief while PPP funds remain.

118.   In the event that BDS is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of BDS to engage in protected First Amendment activity; and the inability of BDS's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

*DB Entertainment, Inc. ("DB")*

119.   DB is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by DB is non-obscene and appeals to healthy human interests and desires.

120.   None of the live performances at DB are unlawful or obscene.  Neither DB nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

121.   DB presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

a.   Permits to sell alcohol from the Texas Alcoholic Beverage Commission; and

b.   A specialized certificate of occupancy for a 'Sexually Oriented Business.'

122.   DB is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, DB has suffered significant business losses, but plans to reopen when legally permitted to do so.  DB has been closed for business since at least 12:01 AM on April 2, 2020, and remains closed as of the date this amended complaint is filed.

123.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – DB applied for a PPP loan.

124.   DB submitted an application for a PPP loan through its lender in Tyler, Texas.  Its lender is an approved SBA Lender.

125.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), DB's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by DB.

126.   DB is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

127.   On April 5, 2020, DB was informed that its loan application was denied. The reason for the denial, as stated by Senior Vice President of DB's lender, is "I was just informed by my Regional President who was told by senior management that SOB's are not eligible for this program."

128.   A true and accurate copy of the correspondence DB's representative received from its lender, with redactions to keep the identity of the lender out of the public record, is attached hereto as **Exhibit I**.

35

129.   The term "SOB," as used in **Exhibit I**, and reference above, is an acronym for a Sexually Oriented Businesses, a designation in local municipal ordinances give to establishments such as DB, which present female performance dance entertainment and which are colloquially known as gentlemen's clubs.

130.   In the event that DB is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of DB to engage in protected First Amendment activity; and the inability of DB's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### *Millennium Restaurants Group, Inc. ("Millennium")*

131.   Millennium is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Millennium is non-obscene and appeals to healthy human interests and desires.

132.   None of the live performances at Millennium are unlawful or obscene. Neither Millennium nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

133.   Millennium presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

a.   Permits to sell alcohol from the Texas Alcoholic Beverage Commission; and

b.   A Sexually Oriented Business Permit from the City of Dallas.

134.   Millennium is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Millennium has suffered significant business losses, but plans to reopen when legally permitted to do so.  Millennium has been closed for business since at least 12:01 AM on April 2, 2020, and remains closed as of the date this amended complaint is filed.

135.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Millennium applied for a PPP loan.

136.   Millennium submitted an application for a PPP loan through its lender in Tyler, Texas.  Its lender is an approved SBA Lender.

37

137.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Millennium's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Millennium.

138.   Millennium is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

139.   On April 5, 2020, Millennium was informed that its loan application was denied.   The reason for the denial, as stated by Senior Vice President of Millennium's lender, is "I was just informed by my Regional President who was told by senior management that SOB's are not eligible for this program."

140.   A true and accurate copy of the correspondence Millennium's representative received from its lender, with redactions to keep the identity of the lender out of the public record, is attached hereto as **Exhibit I**.

141.   The term "SOB," as used in **Exhibit I**, and reference above, is an acronym for a Sexually Oriented Businesses, a designation in local municipal ordinances give to establishments such as Millennium, which present female performance dance entertainment and which are colloquially known as gentlemen's clubs.

142.   In the event that Millennium is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Millennium to engage in protected First Amendment activity; and the inability of Millennium's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

*T and N Incorporated ("T&N")*

143.   T&N is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by T&N is non-obscene and appeals to healthy human interests and desires.

144.   None of the live performances at T&N are unlawful or obscene. Neither T&N nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

145.   T&N presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

      a.    Permits to sell alcohol from the Texas Alcoholic Beverage Commission; and

      b.    A Sexually Oriented Business Permit from the City of Arlington.

146.   T&N is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, T&N has suffered significant business losses, but plans to reopen when legally permitted to do so.  T&N has been closed for business since at least 12:01 AM on April 2, 2020, and remains closed as of the date this amended complaint is filed.

147.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – T&N applied for a PPP loan.

148.   T&N submitted an application for a PPP loan through its lender in Tyler, Texas.  Its lender is an approved SBA Lender.

149.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), T&N's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by T&N.

150.   T&N is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

151.   On April 5, 2020, T&N was informed that its loan application was denied.   The reason for the denial, as stated by Senior Vice President of T&N's lender, is "I was just informed by my Regional President who was told by senior management that SOB's are not eligible for this program."

152.   A true and accurate copy of the correspondence T&N's representative received from its lender, with redactions to keep the identity of the lender out of the public record, is attached hereto as **Exhibit I**.

153.   The term "SOB," as used in **Exhibit I**, and reference above, is an acronym for a Sexually Oriented Businesses, a designation in local municipal ordinances give to establishments such as T&N, which present female performance dance entertainment and which are colloquially known as gentlemen's clubs.

154.   In the event that T&N is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of T&N to engage in protected First Amendment activity; and the inability of T&N's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### Burch Management Company, Inc. ("Burch")

155.   Burch is a business services company that provides a range of services to businesses including, *inter alia*: accounting, payroll, advertising services, consulting, and bulk goods purchasing.

156.   Burch provides services to a number of establishments that provide female performance dance entertainment, including BDS, DB, Millennium, and T&N.

157.   None of the live performances at the businesses serviced by Burch are unlawful or obscene.

158.   A number of the companies serviced by Burch are shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Burch has suffered significant business losses, but plans to return to full operations when its clients are able to do so.

159.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Burch applied for a PPP loan.

160.   Burch submitted an application for a PPP loan through its lender in Tyler, Texas.  Its lender is an approved SBA Lender.

161.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Burch lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Burch.

162.   Burch is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

163.   On April 5, 2020, Burch was informed that its loan application was denied.  The reason for the denial, as stated by Senior Vice President of Burch's lender, is "I was just informed by my Regional President who was told by senior management that SOB's are not eligible for this program."

164.   A true and accurate copy of the correspondence Burch's representative received from its lender, with redactions to keep the identity of the lender out of the public record, is attached hereto as **Exhibit I**.

165.   The term "SOB," as used in **Exhibit I**, and reference above, is an acronym for a Sexually Oriented Businesses, a designation in local municipal ordinances give to establishments such as Burch's clients, which present female

performance dance entertainment and which are colloquially known as gentlemen's clubs.

166.   In the event that Burch is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business, all for being regarded as or for receiving income from businesses that engage in First Amendment activity.

*JCB of Gainesville, Inc. ("JCB")*

167.   JCB is a full service restaurant open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times fully nude.  All of the entertainment provided by JCB is non-obscene and appeals to healthy human interests and desires.

168.   None of the live performances at JCB are unlawful or obscene.  Neither JCB nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

169.   JCB is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order 20-91) issued by the Governor of Florida as a result of the COVID-19 pandemic. As a direct and proximate result of such

state-ordered closure, JCB has suffered significant business losses, but plans to reopen when legally permitted to do so.  JCB has been closed for business since at least 12:01 AM on April 3, 2020, and remains closed as of the date this amended complaint is filed.

170.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – JCB applied for a PPP loan.

171.   On or about April 6, 2020, JCB submitted an application for a PPP loan through its lender in Gainesville, Florida.  Its lender is an approved SBA Lender.

172.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), JCB's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by JCB.

173.   JCB is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

174.   On April 14, 2020, JCB was informed that its loan application was denied.  The reason for the denial, as stated by a representative for JCB's lender by

text message, was that "based on business type and the income type it does not qualify for the PPP loan."

175.   JCB understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

176.   In the event that JCB is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of JCB to engage in protected First Amendment activity; and the inability of JCB staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### MAG Enterprises, Inc. ("MAG Enterprises")

177.   MAG Enterprises is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by MAG Enterprises is non-obscene and appeals to healthy human interests and desires.

178.   None of the live performances at MAG Enterprises are unlawful or obscene.  Neither MAG Enterprises nor any of the entertainers who have performed

on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

179.    MAG Enterprises presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

     a.    Liquor License from the Pennsylvania Liquor Control Board with permits for Amusement, Extended Hours Food, and Sunday Sales; and

     b.    Amusement License from the City of Philadelphia

180.    MAG Enterprises is currently shuttered as a result of the emergency "shelter-in-place" executive order (Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home) issued by the Governor of Pennsylvania as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, MAG Enterprises has suffered significant business losses, but plans to reopen when legally permitted to do so. MAG Enterprises has been closed for business since at least 8:00 PM on April 1, 2020, and remains closed as of the date this amended complaint is filed.

181.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – MAG Enterprises applied for a PPP loan.

182.   On or about MAG Enterprises, MAG Enterprises submitted an application for a PPP loan through its lender in Philadelphia, Pennsylvania.   Its lender is an approved SBA Lender.

183.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), MAG Enterprises's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by MAG Enterprises.

184.   MAG Enterprises is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

185.   MAG Enterprises has been informed that its loan application was denied.   The lender's stated reason for the denial is that MAG Enterprises is a gentlemen's club.  MAG Enterprises understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

186.    In the event that MAG Enterprises is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of MAG Enterprises to engage in protected First Amendment activity; and the inability ofof MAG

Enterprises' staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### 2740 Corporation

187. 2740 Corporation is a commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless. All of the entertainment provided by 2740 Corporation is non-obscene and appeals to healthy human interests and desires.

188. None of the live performances at 2740 Corporation are unlawful or obscene. Neither 2740 Corporation nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

189. 2740 Corporation presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

     a.     Business Privilege License from the City of Philadelphia; and

     b.     Certificate of Use and Occupancy from the City of Philadelphia.

190. 2740 Corporation is currently shuttered as a result of the emergency "shelter-in-place" executive order (Order of the Governor of the Commonwealth of

Pennsylvania for Individuals to Stay at Home) issued by the Governor of Pennsylvania as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, 2740 Corporation has suffered significant business losses, but plans to reopen when legally permitted to do so. 2740 Corporation has been closed for business since at least 8:00 PM on April 1, 2020, and remains closed as of the date this amended complaint is filed.

191.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – 2740 Corporation applied for a PPP loan.

192.   2740 Corporation submitted an application for a PPP loan through its lender in Philadelphia Pennsylvania.  Its lender is an approved SBA Lender.

193.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), 2740 Corporation lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by 2740 Corporation.

194.   2740 Corporation is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

195.   2740 Corporation has been informed that its loan application was denied.   The reason given for the denial is that 2740 Corporation operates a gentlemen's club.  2740 Corporation understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

196.   In the event that 2740 Corporation is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of 2740 Corporation to engage in protected First Amendment activity; and the inability of 2740 Corporation's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

***MAG Pitt LP ("MAG Pitt")***

197.   MAG Pitt is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by MAG Pitt is non-obscene and appeals to healthy human interests and desires.

198.   None of the live performances at MAG Pitt are unlawful or obscene. Neither MAG Pitt nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

199.   MAG Pitt presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Liquor License issues by the Pennsylvania Liquor Control Board with Amusement Permit, Extended Hours Food Permit, and Sunday Sales Permit.

200.   MAG Pitt is currently shuttered as a result of the emergency "shelter-in-place" executive order (Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home) issued by the Governor of Pennsylvania as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, MAG Pitt has suffered significant business losses, but plans to reopen when legally permitted to do so. MAG Pitt has been closed for business since at least 8:00 PM on April 1, 2020, and remains closed as of the date this amended complaint is filed.

201.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – MAG Pitt applied for a PPP loan.

202.   On or about MAG Pitt has submitted an application for a PPP loan through its lender in Pittsburgh, Pennsylvania.   Its lender is an approved SBA Lender.

203.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), MAG Pitt's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by MAG Pitt.

204.   MAG Pitt is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

205.   However, MAG Pitt reasonably believes that its Application will be rejected or fatally delayed due to the SOP and/or the Regulations.   MAG Pitt has learned that numerous other similar businesses, which presented non-obscene female performance dance entertainment of an "exotic," "topless" and/or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.   Specifically, MAG Pitt has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. §

120.110(p).  MAG Pitt reasonably fears its Application will suffer the same fate as the applications of these other businesses which have had their applications denied.

206.  MAG Pitt also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore potentially rendering any later request for judicial relief to be moot.  The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until all funds are exhausted, and no further funds are currently available.  The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."  Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, MAG Pitt reasonably fears either that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that MAG Pitt is not eligible with no time for it to obtain relief while PPP funds remain.

207.  In the event that MAG Pitt is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of MAG Pitt to engage in protected First Amendment activity; and the inability of MAG Pitt's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**Filosadelfia, LLC ("Filosadelfia")**

208.   Filosadelfia is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Filosadelfia is non-obscene and appeals to healthy human interests and desires.

209.   None of the live performances at Filosadelfia are unlawful or obscene. Neither Filosadelfia nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

210.   Filosadelfia presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

a.    Liquor License issued by the Pennsylvania Liquor Control Board with associated Amusement Permit and Sunday Sales Permit;

b.    Amusement Permit issued by the City of Philadelphia.

211.   Filosadelfia is currently shuttered as a result of the emergency "shelter-in-place" executive order (Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home) issued by the Governor of Pennsylvania as a result of the COVID-19 pandemic. As a direct and proximate

result of such state-ordered closure, Filosadelfia has suffered significant business losses, but plans to reopen when legally permitted to do so. Filosadelfia has been closed for business since at least 8:00 PM on April 1, 2020, and remains closed as of the date this amended complaint is filed.

212.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Filosadelfia applied for a PPP loan.

213.   Filosadelfia has attempted to submit an application for a PPP loan through its lender in Sewell, New Jersey. Its lender is an approved SBA Lender.

214.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Filosadelfia lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Filosadelfia.

215.   Filosadelfia is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

216.   Filosadelfia's lender refused to take an application from it for a PPP loan. The reason for the refusal is that Filosadelfia operates a gentlemen's club. Filosadelfia understands and interprets the reason given for the refusal to be that its

business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

217.   In the event that Filosadelfia is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Filosadelfia to engage in protected First Amendment activity; and the inability of Filosadelfia staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### *Polmour, Inc. ("Polmour")*

218.   Polmour is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Polmour is non-obscene and appeals to healthy human interests and desires.

219.   None of the live performances at Polmour are unlawful or obscene. Neither Polmour nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

220. Polmour presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

    a.    Liquor Licenses issues by the Texas Alcoholic Beverage Commission; and

    b.    Permit to prepare and serve food.

221. Polmour is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Polmour has suffered significant business losses, but plans to reopen when legally permitted to do so. Polmour has been closed for business since at least 12:01 AM on April 2, 2020, and remains closed as of the date this amended complaint is filed.

222. Polmour has submitted an application for a PPP loan through its lender in Austin, Texas. Its lender is an approved SBA Lender.

223. Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Polmour's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Polmour.

224. Polmour is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

225. Polmour was informed that its lender would not process the application for the reason that its business type was not eligible to receive PPP. Polmour understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via SBA 3245-AH34.

226. In the event that Polmour is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Polmour to engage in protected First Amendment activity; and the inability of Polmour's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**Stone Park Entertainment, Inc. ("Stone Park")**

227. Stone Park is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times in pasties and a g-string. All of the entertainment provided by Stone Park is non-obscene and appeals to healthy human interests and desires.

228.   None of the live performances at Stone Park are unlawful or obscene. Neither Stone Park nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

229.   Stone Park presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

    a.   Liquor License issued by the State of Illinois; and

    b.   Adult Entertainment licenses issued by Stone Park.

230.   Stone Park is currently shuttered as a result of the emergency "shelter-in-place" executive order (COVID-19 Executive Order No. 8) issued by the Governor of Illinois as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Stone Park has suffered significant business losses, but plans to reopen when legally permitted to do so.  Stone Park has been closed for business since at least 5:00 p.m. on March 21, 2020, and remains closed as of the date this amended complaint is filed.

231.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Stone Park applied for a PPP loan.

232.   Stone Park has submitted an application for a PPP loan through its lender in Stone Park, Illinois.  Its lender is an approved SBA Lender.

233.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Stone Park's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Stone Park.

234.   Stone Park is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

235.   However, Stone Park reasonably believes that its Application will be rejected or fatally delayed due to the SOP and/or the Regulations.  Stone Park has learned that numerous other similar businesses, which presented non-obscene female performance dance entertainment of an "exotic," "topless" and/or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.  Specifically, Stone Park has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).  Stone Park reasonably fears its Application will suffer

the same fate as the applications of these other businesses which have had their applications denied.

236.  Stone Park also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore potentially rendering any later request for judicial relief to be moot.  The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until all funds are exhausted, and no further funds are currently available.  The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."  Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, Stone Park reasonably fears either that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that Stone Park is not eligible with no time for it to obtain relief while PPP funds remain.

237.  In the event that Stone Park is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Stone Park to engage in protected First Amendment activity; and the inability of Stone Park's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

*Seventy7, LLC ("Seventy7")*

238.   Seventy7 is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times nude.  All of the entertainment provided by Seventy7 is non-obscene and appeals to healthy human interests and desires.

239.   None of the live performances at Seventy7are unlawful or obscene. Neither Seventy7 nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

240.   Seventy7 presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

      a.     Liquor License issued by the State of Florida;

      b.     Seating Food Service License issued by the State of Florida;

      c.     Dancing or Entertainment Local Business Tax receipt; and

      d.     Cabarets or Nightclubs permit issued by the City of Miami.

241.   Seventy7 is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order 20-91) issued by the Governor of Florida as a result of the COVID-19 pandemic. As a direct and proximate result of such

state-ordered closure, Seventy7 has suffered significant business losses, but plans to reopen when legally permitted to do so.  Seventy7 has been closed for business since at least 12:01 AM on April 3, 2020, and remains closed as of the date this amended complaint is filed.

242.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Seventy7 applied for a PPP loan.

243.   Seventy7submitted an application for a PPP loan through its lender in Miami, Florida.  Its lender is an approved SBA Lender.

244.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Seventy7's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Seventy7.

245.   Seventy7 is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

246.   However, Seventy7 reasonably believes that its Application will be rejected or fatally delayed due to the SOP and/or the Regulations.  Seventy7 has learned that numerous other similar businesses, which presented non-obscene female

performance dance entertainment of an "exotic," "topless" and/or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.  Specifically, Seventy7 has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).  Seventy7 reasonably fears its Application will suffer the same fate as the applications of these other businesses which have had their applications denied.

247.   Seventy7 also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore potentially rendering any later request for judicial relief to be moot.  The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until all funds are exhausted, and no further funds are currently available.  The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."  Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, Seventy7 reasonably fears either that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide

that Seventy7 is not eligible with no time for it to obtain relief while PPP funds remain.

248.   In the event that Seventy7 is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Seventy7 to engage in protected First Amendment activity; and the inability of Seventy7's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### Brookhurst Venture, LLC ("Brookhurst")

249.   Brookhurst is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Brookhurst is non-obscene and appeals to healthy human interests and desires.

250.   None of the live performances at Brookhurst are unlawful or obscene. Neither Brookhurst nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

251.   Brookhurst presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol License from the State of California

252.   Brookhurst is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Brookhurst has suffered significant business losses, but plans to reopen when legally permitted to do so.  Brookhurst has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

253.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Brookhurst applied for a PPP loan.

254.   Brookhurst submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

255.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Brookhurst's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Brookhurst.

256.   Brookhurst is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

257.   Brookhurst has been informed that its loan application was denied.  The lender's stated reason for the denial is that Brookhurst is a gentlemen's club.

Brookhurst understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via SBA 3245-AH34.

258.   In the event that Brookhurst is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Brookhurst to engage in protected First Amendment activity; and the inability of Brookhurst's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### City of Industry Hospitality Venture, Inc. ("Industry Venture")

259.   Industry Venture is a non-alcohol-serving, "juice bar," commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times fully nude. All of the entertainment provided by Venture Industry is non-obscene and appeals to healthy human interests and desires.

260.   None of the live performances at Industry Venture are unlawful or obscene.  Neither Industry Venture nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

261.   Industry Venture presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Health Permit by the City of Industry.

262.   Industry Venture is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Industry Venture has suffered significant business losses, but plans to reopen when legally permitted to do so.  Industry Venture has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

263.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Industry Venture applied for a PPP loan.

264.   Industry Venture submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

265.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Industry Venture's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Industry Venture.

266.   Industry Venture is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

267.   Industry Venture has been informed that its loan application was denied.   The lender's stated reason for the denial is that Industry Venture is a gentlemen's club.  Industry Venture understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

268.    In the event that Industry Venture is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Industry Venture to engage in protected First Amendment activity; and the inability of Industry Venture's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

***Farmdale Hospitality Services, Inc. ("Farmdale")***

269.  Farmdale  is  a  non-alcohol-serving,  "juice  bar,"  commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment  which  is  fully  clothed  and,  at  times  fully  nude.    All  of  the

entertainment provided by Farmdale is non-obscene and appeals to healthy human interests and desires.

270.   None of the live performances at Farmdale are unlawful or obscene. Neither Farmdale nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

271.   Farmdale presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to a Los Angeles Café Entertainment Permit.

272.   Farmdale is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Farmdale has suffered significant business losses, but plans to reopen when legally permitted to do so. Farmdale has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

273.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Farmdale applied for a PPP loan.

274.   Farmdale submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

71

275.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Farmdale's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Farmdale.

276.   Farmdale is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

277.   Farmdale has been informed that its loan application was denied.  The lender's stated reason for the denial is that Farmdale is a gentlemen's club.  Farmdale understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

278.    In the event that Farmdale is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Farmdale to engage in protected First Amendment activity; and the inability of Farmdale's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

*Inland Restaurant Venture I, Inc. ("Inland")*

279.   Inland is a non-alcohol-serving, "juice bar," commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment

which is fully clothed and, at times fully nude. All of the entertainment provided by Inland is non-obscene and appeals to healthy human interests and desires.

280. None of the live performances at Inland are unlawful or obscene. Neither Inland nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

281. Inland presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to a Los Angeles Café Entertainment Permit.

282. Inland is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Inland has suffered significant business losses, but plans to reopen when legally permitted to do so. Inland has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

283. In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Inland applied for a PPP loan.

284. Inland submitted an application for a PPP loan through its lender in Dallas, Texas. Its lender is an approved SBA Lender.

285.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Inland's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Inland.

286.   Inland is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

287.   Inland has been informed that its loan application was denied.  The lender's stated reason for the denial is that Inland is a gentlemen's club.  Inland understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

288.    In the event that Inland is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Inland to engage in protected First Amendment activity; and the inability of Inland's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

***Midnight Sun Enterprises, Inc. ("Midnight")***

289.   Midnight is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is

fully clothed and, at times topless. All of the entertainment provided by Midnight is non-obscene and appeals to healthy human interests and desires.

290. None of the live performances at Midnight are unlawful or obscene. Neither Midnight nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

291. Midnight presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol License from the State of California and Adult Cabaret License from the City of Torrence.

292. Midnight is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Midnight has suffered significant business losses, but plans to reopen when legally permitted to do so. Midnight has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

293. In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Midnight applied for a PPP loan.

294.   Midnight submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

295.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Midnight's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Midnight.

296.   Midnight is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

297.   Midnight has been informed that its loan application was denied.  The lender's stated reason for the denial is that Midnight is a gentlemen's club.  Midnight understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

298.    In the event that Midnight is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Midnight to engage in protected First Amendment activity; and the inability of Midnight's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

*Olympic Avenue Venture, Inc. ("Olympic")*

299.   Olympic is a non-alcohol-serving, "juice bar," commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times fully nude.   All of the entertainment provided by Olympic is non-obscene and appeals to healthy human interests and desires.

300.   None of the live performances at Olympic are unlawful or obscene. Neither Olympic nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

301.   Olympic presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to a Los Angeles Café Entertainment Permit.

302.   Olympic is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Olympic has suffered significant business losses, but plans to reopen when legally permitted to do so. Olympic has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

303.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Olympic applied for a PPP loan.

304.    Olympic submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

305.    Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Olympic's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Olympic.

306.    Olympic is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

307.    Olympic has been informed that its loan application was denied.  The lender's stated reason for the denial is that Olympic is a gentlemen's club.  Olympic understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

308.    In the event that Olympic is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Olympic to engage in protected

First Amendment activity; and the inability of Olympic's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**The Oxnard Hospitality Services, Inc. ("Oxnard")**

309.   Oxnard is a non-alcohol-serving, "juice bar," commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times fully nude.   All of the entertainment provided by Oxnard is non-obscene and appeals to healthy human interests and desires.

310.   None of the live performances at Oxnard are unlawful or obscene. Neither Oxnard nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

311.   Oxnard presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Adult Business License from the City of Oxnard.

312.   Oxnard is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Oxnard has suffered significant business losses, but plans to reopen when legally permitted to do so. Oxnard has been closed for

business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

313.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Oxnard applied for a PPP loan.

314.   Oxnard submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

315.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Oxnard's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Oxnard.

316.   Oxnard is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

317.   Oxnard has been informed that its loan application was denied.  The lender's stated reason for the denial is that Oxnard is a gentlemen's club.  Oxnard understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

318.    In the event that Oxnard is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the

80

permanent ruination of its business; the inability of Oxnard to engage in protected First Amendment activity; and the inability of Oxnard's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**Platinum SJ Enterprise ("SJ")**

319.   SJ is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times clothed with "pasties".  All of the entertainment provided by SJ is non-obscene and appeals to healthy human interests and desires.

320.   None of the live performances at SJ are unlawful or obscene.  Neither SJ nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

321.   SJ presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol License from the State of California and Entertainment Business Permit from the City of San Jose.

322.   SJ is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, SJ has suffered significant business losses, but plans to reopen when

legally permitted to do so.  SJ has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

323.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – SJ applied for a PPP loan.

324.    SJ submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

325.    Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), SJ's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by SJ.

326.    SJ is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

327.    SJ has been informed that its loan application was denied.  The lender's stated reason for the denial is that SJ is a gentlemen's club.  SJ understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

328.    In the event that SJ is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of SJ to engage in protected First Amendment activity; and the inability of SJ's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### Rouge Gentlemen's Club, Inc. ("Rouge")

329.    Rouge is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Rouge is non-obscene and appeals to healthy human interests and desires.

330.    None of the live performances at Rouge are unlawful or obscene. Neither Rouge nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

331.    Rouge presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Liquor License from the State of California and Café Entertainment Permit from the City of Los Angeles

332.    Rouge is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of

California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Rouge has suffered significant business losses, but plans to reopen when legally permitted to do so.  Rouge has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

333.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Rouge applied for a PPP loan.

334.   Rouge submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

335.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Rouge's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Rouge.

336.   Rouge is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

337.   Rouge has been informed that its loan application was denied.  The lender's stated reason for the denial is that Rouge is a gentlemen's club.  Rouge understands and interprets the reason given for the denial of its PPP loan to be that

its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

338.    In the event that Rouge is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Rouge to engage in protected First Amendment activity; and the inability of Rouge's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

***Washington Management, LLC ("Washington Mgmt")***

339.    Washington Mgmt is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Washington Mgmt is non-obscene and appeals to healthy human interests and desires.

340.    None of the live performances at Washington Mgmt are unlawful or obscene.  Neither Washington Mgmt nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

341.    Washington Mgmt presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol License from the State of California and Café Entertainment Permit.

342.    Washington Mgmt is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Washington Mgmt has suffered significant business losses, but plans to reopen when legally permitted to do so. Washington Mgmt has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

343.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Washington Mgmt applied for a PPP loan.

344.    Washington Mgmt submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

345.    Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Washington Mgmt's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Washington Mgmt.

346.   Washington Mgmt is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

347.   Washington Mgmt has been informed that its loan application was denied.  The lender's stated reason for the denial is that Washington Mgmt is a gentlemen's club.  Washington Mgmt understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via SBA 3245-AH34.

348.   In the event that Washington Mgmt is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Washington Mgmt to engage in protected First Amendment activity; and the inability of Washington Mgmt's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

***PNM Enterprises, Inc. ("PNM")***

349.   PNM is a non-alcohol-serving, "juice bar," commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment

which is fully clothed and, at times fully nude.  All of the entertainment provided by PNM is non-obscene and appeals to healthy human interests and desires.

350.   None of the live performances at PNM are unlawful or obscene. Neither PNM nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

351.   PNM presents lawful entertainment in conformity with its various licenses, permits, or government approvals.

352.   PNM is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, PNM has suffered significant business losses, but plans to reopen when legally permitted to do so.  PNM has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

353.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – PNM applied for a PPP loan.

354.   PNM submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

355.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), PNM's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by PNM.

356.   PNM is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

357.   PNM has been informed that its loan application was denied.   The lender's stated reason for the denial is that PNM is a gentlemen's club.   PNM understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

358.    In the event that PNM is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of PNM to engage in protected First Amendment activity; and the inability of PNM's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### *Rialto Pockets, Inc. ("Rialto")*

359.   Rialto is a non-alcohol-serving, "juice bar," commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment

89

which is fully clothed and, at times fully nude.  All of the entertainment provided by Rialto is non-obscene and appeals to healthy human interests and desires.

360.   None of the live performances at Rialto are unlawful or obscene. Neither Rialto nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

361.   Rialto presents lawful entertainment in conformity with its various licenses, permits, or government approvals.

362.   Rialto is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Rialto has suffered significant business losses, but plans to reopen when legally permitted to do so.  Rialto has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

363.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Rialto applied for a PPP loan.

364.   Rialto submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

365.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Rialto's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Rialto.

366.   Rialto is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

367.   Rialto has been informed that its loan application was denied.   The lender's stated reason for the denial is that Rialto is a gentlemen's club.   Rialto understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

368.    In the event that Rialto is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Rialto to engage in protected First Amendment activity; and the inability of Rialto's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### Santa Barbara Hospitality Services, Inc. ("Santa Barbara")

369.   Santa Barbara is a non-alcohol-serving, "juice bar," commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance

91

entertainment which is fully clothed and, at times fully nude. All of the entertainment provided by Santa Barbara is non-obscene and appeals to healthy human interests and desires.

370. None of the live performances at Santa Barbara are unlawful or obscene. Neither Santa Barbara nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

371. Santa Barbara presents lawful entertainment in conformity with its various licenses, permits, or government approvals.

372. Santa Barbara is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Santa Barbara has suffered significant business losses, but plans to reopen when legally permitted to do so. Santa Barbara has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

373. In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Santa Barbara applied for a PPP loan.

374. Santa Barbara submitted an application for a PPP loan through its lender in Dallas, Texas. Its lender is an approved SBA Lender.

375.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Santa Barbara's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Santa Barbara.

376.   Santa Barbara is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

377.   Santa Barbara has been informed that its loan application was denied. The lender's stated reason for the denial is that Santa Barbara is a gentlemen's club. Santa Barbara understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

378.    In the event that Santa Barbara is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Santa Barbara to engage in protected First Amendment activity; and the inability of Santa Barbara's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### Santa Maria Restaurant Enterprises, Inc. ("Santa Maria")

379.   Santa Maria is a non-alcohol-serving, "juice bar," commercial establishment open to the consenting adult public which is in the business of, has

presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times fully nude.   All of the entertainment provided by Santa Maria is non-obscene and appeals to healthy human interests and desires.

380.   None of the live performances at Santa Maria are unlawful or obscene. Neither Santa Maria nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

381.   Santa Maria presents lawful entertainment in conformity with its various licenses, permits, or government approvals.

382.   Santa Maria is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Santa Maria has suffered significant business losses, but plans to reopen when legally permitted to do so.  Santa Maria has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

383.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Santa Maria applied for a PPP loan.

384.   Santa Maria submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

385.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Santa Maria's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Santa Maria.

386.   Santa Maria is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

387.   Santa Maria has been informed that its loan application was denied. The lender's stated reason for the denial is that Santa Maria is a gentlemen's club. Santa Maria understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

388.    In the event that Santa Maria is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Santa Maria to engage in protected First Amendment activity; and the inability of Santa Maria's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### *The Spearmint Rhino Adult Superstore, Inc. ("Superstore")*

389.   Superstore is an adult novelty shop and commercial establishment open to the consenting adult public which is in the business of, has sold, and desires to continue to selling in the future, adult oriented products.  All of the items sold by Superstore is non-obscene and appeals to healthy human interests and desires.

390.   None of products sold at Superstore are unlawful or obscene. Superstore has never been charged, let alone convicted, of any crimes of obscenity.

391.   Superstore sells products in conformity with its various licenses, permits, or government approvals.

392.   Superstore is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Superstore has suffered significant business losses, but plans to reopen when legally permitted to do so.  Superstore has been closed for business since at least 12:01 AM on March 19, 2020, and remains closed as of the date this amended complaint is filed.

393.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Superstore applied for a PPP loan.

394.   Superstore submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

395.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Superstore's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Superstore.

396.   Superstore is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

397.   Superstore has been informed that its loan application was denied.  The lender's stated reason for the denial is that Superstore engages in the sale of products deemed violative of 13 C.F.R. § 120.110(p).  Superstore understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

398.    In the event that Superstore is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Superstore to sell lawful products.

*High Expectations Hospitality, LLC ("Expectations")*

399.   Expectations is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.   All of the entertainment provided by Expectations is non-obscene and appeals to healthy human interests and desires.

400.   None of the live performances at Expectations are unlawful or obscene. Neither Expectations nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

401.   Expectations presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Liquor Licenses issued by the City of Dallas, County, and State of Texas.

402.   Expectations is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Expectations has suffered significant business losses, but plans to reopen when legally permitted to do so.  Expectations has been closed for business since at least 12:01 AM on April 2, 2020, and remains closed as of the date this amended complaint is filed.

403.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Expectations applied for a PPP loan.

404.   Expectations submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

405.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Expectations's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Expectations.

406.   Expectations is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

407.   Expectations has been informed that its loan application was denied. The lender's stated reason for the denial is that Expectations is a gentlemen's club. Expectations understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

408.    In the event that Expectations is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Expectations to engage in protected First Amendment activity; and the inability of Expectations' staff,

entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**Kentucky Hospitality Venture, LLC ("Kentucky Hospitality")**

409.   Kentucky Hospitality is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Kentucky Hospitality is non-obscene and appeals to healthy human interests and desires.

410.   None of the live performances at Kentucky Hospitality are unlawful or obscene.   Neither Kentucky Hospitality nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

411.   Kentucky Hospitality presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol License from the State of Kentucky and County of Fayette and Adult Entertainment License from Lexington-Fayette County

412.   Kentucky Hospitality is currently shuttered as a result of the emergency "shelter-in-place" executive order, issued verbally on March 22 and codified on March 25th in Executive Order 2020-257 issued by the Governor of Kentucky as a

result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Kentucky Hospitality has suffered significant business losses, but plans to reopen when legally permitted to do so. Kentucky Hospitality has been closed for business since at least 12:01 AM on March 25, 2020, and remains closed as of the date this amended complaint is filed.

413.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Kentucky Hospitality applied for a PPP loan.

414.   Kentucky Hospitality submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

415.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Kentucky Hospitality's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Kentucky Hospitality.

416.   Kentucky Hospitality is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

417.   Kentucky Hospitality has been informed that its loan application was denied.  The lender's stated reason for the denial is that Kentucky Hospitality is a gentlemen's club.  Kentucky Hospitality understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R §

120.110(p), which is made applicable to the PPP provisions of the CARES Act via

SBA 3245-AH34.

418.    In the event that Kentucky Hospitality is unable to obtain a PPP loan it

may lack the staff and/or funds to reopen following the COVID-19 pandemic,

resulting in the permanent ruination of its business; the inability of Kentucky

Hospitality to engage in protected First Amendment activity; and the inability of

Kentucky Hospitality's staff, entertainers, and customers to continue engaging in or

viewing protected First Amendment activity.

**K-Kel, Inc. ("K-Kel")**

419.    K-Kel is an alcohol-serving commercial establishment open to the

consenting adult public which is in the business of, has presented, and desires to

continue to present in the future, female performance dance entertainment which is

fully clothed and, at times topless.  All of the entertainment provided by K-Kel is

non-obscene and appeals to healthy human interests and desires.

420.    None of the live performances at K-Kel are unlawful or obscene.

Neither K-Kel nor any of the entertainers who have performed on its premises have

ever been charged, let alone convicted, of any crimes of obscenity.

421.    K-Kel presents lawful entertainment in conformity with its various

licenses, permits, or government approvals, including but not limited to: Liquor

License, adult entertainment, and restaurant license issued by County of Clark in the State of Nevada.

422.   K-Kel is currently shuttered as a result of the emergency "shelter-in-place" executive order (Directive 010) issued by the Governor of Nevada as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, K-Kel has suffered significant business losses, but plans to reopen when legally permitted to do so.  K-Kel has been closed for business since at least 12:01 AM on March 16, 2020, and remains closed as of the date this amended complaint is filed.

423.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – K-Kel applied for a PPP loan.

424.   K-Kel submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

425.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), K-Kel's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by K-Kel.

426.   K-Kel is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

427.   K-Kel has been informed that its loan application was denied.  The lender's stated reason for the denial is that K-Kel is a gentlemen's club.  K-Kel understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

428.    In the event that K-Kel is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of K-Kel to engage in protected First Amendment activity; and the inability of K-Kel's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### L.C.M., LLC ("LCM")

429.   LCM is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed.  All of the entertainment provided by LCM is non-obscene and appeals to healthy human interests and desires.

430.   None of the live performances at LCM are unlawful or obscene.  Neither LCM nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

431.   LCM presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol License from Boise, Ada County, and the State of Idaho.

432.   LCM is currently shuttered as a result of the emergency "shelter-in-place" executive order (The Office of the Governor Proclamation) issued by the Governor of Idaho as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, LCM has suffered significant business losses, but plans to reopen when legally permitted to do so LCM has been closed for business since at least 12:01 AM on March 25, 2020, and remains closed as of the date this amended complaint is filed.

433.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – LCM applied for a PPP loan.

434.   LCM submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

435.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), LCM's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by LCM.

436.   LCM is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

437.   LCM has been informed that its loan application was denied.   The lender's stated reason for the denial is that LCM is a gentlemen's club.   LCM understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

*438.*   In the event that LCM is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of LCM to engage in protected First Amendment activity; and the inability of LCM's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**Nitelife, Inc. ("Nitelife")**

439.   Nitelife is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times fully nude.  All of the entertainment provided by Nitelife is non-obscene and appeals to healthy human interests and desires.

440.   None of the live performances at Nitelife are unlawful or obscene. Neither Nitelife nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

441.   Nitelife presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol and Alcohol Retailer licenses issued by the State of Minnesota and Liquor 2 A.M. Permit issued by the State of Minnesota.

442.   Nitelife is currently shuttered as a result of the emergency "shelter-in-place" executive order (Emergency Executive Order 20-20) issued by the Governor of Minnesota as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Nitelife has suffered significant business losses, but plans to reopen when legally permitted to do so Nitelife has been closed for business since at least 11:59 PM on March 27, 2020, and remains closed as of the date this amended complaint is filed.

443.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Nitelife applied for a PPP loan.

444.   Nitelife submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

445.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Nitelife's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Nitelife.

446.   Nitelife is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

447.   Nitelife has been informed that its loan application was denied.  The lender's stated reason for the denial was that Nitelife is a gentlemen's club.  Nitelife understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

448.   In the event that Nitelife is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Nitelife to engage in protected First Amendment activity; and the inability of Nitelife's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

*Penn Ave Hospitality, LLC ("Penn Ave")*

449.  Penn Ave is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is

108

fully clothed and, at times fully nude.  All of the entertainment provided by Penn Ave is non-obscene and appeals to healthy human interests and desires.

450.  None of the live performances at Penn Ave are unlawful or obscene. Neither Penn Ave nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

451.  Penn Ave presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol and Liquor Licenses issued by the State of Pennsylvania.

452.  Penn Ave is currently shuttered as a result of the emergency "shelter-in-place" executive order (Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home) issued by the Governor of Pennsylvania as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Penn Ave has suffered significant business losses, but plans to reopen when legally permitted to do so. Penn Ave has been closed for business since at least 8:00 PM on April 1, 2020, and remains closed as of the date this amended complaint is filed.

453.  In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Penn Ave applied for a PPP loan.

454.  Penn Ave submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

455.  Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Penn Ave's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Penn Ave.

456.  Penn Ave is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

457.  Penn Ave has been informed that its loan application was denied.  The lender's stated reason for the denial was that Penn Ave is a gentlemen's club.  Penn Ave understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

 In the event that Penn Ave is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Penn Ave to engage in protected First Amendment activity; and the inability of Penn Ave's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

***Sarie's Lounge, LLC ("Sarie's")***

458.    Sarie's is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times clothed with "pasties".  All of the entertainment provided by Sarie's is non-obscene and appeals to healthy human interests and desires.

459.    None of the live performances at Sarie's are unlawful or obscene. Neither Sarie's nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

460.    Sarie's presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Alcohol License from the State of California and Entertainment Business Permit from the City of San Jose.

461.    Sarie's is currently shuttered as a result of the emergency "shelter-in-place" Executive Department Proclamation of Disaster Emergency dated March 17, 2020 issued by the Governor of Iowa and continued by various further Declarations as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Sarie's has suffered significant business losses, but plans to reopen when legally permitted to do so.  Sarie's has been closed for business since at least 12:01 PM on March 17, 2020, and remains closed as of the date this amended complaint is filed.

111

462.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Sarie's applied for a PPP loan.

463.   Sarie's submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

464.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Sarie's' lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Sarie's.

465.   Sarie's is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

466.   Sarie's has been informed that its loan application was denied.  The lender's stated reason for the denial was that Sarie's is a gentlemen's club.  Sarie's understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

467.   In the event that Sarie's is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Sarie's to engage in protected

First Amendment activity; and the inability of Sarie's' staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### World Class Ventures, LLC ("World Class")

468.    World Class is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times clothed with "pasties".  All of the entertainment provided by World Class is non-obscene and appeals to healthy human interests and desires.

469.    None of the live performances at World Class are unlawful or obscene. Neither World Class nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

470.    World Class presents lawful entertainment in conformity with its various licenses, permits, or government approvals.

471.    World Class is currently shuttered as a result of the emergency "shelter-in-place" Executive Department Proclamation of Disaster Emergency dated March 17, 2020 issued by the Governor of Iowa and continued by various further Declarations as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, World Class has suffered significant business losses, but plans to reopen when legally permitted to do so.  World Class has been closed

for business since at least 12:01 PM on March 17, 2020, and remains closed as of the date this amended complaint is filed.

472.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – World Class applied for a PPP loan.

473.   World Class submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

474.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), World Class's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by World Class.

475.   World Class is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

476.   World Class has been informed that its loan application was denied. The lender's stated reason for the denial was that World Class operates or derives income from the operation of gentlemen's clubs.  World Class understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

*477.* In the event that World Class is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of World Class to engage in protected First Amendment activity; and the inability of World Class's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### W.P.B. Hospitality, LLC ("WPB")

478. WPB is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times fully nude. All of the entertainment provided by WPB is non-obscene and appeals to healthy human interests and desires.

479. None of the live performances at WPB are unlawful or obscene. Neither WPB nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

480. WPB presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to: Adult Entertainment License and Live Entertainment permits issued by West Palm Beach and Liquor License issued by the State of Florida.

481.    WPB is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order 20-91) issued by the Governor of Florida as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, WPB has suffered significant business losses, but plans to reopen when legally permitted to do so.  WPB has been closed for business since at least 12:01 AM on April 3, 2020, and remains closed as of the date this amended complaint is filed.

482.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – WPB applied for a PPP loan.

483.    WPB submitted an application for a PPP loan through its lender in Dallas, Texas.  Its lender is an approved SBA Lender.

484.    Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), WPB's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by WPB.

485.    WPB is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

486.    WPB has been informed that its loan application was denied.  The lender's stated reason for the denial was that WPB operates or derives income from

116

the operation of gentlemen's clubs.  WPB understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via SBA 3245-AH34.

487.    In the event that WPB is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of WPB to engage in protected First Amendment activity; and the inability of WPB's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### The Spearmint Rhino Companies Worldwide, Inc. ("Worldwide")

488.    Worldwide is an intellectual property licensing company that provides intellectual property licensing.

489.    Worldwide provides services to a number of establishments that provide female performance dance entertainment, including all Spearmint Rhino Gentlemen's Clubs, California Girls, Dames N' Games, and Blue Zebra establishments.

490.    None of the live performances at the businesses serviced by Worldwide are unlawful or obscene.

491.   A number of the companies serviced by Worldwide have shuttered as a result of the emergency "shelter-in-place" executive orders and Declarations pled earlier and hereby incorporated by reference herein, by various state Governors as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closures, Worldwide has suffered significant business losses, but plans to return to full operations when its clients are able to do so.

492.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Worldwide applied for a PPP loan.

493.   Worldwide submitted an application for a PPP loan through its lender in Texas.  Its lender is an approved SBA Lender.

494.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Worldwide's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Worldwide.

495.   Worldwide is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

118

496.   Worldwide has been informed that its loan application was denied.  The lender's stated reason for the denial was that Worldwide operates or derives income from the operation of gentlemen's clubs. Worldwide understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

497.   In the event that Worldwide is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business, all for being regarded as or for receiving income from businesses that engage in First Amendment activity.

### *Spearmint Rhino Consulting Worldwide, Inc. ("Consulting")*

498.   Consulting is a business services company that provides a range of services to businesses including, *inter alia*: marketing and consulting.

499.   Consulting provides services to a number of establishments that provide female performance dance entertainment, including all Spearmint Rhino Gentlemen's Clubs, California Girls, Dames N' Games, and Blue Zebra establishments.

500.   None of the live performances at the businesses serviced by Consulting are unlawful or obscene.

119

501.   A number of the companies serviced by Consulting have shuttered as a result of the emergency "shelter-in-place" executive orders and Declarations pled earlier and hereby incorporated by reference herein, by various state Governors as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closures, Consulting has suffered significant business losses, but plans to return to full operations when its clients are able to do so.

502.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Consulting applied for a PPP loan.

503.   Consulting submitted an application for a PPP loan through its lender in Texas.  Its lender is an approved SBA Lender.

504.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Consulting's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Worldwide.

505.   Consulting is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

506.    Consulting has been informed that its loan application was denied.  The lender's stated reason for the denial was that Consulting operates or derives income from the operation of gentlemen's clubs. Consulting understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

507.    In the event that Consulting is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business, all for being regarded as or for receiving income from businesses that engage in First Amendment activity.

### V.C. Lauderdale, Inc. ("VC")

508.    VC is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times nude.  All of the entertainment provided by VC is non-obscene and appeals to healthy human interests and desires.

509.    None of the live performances at VC are unlawful or obscene.  Neither VC nor any of the entertainers who have performed on its premises have *ever* been charged, let alone convicted, of any crimes of obscenity.

510.   VC presents lawful entertainment in conformity with its various licenses, permits, or government approvals, including but not limited to:

      a.   A 4-COP license to sell alcohol for consumption on the premises issued by the State of Florida Division of Alcoholic Beverages and Tobacco;

511.   VC is currently shuttered is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order 20-91) issued by the Governor of Florida as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, VC has suffered significant business losses, but plans to reopen when legally permitted to do so.   VC has been closed for business since at least 12:01 AM on April 3, 2020, and remains closed as of the date this complaint is filed.

512.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – VC applied for a PPP loan.

513.   On or about April 8, 2020, VC submitted an application for a PPP loan through its lender in Fort Lauderdale, Florida.  Its lender is an approved SBA Lender.

122

514.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), VC's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by VC.

515.   VC is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

516.   However, VC reasonably believes that its Application will be rejected or fatally delayed due to the SOP and/or the Regulations.  VC has learned that numerous other similar businesses, which presented non-obscene female performance dance entertainment of an "exotic," "topless" and/or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.  Specifically, VC has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).  VC reasonably fears its Application will suffer the same fate as the applications of these other businesses which have had their applications denied.

517.  VC also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore

potentially rendering any later request for judicial relief to be moot. The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until all funds are exhausted, and no further funds are currently available. The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility." Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, VC reasonably fears either that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that VC is not eligible with no time for it to obtain relief while PPP funds remain.

518.   In the event that VC is unable to obtain a PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of VC to engage in protected First Amendment activity; and the inability of VC's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**Kimmico, Inc. (Kimmico")**

519.   Kimmico is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is

fully clothed and, at times, nude.  All of the entertainment provided by Kimmico is non-obscene and appeals to healthy human interests and desires.

520.   None of the live performances at Kimmico are unlawful or obscene. Neither Kimmico nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

521.   Kimmico presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to:

     a.    Liquor License issued by the City of Baltimore, Maryland; and

     b.    Adult Entertainment license issued by the City of Baltimore, Maryland.

522.   Kimmico is currently shuttered as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Kimmico has suffered significant business losses, but plans to reopen when legally permitted to do so. Kimmico has been closed for business since at least 8:00 pm on March 30, 2020, and remains closed as of the date of this complaint is filed.

523.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Kimmico sought out to apply for a PPP loan.

524.   On or about April 3 and again on April 7, 2020, Kimmico submitted an application for a PPP loan through its lender in Annapolis.  Its lender is an approved SBA Lender.

525.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Kimmico's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Kimmico.

526.   Kimmico is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

527.   Kimmico has been informed that its loan application was denied.  The reason for the denial is the business was declared ineligible.  Kimmico understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via SBA 3245-AH34.

528.   In the event that Kimmico is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Kimmico to engaged in protected First Amendment activity; and the inability to Kimmico's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

*Ferny Properties, LLC ("Ferny")*

529.   Ferny is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Ferny is non-obscene and appeals to healthy human interests and desires.

530.   None of the live performances at Ferny are unlawful or obscene. Neither Ferny nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

531.   Ferny presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to:

      a.     North Dakota alcohol license;

      b.     Fargo alcohol license; and

      c.     Fargo food-service license.

532.   Ferny was shuttered as a result of the COVID-19 pandemic. As a direct and proximate result of an executive order issued by the Governor of North Dakota and a stay-at-home directive issued by the City of Fargo, Ferny has suffered

significant business losses. Ferney was shuttered from at least March 20, 2020 through April 30, 2020.

533.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Ferny sought out to apply for a PPP loan.

534.   On or about April 3, 2020, Ferny submitted an application for a PPP loan through its lender in Fargo, North Dakotoa.  Its lender is an approved SBA Lender.

535.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Ferny's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Ferny.

536.   Ferny is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

537.   Ferny has been informed that its loan application was rejected.  The reason for the denial, is that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

538.   A true and accurate copy of the correspondence Ferny received from its lender, with redactions to keep the identity of the lender out of the public record, it attached hereto as **Exhibit J**.

539.   In the event that Ferny is unable to obtain PPP loan it may lack the staff and/or funds to continue operations following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Ferny to engaged in protected First Amendment activity; and the inability to Ferny's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### *Heritage Management Services, Inc. ("Heritage Management")*

540.   Heritage Management is a commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times nude.   All of the entertainment provided by Heritage Management is non-obscene and appeals to healthy human interests and desires.

541.   None of the live performances at Heritage Management are unlawful or obscene.   Neither Heritage Management nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

542.   Heritage Management presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to its place of public assembly permit issued by the City of San Francisco.

543.   Heritage Management is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order N-33-30) issued by the Governor of California as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Heritage Management has suffered significant business losses, but plans to reopen when legally permitted to do so. Heritage Management has been closed for business since at least 12:01am on March 19, 2020, and remains closed as of the date this amended complaint is filed.

544.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Heritage Management sought out to apply for a PPP loan.

545.   On or about April 8, 2020, Heritage Management submitted an application for a PPP loan through its lender in Irvine, California.  Its lender is an approved SBA Lender.

546.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Heritage Management's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Heritage Management.

130

547.   Heritage Management is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

548.   However, Heritage Management reasonably believes that its Application will be rejected or fatally delayed due to the SOP and/or the Regulations. Heritage Management has learned that numerous other similar businesses, which presented non-obscene female performance dance entertainment of an "exotic," "topless" and/or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.  Specifically, Heritage Management has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).  Heritage Management reasonably fears its Application will suffer the same fate as the applications of these other businesses which have had their applications denied.

549.   Heritage Management also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore potentially rendering any later request for judicial relief to be moot.  The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until

all funds are exhausted, and no further funds are currently available.  The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."  Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, Heritage Management reasonably fears either that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that DV is not eligible with no time for it to obtain relief while PPP funds remain.

550.   In the event that Heritage Management is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Heritage Management to engage in protected First Amendment activity; and the inability to Heritage Management's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**MAG Entertainment, LLC ("MAG Entertainment")**

551.   MAG Entertainment is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by

MAG Entertainment is non-obscene and appeals to healthy human interests and desires.

552.    None of the live performances at MAG Entertainment are unlawful or obscene.    Neither MAG Entertainment nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

553.    MAG Entertainment presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to: a liquor license issued by the New Jersey Division of Alcoholic Beverage Control.

554.    MAG Entertainment is currently shuttered as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, MAG Entertainment has suffered significant business losses, but plans to reopen when legally permitted to do so.    MAG Entertainment has been closed for business since at least March 24, 2020, and remains closed as of the date of this complaint is filed.

555.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – MAG Entertainment sought out to apply for a PPP loan.

556.   MAG Entertainment has made preparations to file an application for a PPP loan through its lender in Galloway Township, New Jersey.  Its lender is an approved SBA Lender.

557.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), MAG Entertainment's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by MAG Entertainment.

558.   MAG Entertainment is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

559.   Prior to submitting its application, MAG Entertainment's lender informed its principles that pending PPP loan application for similar businesses would be denied due to the business type.  Thus, MAG Entertainment stopped short of formally submitting an application to its lender as its principles had done for slimier businesses.  MAG Entertainment understands and interprets the reason given by its lender for it being ineligible for a PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

560.   In the event that MAG Entertainment is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic,

resulting in the permanent ruination of its business; the inability of MAG Entertainment to engaged in protected First Amendment activity; and the inability to MAG Entertainment staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### *East Coast Restaurant & Nightclubs, LLC ("East Coast")*

561.  East Coast is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times in pasties and g-string.  All of the entertainment provided by East Coast is non-obscene and appeals to healthy human interests and desires.

562.  None of the live performances at East Coast are unlawful or obscene. Neither East Coast nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

563.  East Coast presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to:

      a.     Live Entertainment Permit;

      b.     Liquor, Beer, and Wine License; and

      c.     Food service permit.

135

564.    East Coast is currently shuttered as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, East Coast has suffered significant business losses, but plans to reopen when legally permitted to do so.   East Coast has been closed for business since at least 11:59 pm on March 27, 2020, and remains closed as of the date of this complaint is filed.

565.    In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – East Coast sought out to apply for a PPP loan.

566.    East Coast attempted to submit an application for a PPP loan through its lender in New York, New York.  Its lender is an approved SBA Lender.

567.    Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), East Coast lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by East Coast.

568.    East Coast is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

569.    East Coast's lender refused to take the application for a PPP loan.  East Coast understands and interprets the reason given for the rejection of its PPP loan

136

application to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

570.   In the event that East Coast is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of East Coast to engaged in protected First Amendment activity; and the inability to East Coast's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

***Oasis On Essington LTD ("Oasis")***

571.   Oasis is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by Oasis is non-obscene and appeals to healthy human interests and desires.

572.   None of the live performances at Oasis are unlawful or obscene. Neither Oasis nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

573.   Oasis presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to:

    a.     Amusement Licenses issues by the City of Philadelphia;

    b.     Liquor License issued by the Commonwealth of Pennsylvania; and

    c.     Food Preparing and Serving License issued by the City of Philadelphia.

574.   Oasis is currently shuttered as a result of the emergency "shelter-in-place" executive order (Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home) issued by the Governor of Pennsylvania as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Oasis has suffered significant business losses, but plans to reopen when legally permitted to do so.  Oasis has been closed for business since at least 8:00 PM on April 1, 2020, and remains closed as of the date this amended complaint is filed.

575.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Oasis sought out to apply for a PPP loan.

576.   Oasis has made preparations to file an application for a PPP loan through its lender in Galloway Township, New Jersey.  Its lender is an approved SBA Lender.

577.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Oasis's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Oasis.

578.   Oasis is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

579.   Prior to submitting its application, Oasis's lender informed its principles that pending PPP loan application for similar businesses would be denied due to the business type.  Thus, Oasis stopped short of formally submitting an application to its lender as its principles had done for slimier businesses.  Oasis understands and interprets the reason given by its lender for it being ineligible for a PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

580.   In the event that Oasis is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Oasis to engaged in protected

First Amendment activity; and the inability to Oasis staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### *Vonch, LLC ("Vonch")*

581.   Vonch is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times nude.  All of the entertainment provided by Vonch is non-obscene and appeals to healthy human interests and desires.

582.   None of the live performances at Vonch are unlawful or obscene. Neither Vonch nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

583.   Vonch presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to:

    a.   Illinois State Liquor License;

    b.   Village of Bridgeview Liquor License;

    c.   Village of Bridgeview Business License; and

    d.   Village of Bridgeview Restaurant License.

584.   Vonch is currently shuttered as a result of the emergency "shelter-in-place" executive order (Emergency Executive Order 2020-10) issued by the Governor of Illinois as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, [Corporate Name here] has suffered significant business losses, but plans to reopen when legally permitted to do so. Vonch has been closed for business since at least 5:00pm on March 21, 2020, and remains closed as of the date this amended complaint is filed.

585.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Vonch sought out to apply for a PPP loan.

586.   On or about April 15, 2020, Vonch submitted an application for a PPP loan through its lender in Bridgeview, Illinois.  Its lender is an approved SBA Lender.

587.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Vonch's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Vonch.

588.   Vonch is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

589.   However, Vonch reasonably believes that its Application will be rejected or fatally delayed due to the SOP and/or the Regulations.  Vonch has learned that numerous other similar businesses, which presented non-obscene female performance dance entertainment of an "exotic," "topless" and/or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, or derailed, on their bank's belief that the business is disqualified by the Regulations and/or the SOP.  Specifically, Vonch has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).  Vonch reasonably fears its Application will suffer the same fate as the applications of these other businesses which have had their applications denied.

590.   Vonch also fears that the Regulations and the SOP will cause its Application to be delayed until all PPP loan funds are exhausted; therefore potentially rendering any later request for judicial relief to be moot.  The funds allocated for PPP loans are to be extended on a first-come, first-served, basis until all funds are exhausted, and no further funds are currently available.  The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."  Given the pressures and workload placed on the SBA by the CARES

Act and the COVID-19 pandemic, Vonch reasonably fears either that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that DV is not eligible with no time for it to obtain relief while PPP funds remain.

591.   In the event that Vonch is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Vonch to engage in protected First Amendment activity; and the inability to Vonch's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### Club Cabaret, Inc. ("Club Cabaret")

592.   Club Cabaret is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times nude.  All of the entertainment provided by Club Cabaret is non-obscene and appeals to healthy human interests and desires.

593.   None of the live performances at Club Cabaret are unlawful or obscene. Neither Club Cabaret nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

594.   Club Cabaret presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to:

      a.     State liquor license;

      b.     Municipal liquor license;

      c.     Municipal adult business permit; and

      d.     Food service license.

595.   Club Cabaret is currently shuttered as a result of the emergency "shelter-in-place" executive order (Emergency Executive Order 2020-10) issued by the Governor of Illinois as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Club Cabaret has suffered significant business losses, but plans to reopen when legally permitted to do so.  Club Cabaret has been closed for business since at least 5:00pm on March 21, 2020, and remains closed as of the date this amended complaint is filed.

596.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Club Cabaret sought out to apply for a PPP loan.

597.   On or about April 27, 2020, Club Cabaret submitted an application for a PPP loan through its lender in Pekin, Illinois.  Its lender is an approved SBA Lender.

598.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Club Cabaret's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Club Cabaret.

599.   Club Cabaret is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

600.   Club Cabaret has been informed that its loan application was denied. The reason for the denial was that Club Cabaret's business was on the list of excluded business types.  Club Cabaret understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via SBA 3245-AH34.

601.   In the event that Club Cabaret is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Club Cabaret to engaged in protected First Amendment activity; and the inability to Club Cabaret's staff,

entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

**King Bee, Inc. ("King Bee")**

602.   King Bee is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times topless.  All of the entertainment provided by King Bee is non-obscene and appeals to healthy human interests and desires.

603.   None of the live performances at King Bee are unlawful or obscene. Neither King Bee nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

604.   King Bee presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to: a Mixed Beverage License issued by the Texas Alcoholic Beverage Commission with associated permits issued by the City of El Paso, Texas.

605.   King Bee is currently shuttered as a result of the emergency "shelter-in-place" executive order (Executive Order No. GA-14) issued by the Governor of Texas as a result of the COVID-19 pandemic. As a direct and proximate result of

such state-ordered closure, King Bee has suffered significant business losses, but plans to reopen when legally permitted to do so.  King Bee has been closed for business since at least 12:01am on April 2, 2020, and remains closed as of the date this amended complaint is filed.

606.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – King Bee sought out to apply for a PPP loan.

607.   On or about April 10, 2020, King Bee submitted an application for a PPP loan through its lender in El Paso, Texas.  Its lender is an approved SBA Lender.

608.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), King Bee's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by King Bee.

609.   King Bee is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

610.   King Bee has been informed that its loan application was rejected.  The reason for the denial, was that adult businesses are not eligible for PPP loans.  King Bee understands and interprets the reason given for the denial of its PPP loan to be

that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via SBA 3245-AH34.

611.   In the event that King Bee is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of King Bee to engaged in protected First Amendment activity; and the inability to King Bee's staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

### Peoria Speakeasy, Inc. ("Peoria Speakeasy")

612.   Peoria Speakeasy is an alcohol-serving commercial establishment open to the consenting adult public which is in the business of, has presented, and desires to continue to present in the future, female performance dance entertainment which is fully clothed and, at times nude.  All of the entertainment provided by Peoria Speakeasy is non-obscene and appeals to healthy human interests and desires.

613.   None of the live performances at Peoria Speakeasy are unlawful or obscene.  Neither Peoria Speakeasy nor any of the entertainers who have performed on its premises have ever been charged, let alone convicted, of any crimes of obscenity.

614.   Peoria Speakeasy presents lawful entertainment in conformity with various its licenses, permits, or government approvals, including but not limited to:

      a.   State Liquor License;

      b.   Municipal Liquor License;

      c.   Food and Health License; and

      d.   Adult Use License.

615.   Peoria Speakeasy is currently shuttered as a result of the emergency "shelter-in-place" executive order (Emergency Executive Order 2020-10) issued by the Governor of Illinois as a result of the COVID-19 pandemic. As a direct and proximate result of such state-ordered closure, Peoria Speakeasy has suffered significant business losses, but plans to reopen when legally permitted to do so. Peoria Speakeasy has been closed for business since at least 5:00pm on March 21, 2020, and remains closed as of the date this amended complaint is filed.

616.   In order to mitigate its business losses and to provide monetary relief to its employees – since at least 75% of PPP loans are to be used for employee wages and salaries – Peoria Speakeasy sought out to apply for a PPP loan.

617.   Peoria Speakeasy's principles attended a webinar on PPP loans and Peoria Speakeasy  sought to submit an application for a PPP loan through its lender in Peoria, Illinois.  Its lender is an approved SBA Lender.

618.   Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Peoria Speakeasy's lender is and will operate as a delegate of the SBA in the processing and approval or disapproval of the PPP loan sought by Peoria Speakeasy.

619.   Peoria Speakeasy is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

620.   However, Peoria Speakeasy's lender informed it that the lender would not accept an application from Peoria Speakeasy due to its business type.  Peoria Speakeasy understands and interprets the reason given for the denial of its PPP loan to be that its business is excluded by 13 C.F.R § 120.110(p), which is made applicable to the PPP provisions of the CARES Act via  SBA 3245-AH34.

621.   In the event that Peoria Speakeasy is unable to obtain PPP loan it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its business; the inability of Peoria Speakeasy to engaged  in  protected  First  Amendment  activity;  and  the  inability  to  Peoria

Speakeasy staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

## *All Plaintiffs*

622.   DV, Benelux, BDS, DB, Millennium, T&N, Burch, JCB, MAG Enterprises, 2740 Corporation, MAG Pitt, Filosadelfia, Polmour, Stone Park, Seventy7, Brookhurst, Industry Venture, Farmdale, Inland, Midnight, Olympic, Oxnard, SJ, Rouge, Washington Mgmt, PNM, Rialto, Santa Barbara, Santa Maria, Superstore, Expectations, Kentucky Hospitality, K-Kel, LCM, Nitelife, Penn Ave, Sarie's, World Class, WPB, Worldwide, Consulting, VC, Kimmico, Ferny, Heritage Management, MAG Entertainment, East Coast, Oasis, Vonch, Club Cabaret, King Bee, and Peoria Speakeasy are collectively referred to herein as "Plaintiffs."

623.   Plaintiffs are aware that in some instances similar businesses were initially granted preliminary approval for PPL's, only to have funding later, and very recently, denied.

624.   Pursuant to the PPP Act, if loan proceeds are used for specified purposes, the loan can ultimately be forgiven by the SBA. The purpose of such loan forgiveness is to assist small businesses in being able to financially weather the significant drop in trade and income that is anticipated, as a result of the lasting impact of the coronavirus, even when the economy "reopens" in some limited form.

625.   Upon information and belief, the SBA has in some instances indicated to lending banks that while PPL applications for adult businesses may initially be granted, it will later use the Regulations and SOP as bases to decline loan forgiveness.  Like all other affected businesses, the Plaintiffs need loan forgiveness in order to be able to financially survive the continuing impact of the coronavirus even after the economy begins to "reopen," even in a limited fashion.  In fact, Plaintiffs are aware of at least one other similar business that declined to even apply for a PPL because of the possibility that its loan would not in fact be forgiven, with the consequently concern of then being unable to pay back a large loan under business circumstances that will be impacted by the coronavirus for an indeterminate period of time.

626.   As more specifically alleged above, a number of the Plaintiffs, which are otherwise eligible for PPL's but for the provisions of the Regulations and the SOP, have already had their PPL applications denied by the SBA.  Without immediate injunctive relief, they run the risk of being completely excluded from PPP Act benefits where the funds are statutorily limited, where the loans are to be distributed on a "first-come, first-served" basis, and where the aggregate available PPL funds may be exhausted before this Court can fully litigate Plaintiffs' claims.

627. While Plaintiffs identify the locations of where their PPP loan applications were submitted, they do not identify here the identities of the lending banks at issue because of legitimate concerns that they will be retaliated against for participating in this action. In particular, the Department of Justice ("DOJ") had a long-established antipathy towards the adult entertainment industry, which is exemplified by its application of a program known as "Operation Chokepoint" to many adult businesses. Through the Chokepoint program the DOJ intentionally pressured depository banks to terminate their accounts with adult businesses -- many of which had existed for years and even decades -- including those with many of the Plaintiffs here. This resulted in adult entertainment establishments, including many of the Plaintiffs here, having their bank accounts (including but not limited to their payroll accounts) cancelled for no reason whatsoever with little to no prior notice. This, in turn, has caused significant business disruption and a situation where many adult businesses, again including many of the Plaintiffs here, have found it difficult, and at times and in certain places virtually impossible, to obtain a bank willing to carry their accounts so that they can lawfully conduct their business and engage in commerce.

628. The Regulations and SOP have also resulted in the inability of some businesses to apply for PPL's because of a lack of prior lending experience with the

SBA approved lending bank.  Certain banks are taking the position that they will not even accept PPP loan applications unless the applicant has a prior lending experience with the bank.  Yet, a number of adult businesses, as a result of the prior application of the Regulations and SOP to general SBA lending activities, previously found it impossible to obtain loans even from banks where they had historically maintained their business accounts.  This lack of previous loan history, which has been caused in part as a direct result of the application of the Regulations and SOP to general SBA loan matters, is now creating a further impediment to various businesses that find themselves unable to even apply for PPL's – even at banks where they have long-maintained their business accounts.

629.   Other businesses have been negatively affected by the utilization of the Regulations and SOP upon PPL applications and seek to be added as plaintiffs to this action.  Plaintiffs' counsel has been required, however, to "close" the addition of other businesses as plaintiffs in order to freeze the pleadings and accomodate the emergency relief as prayed for here.  It is presently intended that those other businesses will be added as additional plaintiffs at a later date.

630.   As set forth more fully below, the Regulations and SOP are invalid and unenforceable for numerous reasons under administrative law and the First and Fifth

Amendments to the United States Constitution.  The Defendants. position that the Regulations and SOP are valid and may be enforced is not substantially justified.

## COUNT I – THE REGULATIONS AND SOP VIOLATE THE FIRST AMENDMENT

631.   Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

632.   In asserting their First Amendment challenges to the Regulations and SOP, Plaintiff asserts not only their own rights but also the rights of their employees, and the entertainers who perform on its premises.

633.   The SBA and its Administrator have taken various positions as to the meaning of the Regulations, including but not limited to that they exclude from PPP eligibility businesses which present entertainment that is "erotic."

634.   The Regulations and the SOP violate and are contrary to the First Amendment of the United States Constitution, on their face and as applied to Plaintiff, for numerous and various reasons including but not limited to:

a.   They are impermissible content-based restrictions on speech and expression that cannot pass muster under strict scrutiny;

b.   They are impermissible content-neutral restrictions and expression that cannot pass muster under intermediate scrutiny;

c.      They fail to conform to the constitutional standards regarding obscenity;

d.      They violate the doctrine of unconstitutional conditions;

e.      They are unconstitutionally vague under the vagueness standards for matters impacting speech and expression; and

f.      They are substantially overbroad in relation to their legitimate sweep.

635.   As a direct and proximate result of the unconstitutional aspects of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs and their interests, Plaintiffs, their employees, and the entertainers who perform on Plaintiffs' premises have suffered and will continue to suffer irreparable injuries, including but not limited to financial ruin, business ruination, and the inability of present protected First Amendment protected entertainment.

## COUNT II – THE REGULATIONS AND SOP VIOLATE THE FIFTH AMENDMENT

636.   Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

637.   The Regulations and the SOP violate and are contrary to the Fifth Amendment of the United States Constitution, on their face and as applied to Plaintiff, for numerous and various reasons including but not limited to:

a.   They treat establishments presenting certain forms of performance dance entertainment, such as Plaintiff, differently from establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

b.   They treat workers at establishments presenting certain forms of performance dance entertainment, such as Plaintiff, differently from workers at establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

c.   They violate Plaintiffs' rights and thos of theirs employees, and the entertainers' who perform on their premises under the occupational liberty component of the Fifth Amendment.

d.   They are impermissibly vague,

157

638.   As a direct and proximate result of the unconstitutional aspects of the Regulations and SOPS and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs and their interests, Plaintiffs, their employees, and the entertainers who perform on Plaintiffs premises have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin, business ruination, and the violation of the rights protected by the Fifth Amendment of the United States Constitution.

## <u>COUNT III – THE INVALIDITY OF THE REGULATIONS AND SOP</u>

639.   Plaintiff incorporates herein by reference each and every paragraph above as though fully set forth herein.

640.   Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including these Plaintiffs, the SBA and its Administrator lacked authority to promulgate regulations with restricted or otherwise 'clarified' what businesses were eligible for PPP Loans.

641.   The Regulations and the SOP fail to serve any legitimate regulatory purpose for the SBA or its Administrator as to the PPP provision of the CARES Act or otherwise.

642.   The SBA or its Administrator failed to articulate a sufficient regulatory purpose for promulgating the Regulations or the SOP, either in general or specifically as to the PPP provisions of the CARES Act.

643.   As a direct and proximate result of the invalid portions of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs and their interests, Plaintiffs, their employees, and the entertainers who perform on Plaintiffs' premises have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin and business ruination.

## **PRAYER FOR RELIEF**

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests this Honorable Court:

A)   Issue orders granting a Temporary Restraining Order, Preliminary, and Permanent Injunction enjoining the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 120.110(p) and SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) in regard to loan applications made pursuant to the Payroll Protection Program of the CARES Act.   As part of those orders, Plaintiffs further request this Honorable Court to:

1)   Order the Defendants, as well as their employees, agent and representatives, to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue utilizing 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) in their Payroll

159

Protection Program loan applications, and as criteria for determining Payroll Protection Program loan application eligibility, and to fully process all Payroll Protection Program loan applications without reference to such regulations and procedures;

2)   Order the Defendants, as well as their employees, agent and representatives, including their lending banks, to grant all Payroll Protection Program loan applications of the Plaintiffs if they otherwise qualify for such loans if not for the provisions of 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15);

3)   Order the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, to restore Plaintiffs to their place in the application queue as they were at the time of application in the event that their application has already been formally denied, derailed, or paused because of the provisions of 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15);

B)   Enter an award of attorneys' fees and costs against the Defendants and in favor of the Plaintiff pursuant to 28 U.S.C. § 2412 and otherwise; and

C)   Enter such other and further relief as this Court may find to be warranted in these circumstances.

160

Respectfully Submitted:

Dated: May 22, 2020

        _____/s/ Matthew J. Hoffer_____

BRADLEY J. SHAFER (MI P36604)
Brad@BradShaferLaw.com
MATTHEW J. HOFFER (MI P70495)
Matt@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
(517) 886-6560
*Counsel for All Plaintiffs*

Gary S. Edinger*
GSEdinger12@gmail.com
**BEJAMIN, AARONSON, EDINGER &
   PATANZO, P.A.**
305 N.E. 1st Street
Gainesville, Florida  32601
(352) 338-4440
*Co-counsel for Plaintiffs JCB of Gainesville,
Inc. and VC Lauderdale*

Peter E. Garrell*
PGarrell@FortisLaw.com
**FORTIS, LLP**
650 Town Center Drive, Suite 1530
Costa Mesa, California  92626
(714)795-2363
*Co-Counsel for Plaintiffs Brookhurst Venture, LLC; City of Industry Hospitality
Venture, Inc.; Farmdale Hospitality Services, Inc.; Inland Restaurant Venture I,
Inc.; Midnight Sun Enterprises, Inc.; Olympic Avenue Venture, Inc.; The Oxnard
Hospitality Services, Inc.; Platinum SJ Enterprise; Rouge Gentlemen's Club, Inc.;
Washington Management, LLC; PNM Enterprises, Inc.; Rialto Pockets, Inc.; Santa
Barbara Hospitality Services, Inc.; Santa Maria Restaurant Enterprises, Inc.; The
Spearmint Rhino Adult Superstore, Inc.; High Expectations Hospitality, LLC;
Kentucky Hospitality Venture, LLC; K-Kel, Inc.; L.C.M., LLC; Nitelife, Inc.; Penn
Ave Hospitality, LLC; Sarie's Lounge, LLC; World Class Ventures, LLC; W.P.B.*

161

*Hospitality, LLC; The Spearmint Rhino Companies Worldwide, Inc.; and Spearmint Rhino Consulting Worldwide, Inc.*

*\*Admitted pro hac vice*

## VERIFICATION OF SECOND AMENDED COMPLAINT AS TO:
## MAG Enterprises, Inc.; 2740 Corporation; MAG Pitt, LP;
## MAG Entertainment, LLC; and Oasis On Essington, LTD

1.     I, Johh Meehan am the president of MAG Enterprises, Inc.; the president of 2740 Corporation; a partner with authority in MAG Pitt, LP; a managing member of MAG Entertainment, LLC, and a partner with authority in Oasis on Essignton, LTD (collectively the "Listed Entities").

2.     I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.     I have reviewed the foregoing *PLAINTIFF'S VERIFIED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "First Amended Complaint") in its entirety.

4.     The factual statements in the First Amended Complaint, as they pertain to the Listed Entities, are true and accurate to the best of my information, knowledge and belief.

5.     Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on: 5/11/2020                    By: ( John Meehan

## VERIFICATION OF SECOND AMENDED COMPLAINT AS TO:
### Club Cabaret, Inc.

1.     I, Joseph A. Miller, am the President of Club Cabaret, Inc.

2.     I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.     I have reviewed the foregoing *PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "Second Amended Complaint") in its entirety.

4.     The factual statements in the Second Amended Complaint, as they pertain to Club Cabaret, Inc.are true and accurate to the best of my information, knowledge and belief.

5.     Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on: 5. 11. 20            By: Joseph A. Miller

## VERIFICATION OF SECOND AMENDED COMPLAINT AS TO:
### Heritage Management Services, Inc.

1.  I, Craig Duling, am the Secretary of Heritage Management Services, Inc.

2.  I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.  I have reviewed the foregoing *PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "Second Amended Complaint") in its entirety.

4.  The factual statements in the Second Amended Complaint, as they pertain to Heritage Management Services, Inc. are true and accurate to the best of my information, knowledge and belief.

5.  Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on: _MAY 11, 2020_

By: _Craig Duling_

## VERIFICATION OF SECOND AMENDED COMPLAINT AS TO:
### Kimmico, Inc.

1.    I, Calvin Brockdorff, am the President of Kimmico, Inc.

2.    I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.    I have reviewed the foregoing *PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "Second Amended Complaint") in its entirety.

4.    The factual statements in the Second Amended Complaint, as they pertain to Kimmico, Inc., are true and accurate to the best of my information, knowledge and belief.

5.    Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on: 5 - 10 · 20

By:    Calvin Brockdorff

## VERIFICATION OF SECOND AMENDED COMPLAINT AS TO:
### Peoria Speakeasy, Inc.

1.    I, Katherine Zabek, am the President of Peoria Speakeasy, Inc.

2.    I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.    I have reviewed the foregoing *PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "Second Amended Complaint") in its entirety.

4.    The factual statements in the Second Amended Complaint, as they pertain to Peoria Speakeasy, Inc. are true and accurate to the best of my information, knowledge and belief.

5.    Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on: 5-10-2020

By:    Katherine Zabek

## VERIFICATION OF SECOND AMENDED COMPLAINT AS TO:
### Vonch, LLC

1. I, Stephen H. Dabrowski, am the Managing Member of Vonch, LLC.

2. I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3. I have reviewed the foregoing *PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "Second Amended Complaint") in its entirety.

4. The factual statements in the Second Amended Complaint, as they pertain to Vonch, LLC ("Vonch") are true and accurate to the best of my information, knowledge and belief.

5. Except, any matters stated to be upon "information and belief," I verily believe to be true.

6. To be clear, I note that Vonch is the holder of the liquor license and sole member of Polekatz Gentlemen's Club, LLC, which directly operates the club. Because Vonch applied for the Paycheck Protection Program it is believed that Vonch is the proper Plaintiff in the suit.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on: 5/12/20

By: Stephen H. Dabrowski

## <u>CERTIFICATE OF SERVICE</u>

    I certify that on June 18, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                                    */s/ Matthew J. Hoffer*

                                Matthew J. Hoffer (MI P70495)

                                **SHAFER & ASSOCIATES, P.C.**